IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

LESLIE and JACK MILLER,
on behalf of their minor child,
S.M.,

     Plaintiff-Appellant,              No. 06-2345

vs.

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

     Defendant-Appellee,

_____

On Appeal from the United States District Court
for the District of New Mexico

Honorable M. Christina Armijo
United States District Judge

District Court No. CIV 05-502 MCA/WPL
_____

APPELLANT'S OPENING BRIEF

ORAL ARGUMENT REQUESTED

Attachments: A & B in digital form, C & D in written form only
_____

GAIL STEWART
Steven Granberg, P.A.
Attorney for Plaintiff-Appellant
1400 Central S.E., Suite 3300
Albuquerque, NM 87106
Telephone: 505-244-3779
Fax: 505 245-8558

# TABLE OF CONTENTS

                                                                    PAGE

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    iv

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . .    1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . .    1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . .   7

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . .    16

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

I.      Exclusion of evidence on school district dysfunction violates
        the IDEA and delivery of FAPE. . . . . . . . . . . . . . .. . . . . . . . . .    17

II.     The Court erred in dismissing Student's discrimination claim
        based on District's failure to provide Books on Tape. . . . . . . .    33-34

III.    Reduction of attorney fees was an abuse of discretion. . . . . . .    37

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

STATEMENT ON ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . .46

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .47

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . 47

ATTACHMENTS

Memorandum Opinion and Order (on the merits) from which appeal is taken, 7/31/2006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A

Memorandum Opinion and Order (on attorney fees) from which appeal is taken, 10/23/2006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B

IDEA Administrative Appeal decision. . . . . . . . . . . . . . . . . . . . . . . C

IDEA Due Process Hearing decision. . . . . . . . . . . . . . . . . . . . . . . D

# TABLE OF AUTHORITIES

A.    <u>CASES</u>                                                      PAGE

<u>Bd. of Educ. of Fayette County, Kentucky v. L.M.,</u> 2007 U.S. App.
        LEXIS 4777 (6th Cir. 3/2/2007). . . . . . . . . . . . . . . . . . . . . . . . . . .    31,32

<u>Board of Educ. of Hendrick Hudson v. Rowley,</u> 458 U.S. 176 (1982). .    16

<u>Ellenberg v. NMMI,</u> 2007 U.S. App. LEXIS 5275 (10th Cir. 2007). . . . .    36,37

<u>Florence Co. Sch. Dist. Four v. Carter,</u> 510 U.S. 7, 15 (1993). . . . . . . . .    43

<u>Fowler v. Unified Sch. Dist. No. 259,</u> 128 F.3d 1431, 1435
        (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1,n.1

<u>Johnson v. Independent Sch. Dist. #4 of Bixby,</u> 921 F.2d 1022
        (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

<u>J.L. v. Mercer Island Sch. Dist.,</u> 2006 U.S. Dist. LEXIS 89492
        (W.D. Wa. 2006), on reconsideration corrected on other
        grounds, at 2007 U.S. Dist. LEXIS 10343 (W.D. Wa. 2007). . . . .    22

<u>L.B. v. Nebo Sch. Dist. ,</u> 379 F.3d 966, 973-974 (10th Cir. 2004). . . . . .    18,22

<u>Murray v. Montrose County Sch. Dist.,RE 1J,</u> 51 F.3d 921, 927
        (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

<u>Neal v. Lewis,</u> 414 F.3d 1244, 1247 (10th Cir. 2005). . . . . . . . . . . . . . .    34

<u>New Mexico Ass'n for Retarded Citizens v. State of New Mexico,</u>
        678 F.2d 847 (10th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . .    37

<u>O'Toole v. Olathe Dist.Sch.Unified Sch. Dist. No. 233,</u> 144 F.3d
        692, 698 (10th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

<u>Park v. Anaheim Union High Sch. Dist.,</u> 464 F.3d 1025 (9th Cir. 2006). .    38,43

Reid v. Dist. of Columbia, 401 F.3d 516, 521-522 (D.C.Cir. 2005). . . . .    18,31

Schaffer v. Weast, 546 U.S. 49, 126 S.Ct. 528, 537 (2005). . . . . . . . . . .    41

Swenson v. Lincoln Co. Sch. Dist. No. 2, 260 F.Supp.2d 1136, 1142
    (D.Wy. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . .    34,35

Urban v. Jefferson County Sch. Dist., 89 F.3d 720(10th Cir. 1996). . . . .____38

B.    STATUTES

*federal*

20 U.S.C. §1400 (2004) et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1, n.1

20 U.S.C. §1400(c)(5)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

20 U.S.C. §1401(26) (A), (B), (C). . . . . . . . . .. . . . . . . . . . . . . . . . .    7

20 U.S.C. §1412(a)(23)(2004). . . . . . . . . . . . . . . . . . . . . . . . .___    26,n.13

20 U.S.C. §1414(d)(1)(A)(i)(I), (A)(ii)(I), (A)(iii)(II). . . . . . . . . . . .    20

20 U.S.C. §1414(d)(3)(B)(v). . . . . . . . . . . . . . . . . . . . . . . .. .. ..    20

20 U.S.C. §1414(d)(4)(A)(ii)(I). . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

20 U.S.C. §1415(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . ._____16

20 U.S.C. §1415(i)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

20 U.S.C. §1415(i)(2)(B)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18,38

20 U.S.C. §1415(f)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3, n.3, 16

28 U.S.C. §1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

29 U.S.C. §794a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

42 U.S.C. §12133. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

*state*

NMSA 22-1-15 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .____21

## C.    REGULATIONS

*federal*

34 C.F.R. §300.7(c)(10)(i), (ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7.

34 C.F.F. §300.347(a)(1)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .____21

*state*

NMAC 6.31.2.13(I)(8/31/2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3, n.3

NMAC 6.31.2.13(25)(a) (7/29/2005). . . . . . . . . . . . . . . . . . . . . . . . .    3, n.3

## D.    MISCELLANEOUS

articles

Deberry, J., "Comment: When Parents and educators clash: are special
    education students entitled to a Cadillac education?", 34 St.Mary's
    L.J. 503, 514 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .___44

Green, Jane Fell, "Middle and High School Students: Effects of an
    Individualized Structured Language Curriculum," Annals of
    Dyslexia, vol. 46 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . .____8,n.6

Pendergast, K., "Comment: Schaffer's Reminder: IDEA Needs another
    improvement," 56 Case W.Res. 875 (Spr. 2006). . . . . . . . . . . . . . .___44

other

Fed. R.Civ.P.23(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          6-7

Commentary to 34 C.F.R. §300.26. . . . . . . . . . . . . . . . . . . . . . . . .          21

Commentary to 34 C.F.R. §300.346. . . . . . . . . . . . . . . . . . . . . . . .          21

"General Comments" in Attachment 1 to IDEA regulations. . . . . . .          21

## PRIOR OR RELATED APPEALS

There are no prior or related appeals.  10th Cir.R. 28(a).

JURISDICTIONAL STATEMENT

District Court jurisdiction existed base d on the Millers' filing of a civil action, pursuant to 20 U.S.C. §1415(i)(2)(A)[1] of the Individuals with Disabilities Education Act (IDEA), as the party partially aggrieved from the final decision of the IDEA Administrative Appeal Officer. Applt. App. at 9.   District Court jurisdiction was also based on Plaintiffs' claims under Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act, Title II. Id. *See* 29 U.S.C. §794a and 42 U.S.C. §12133. This Court has jurisdiction under 28 U.S.C. §1291 based upon these facts and because Plaintiff Leslie Miller sought review in this Court on November 20, 2006, which was within 30 days of the District Court's final judgment dated October 23, 2006. Applt. App. at 498, 500.

STATEMENT OF THE ISSUES

Whether the District Court 1)erred in  refusing to allow evidence of the school district's systemic dysfunction in provision of books on tape services when the IDEA

---

[1]All citations are to the 1997 Reauthorization of IDEA, not the present IDEIA which took effect July 1, 2005.   The Individuals with Disabilities Educational Improvement Act (IDEIA) of 2004 (eff. 7/1/2005) does not provide for retroactive application. *See* 20 U.S.C. §1400 et seq. It is not applicable to this case which was originally filed as request for administrative IDEA due process hearing on November 1, 2004. *See* Fowler v. Unified Sch. Dist. No. 259, 128 F.3d 1431, 1435 (10th Cir. 1997) (1997 IDEA amendments applied prospectively only where amended Act did not state it was to be applied retroactively.)

administrative process also refused evidence on systemic issues;  2) erred in granting APS's motion for summary judgment on the disability discrimination claims;  3) abused its discretion in failing to award attorney fees consistent with the Millers' status as the prevailing party.

STATEMENT OF THE CASE

Leslie Miller ("Mother")[2] , pursuant to the Individuals with Disabilities Education Act ("IDEA"), filed request for due process against the Albuquerque Public Schools  on behalf of her minor son, S.M. ("Student" or "S.M." ) on  October 28, 2004.  Adm. RP at 123-147.  An administrative IDEA due process hearing was conducted by the IDEA Due Process Hearing Officer ("DPHO" or "IDEA hearing officer") on November 30, December 1, 2, and 3, 2004.  Adm TR vols. I-IV.  On January 4, 2005, the IDEA hearing officer found that Albuquerque Public Schools denied a free appropriate public education to S.M. in violation of IDEA, during the 2004-2005 (8th grade) school year.   Adm. RP  at 4,  27.

Albuquerque Public Schools ("APS") appealed to the second tier of state IDEA

---

[2] This appeal is taken by Leslie Miller, S.M.'s mother.  Therefore, while both mother and father brought the original due process claim and civil action, this brief will reference only Leslie Miller who is the only Plaintiff-appellant as to this appeal.

administrative review and Leslie Miller filed a cross-appeal.  Adm. RP at 152, 154.

[3]  The IDEA Administrative Appeal Officer ("AAO" or "Appeal officer") generally

upheld the decision of the DPHO , also found additional denial of FAPE during the

2003-2004 (7th grade) school year and both modified and awarded additional relief.

 Adm. RP at 285-303.

Following entry of the Appeal Officer's decision against APS on April 4, 2005,

the school district filed an "Application for Preliminary Injunction" on April 29,

2005,  which was docketed as an original action by the United States District Court

as CIV 05-487 MCA/LFG.  Applt. App. at   507  .  Leslie Miller then filed a civil

action on May 4, 2005, "Complaint partially appealing IDEA Administrative decision

and for violation of Section 504 and the Americans with Disabilities Act" which case

was docketed by the United States District Court as CIV 05-502 JP/WPL.  Applt.

App. at 9.   Both cases arose out of the same facts and followed the IDEA

administrative due process proceedings. *See* Applt. App. at 9-18  and Applt. App. at

507-516.   The cases were never consolidated but the civil action filed by Leslie

---

[3] States have the option of establishing a one tier or two tier IDEA
administrative process.  20 U.S.C. §1415(f)(1).  New Mexico had a two tier IDEA
administrative review process at the time Ms. Miller brought this IDEA claim.
New Mexico law was subsequently amended to provide for a one tier IDEA
administrative system of review.  *Compare* NMAC 6.31.2.13(I) (8/31/2004) to
NMAC 6.31.2.13 (25)(a) (7/29/2005).

Miller (CIV 05-502 JP/WPL) was transferred to the same judge who was assigned to the APS's "Application for Preliminary Injunction" case by minute order on August 30, 2005. Applt. App. at 62 . [4]

Case 1 (APS v. Miller) procedural history

_____After filing its Application for Preliminary Injunction, APS twice sought an evidentiary hearing before serving Ms. Miller. *Compare* Applt. App. at 517, 526 *to* Applt. App. at 535, 536A. Once served, Ms. Miller filed a Motion to Dismiss for lack of subject matter and personal jurisdiction. Applt. App. at 537. The Court denied APS's Application for preliminary injunction and motion for evidentiary hearing and granted Miller's Motion to Dismiss. Applt. App. at 569. In ruling on the Application and the Miller Motion to Dismiss, the Court also dismissed APS's case (Application for Preliminary Injunction) "*without prejudice* for lack of jurisdiction." (Emphasis added.) Applt. App. at 581 . [5]

-------------------------

[4]For ease of reference, the two United States District court proceedings will be labeled in order of filing as "Case 1" and "Case 2." "Case 1" then refers to the action APS brought against the Millers on April 29, 2005, which was styled an "Application for Preliminary Judgment." "Case 2" refers to the action Ms. Miller brought against APS, on May 4, 2005, which was styled "Complaint partially appealing IDEA administrative decision and for violation of Section 504 and the Americans with Disabilities Act."

[5]While APS has filed a cross appeal in the instant case ("Case 2"), it took no appeal from the Court's order of dismissal without prejudice in Case 1.

<u>      Case 2 (Miller v. APS)  procedural history</u>

APS filed an Answer to the Miller Complaint on June 29, 2005, which did not include any counterclaim or appeal of the IDEA Appeal Officer decision.  Applt. App. at 20-29.  Then, after Case 1 was dismissed by order of July 22, 2005, APS filed a Motion to Dismiss or, in the alternative, to Amend Answer and file a Counterclaim, six days later on July 28, 2005.  Applt. App. at 569 and Applt. App. at 30.

The Court's order allowing discovery to proceed was entered on August 18, 2005, providing for a discovery deadline of December 16, 2006.  Applt. App. at 53. Subsequently, the Court amended the discovery order to extend the discovery deadline until February 8, 2006.  Applt. App. at 77.

Discovery ensued during the fall/winter of 2005-2006.  APS moved to strike Plaintiff's expert witness on books on tape.  Applt. App. at  82 .  Plaintiff voluntarily dismissed damages claims under Section 504 and the ADA, leaving only the IDEA claims and claims for equitable relief under Section 504 and the ADA.  Applt. App. at 79, 147.

Approximately three weeks before the discovery deadline of February 8, 2006, the District Court denied APS's Motion to dismiss or amend the Answer to add a counterclaim by Memorandum opinion and order dated January 18, 2006.  Applt. App. at 96-107 .  Plaintiff subsequently moved to bifurcate and certify a Rule

23(b)(2) class for the books on tape issue on April 14, 2006.     Applt. App. at 198.

The Court entered final ruling on pending discovery disputes, the request for class

certification and the merits of all claims on July 31, 2006. Applt. App. at 333-389.

The Court upheld the IDEA Administrative Appeal decision (which had not been

appealed) in Plaintiff's favor, but ruled against Plaintiff on her request that the Court

consider additional evidence on the IDEA claims and grant additional relief.  Applt.

App. at 357-364.   The Court also denied Plaintiff's request to bifurcate and certify

a Rule 23(b)(2) class on the disability discrimination claim and further granted

summary judgment for Defendant APS on the disability discrimination claim.  Applt.

App. at  339-350.   The Court ruled that Plaintiff was entitled to consideration of an

attorney fees award under IDEA and directed the parties to resolve attorney fees or

brief Plaintiff's request for fees.  Applt. App. at 386-388.

     After briefing on Plaintiff's request for an award of $40,375.14 for attorney

fees, costs and gross receipts tax,  the Court entered a memorandum opinion and

order awarding attorney fees and costs to Plaintiff Miller in the amount of $8,751.19.

Applt. App. at   477.    The final judgment dismissing the case with prejudice was

entered by the Court on October 23, 2006.    Applt. App. at   498.  Plaintiff timely

appealed on November 20, 2006.  Applt. App. at 500.  Defendant APS filed Notice

of Cross Appeal on November 28, 2006.  Applt. App. at 502.

## STATEMENT OF THE FACTS

This case was filed by the Miller parents in October 2004, when their son,

S.M., was in the 8th grade.  Adm. RP at 124, 127.  S.M. is a student who qualifies

for receipt of special education as a student with "specific learning disability."

Adm. RP at 127.  Under the IDEA, "specific learning disability" has the following

definition:

> The term "specific learning disability"  means a disorder
> in one or more of the basic  psychological processes involved in
> understanding or in using language, spoken or written,
> which disorder may manifest itself in an imperfect
> ability to listen, think, speak, read, write, spell, or do
> mathematical calculations.
>
> Such term includes such conditions as perceptual disabilities,
> brain injury, minimal brain dysfunction, *dyslexia,* and
> developmental aphasia.
>
> Such term [specific learning disability] does not include a
> learning problem that is primarily the result of visual,
> hearing, or motor disabilities, of mental retardation, of
> emotional disturbance, or of environmental, cultural, or
> economic disadvantage.

(Emphasis added.)  20 U.S.C. §1401 (26)(A), (B), (C).  *See also,* 34 C.F.R.
§300.7(c)(10)(i),(ii).

S.M.  qualified  for  receipt  of  special  education  as a student with specific

learning disability in the first grade.   Adm. RP at 12.  He is dyslexic.  Id.  *See also,*

-7-

Adm. RP 284. He has severe phonological processing deficits.[6] Exh. 1 at 3-4, Exh.

3 at 2, Exh. BB at 9, 14, 15, 17. At the beginning of 6th grade, APS reevaluated S.M.

and identified him as having a "severe discrepancy in reading, mathematics and

written language skills." Adm. RP at 13.    When S.M. was in the 8th grade and his

parents filed request for IDEA due process hearing, he was reading at the first grade

level.    Adm. RP at 284.

The Millers' request for IDEA due process focused on APS's provision of

special education and services during middle school for the school years, 2002-2003

(6th grade), 2003-2004 (7th grade), 2004-2005 (8th grade).    The two  basic hearing

_____

[6] DPH Exhibit OO provides the following definition of dyslexia describing
the underlying phonological processing difficulties:

> Dyslexia is one of several distinct learning disabilities.
> It is a specific language-based disorder of constitutional
> origin characterized by difficulties in single word decoding,
> usually reflecting insufficient phonological processing
> abilities.  These difficulties in single word decoding are
> often unexpected in relation to age and other cognitive
> and academic abilities; they are not the result of generalized
> developmental disability or sensory impairment.  Dyslexia
> is manifest by variable difficulty with different forms of
> language, often including, in addition to problems in reading,
> a conspicuous problem with acquiring proficiency in writing
> and spelling."

DPH Exh. OO at 1-2, Green, Jane Fell, "Middle and High School Students:
Effects of an Individualized Structured Language Curriculum," Annals of
Dyslexia, vol. 46 (1996).  This definition was adopted by the National Institute of
Health. Id.

issues were 1) what was necessary for *remediation* and 2) what were necessary *accommodations.* The failure of *accommodations* was related to two IDEA issues, access to the general curriculum and placement in the least restrictive environment (LRE), and to disability discrimination since S.M. was not able to access classroom texts and textbooks unless those texts were available to him in auditory format.

With reference to the educational field of learning disabilities, *remediation* refers to instruction targeted on improving the educational skills negatively impacted by the disability. Necessary *remediation* for S.M. was to target instruction in reading, writing, and spelling skills. *Accommodations* refers generally to provision of services and technology to try to substitute for the skill deficit during the school years in which *remediation* is provided. The goal of *accommodation* is to allow access to general curriculum and grade level content learning by bypassing the deficit areas. The *accommodations* at issue for S.M. included the provision of "Books on Tape." "Books on Tape," is a kind of generic shorthand for provision of audio recordings (by tape cassette or CD) of classroom texts and assigned books.

To varying degrees, Plaintiff prevailed on both the *remediation* and *accommodations* issues at due process. The final administrative decision found that APS had denied S.M. a FAPE during all years of middle school including during his 7th and 8th grade years by failing to provide him with adequate reading instruction for

his learning disability and failing to provide him Books on Tape during the 7th and 8th

grade even though that specific accommodation was requested by the parent and

promised by the IEP written by the School District in 7th grade.  Adm. RP at 286-287.

The AAO order substantially increased the reimbursement monies owed to parents

for the school district's failure to provide appropriate reading instruction.  Adm. RP

at 302.

     While Plaintiff challenged some of the administrative decision below as to both

*remediation* and *accommodation*[7],  this appeal is taken only on the issue of provision

of the *accommodation* of Books on Tape.    The most relevant findings about the

failure to provide the accommodation of Books on Tape  by the administrative

hearing officers are listed below.

     <u>Due Process Hearing Officer</u>

             Student's September 2003 IEP [which governed 7th grade school
             year; found at DPH Exh. FF] called for the provision of Books
             on Tape as a modification that will enable the student to
             succeed in the general education environment.

---

[7] "The focus of Plaintiffs' Complaint is on two special educational needs: (1) the need for remediation in the form of special instruction aimed at increasing reading skills or developing reading strategies that are tailored to the student's disability, and (2) the need for accommodation in the form of assistive technologies or aids that allow the student to convert written information to an auditory format so that he may keep up with other subjects at his grade level and function in a regular-education classroom notwithstanding the fact that he does not read at grade level."  7/31/2006 U.S. District Court decision at Applt. App.  336 .

> Parents met their burden of proving by a preponderance of the evidence that providing Student with his class textbooks on tape, when available, is a reasonable accommodation that would assist Student to access the general curriculum.

(Findings of Fact 109, 112). Adm. RP at 26.  *See also* Findings of Fact 110 and 111 at Adm. RP 26.

> Parents met their burden of proving that Student requires and is entitled to the provision of certain AT and services to succeed in regular education.

(Conclusion of Law 7).  Adm. RP at 27.

> Unless Parents agree in writing to a different arrangement, Student's IEPs for the remainder of his enrollment with the District are to be conducted in the spring for the express purpose of determining what textbooks Student's placement will require and acquiring the same, if available, in audio (tape or CD) before the start of school the following year.

(Remedy Order # 5) Adm. RP at 28.__

_____

<u>Administrative Appeal Officer</u>

_____The District's choice of the Kurzweil system, rather than Books on Tape, as a method to give Student auditory access to written text, did not deny Student a FAPE in 6th grade.  In 7th grade, however, Student's IEP (Exh. FF) required the provision of Books on Tape.  The District failed to show that its failure to provide Student the Books on Tape required by his 7th grade IEP was *de minimus*. Therefore, this failure denied Student FAPE in his 7th grade year.  In 8th grade, the District admittedly failed, up until the time of hearing [December 2004], to provide either the Kurzweil system required by Student's IEP or textbooks on tape as an alternative, denying Student FAPE.

-11-

(Finding of Fact 7) Adm. RP at 287.

In the sixth grade, the District provided Student with access to a computer scanning system (Kurzweil) which reads text aloud.  The purpose of the Kurzweil system and Books on Tape is identical: to provide Student auditory access to written text.  Each of the two approaches – Books on Tape and Kurzweil — has advantages and disadvantages. With the Kurzweil, Student could easily have a particular page or passage read aloud.  Finding a page or paragraph on tape is far more difficult, but the Books on Tape are more portable than the Kurzweil.  Because *both methods appear to be an effective method of providing a non-reader access to written text,* Parents did not carry their burden of demonstrating the necessity of Books on Tape, in addition to Kurzweil, either to enable Student to make educational progress or to support his placement in the least restrictive environment.

In the 7th grade, Books on Tape were required by Student's IEP.  Ex. FF.  The District, therefore, was required to provide Books on Tape.  Failure to provide a service mandated by an IEP is a denial of FAPE unless the District bears the burden of establishing the absence of the services had a *de minimus* impact on the provision of FAPE to Student. Johnson v. Independent Sch. Dist. #4 of Bixby, 921 F.2d 1022 (10th Cir. 1990). . . .  The District did not establish that the absence of Books on Tape in Student's 7th grade year had a *de minimus* impact on Student's educational program, particularly in light of Student's difficulty in accessing the Kurzweil equipment given its location in the 7th grade.

In the 8th grade, Student's IEP provided only for novels on tape (which were provided), not textbooks on tape.  The IEP provided once again for the use of the Kurzweil to give Student access to the general curriculum.  It was undisputed, however, that up until the date of the hearing at the beginning

of December, the Kurzweil was not available to the Student. The District's failure to provide Student with an method of accessing textbooks auditorily denied Student a FAPE.

Given that Student's IEP provided for Books on Tape in the 7th grade, *Parents did not establish the relevance of District policy as to other students.* To the extent *the record shows that the District was not able to timely provide textbooks on tape,* the remedy of requiring the District to conduct Student's IEP in the spring (the remedy provided by the hearing officer) so that Books on Tape, if required by the IEP team, can be timely obtained for next year, is appropriate. *Because a systemic remedy is not needed here,* exclusion of evidence of the problems faced by other students was proper.

(Citations omitted). Excerpts from AAO discussion of "Books on Tape" issue at Adm. RP 299-301.

Since APS did not file a counterclaim challenging the AAO's findings and rulings, the AAO's findings and rulings may not be directly challenged by APS on appeal. [8] APS failed to appropriately challenge to the AAO's findings in the district court when it pursued a strategy of seeking preliminary injunction rather than a civil action seeking *modified de novo review* as an aggrieved party. *See* Applt. App. at 576.

While ultimately concluding that denial of FAPE had occurred, both the DPHO and the AAO refused evidence of the District's *systemic practices* as to provision of

---

[8] APS has filed a Notice of Cross-Appeal and a docketing statement in this Court indicating that it plans to challenge the District Court's denial of its motion to amend its Answer to file a counter-claim.

Books on Tape (the *accommodations* issue) and ignored undisputed evidence in the record concerning inefficacy and inconsistent availability of other the other alleged method for accessing text (Kurzweil).   This same exclusion of evidence on systemic practices was continued by the District Court.   Applt. App. at 333-389. Without consideration of evidence on the school district's systemic *dysfunction* in the provision of Books on Tape to students with reading disability, the AAO's remedy, upheld by the District Court, was inadequate.

The DPHO ruled that Plaintiff's proffered evidence on APS's system for provision of Books on Tape to students with disability was "not relevant" since her "concern [was] strictly with [S.M.'s] needs and whether they are being met, and I don't need to have that *extraneous information about other students* to make that determination." (Emphasis added.)  DPH TR vol. IV at 5.   The AAO upheld the exclusion of evidence as to the systemic problems for provision of Books on Tape to other students. based on the belief that the remedy ordered for S.M. was appropriate without a "systemic remedy."    Adm. RP at 300-301.   Finally, the District Court upheld rulings below:

> [T]he evidence concerning alleged systemic failures in allowing
> other students throughout the school district to access Books
> on Tape over the course of several years would become relevant
> to the remaining issues in this case *only* if Plaintiffs first
> established that: (1) Books on Tape was the only appropriate

and available mechanism for giving S.M. access to the written
materials in question during the relevant time period, (2) Defendant
failed to provide Books on Tape to S.M. during that time
period, and (3) the AAO failed to award adequate
compensatory relief for that failure. . . . I find that these
preconditions were not met.  Therefore, any error in the
AAO's decision not to admit further evidence of Defendant's
systemic shortcomings with regard to the availability of
. . . Books on Tape was harmless.

Applt. App. at 361.

> *The AAO's decisions as to the scope and duration of the*
> *violations relating to Books on Tape* and the relief
> awarded to remedy such violations *are firmly supported*
> *in the Administrative Record.*  The AAO also tailored
> such relief to the commendable goal of restoring the
> cooperative process that Congress and the Supreme Court
> have envisioned for implementing the IDEA.  This cooperative
> process favors the type of evaluations, meetings, and use of
> a school district's expertise that are entailed by the AAO's
> decision. . . .
> I also conclude that [Plaintiff's expert witness's] report
> regarding the advantages of Books on Tape does not
> undermine the AAO's decision, and it is not necessary to
> hear additional evidence regarding any systemic failures
> in offering Books on Tape to other students or in other
> school years.  The issue here is the special education needs of
> S.M. during his middle-school years, and I find that the
> relief crafted by the AAO provides an adequate and appropriate
> remedy with respect to the Books on Tape issue.  So long
> as the AAO awarded adequate relief for the violations which
> are supported by the evidence of record concerning this
> particular student, it does not matter whether the AAO
> could have reached the same result by considering additional
> evidence concerning Defendant's practices with respect
> to other students or at other times.

-15-

(Emphasis added).  Applt. App. at 378-379.

## SUMMARY OF THE ARGUMENT

IDEA establishes a comprehensive procedural system for families of students with disabilities to enforce their children's rights to special education.  <u>Bd. of Educ. of Hendrick Hudson v. Rowley,</u> 458 U.S. 176 (1982).   The IDEA provides the right for families to request IDEA due process hearing on "*any matter relating to. . . the provision of a free appropriate public education to [the disabled]  child.*" (Emphasis added.)  20 U.S.C. §1415(b)(6) and §1415(f)(1).   Exclusion of evidence about  the school district's systemic practices or dysfunction violates IDEA which provides the right to due process hearing on "any matter" relating to the provision of FAPE.  The hearing officers' exclusion of evidence on systemic practices led to creation of remedies which were inadequate.  The Court's continuation of the refusal to admit evidence on systems issues also ran afoul of the IDEA's right to bring a civil action, which under the Rules of Civil Procedure provides for formal discovery.

As a matter of law, the Court improperly granted APS summary judgment on Plaintiff's disability discrimination claims arising out of APS failure to provide Books on Tape.  The Court ignored  misapplied the laws which describe the rights of students with disabilities and misunderstood the significance of undisputed facts.  The Court ignored IDEA's mandate that IDEA not be used to curtail students' rights

under Section 504 and the ADA.

Plaintiffs, who did not prevail on every issue which they raised,  were, nonetheless,  "prevailing parties" as that term of art is used in IDEA litigation.  The United States District Court Judge recognized Plaintiffs' prevailing party status in several opinions leading up to the final opinion on fees, but then ignored the record and her own previous findings in 1) failing to award all fees for the administrative due process proceedings and appeal and 2) failing to award all fees connected with successful "defense" of the AAO order in favor of the Millers in court.  In striving to enforce implementation of important federal laws securing special  education for children with disabilities, the District Court confused the laudable goal of "cooperation" between parents and school district  at the IEP/school level with the necessary tool of attorney fees awards at conclusion of adversarial special education proceedings which determined the school district denied the student a FAPE.

## ARGUMENT

## ISSUE I

### EXCLUSION OF EVIDENCE ON SCHOOL DISTRICT DYSFUNCTION VIOLATES THE IDEA AND DELIVERY OF FAPE

A.     Standard of Review

_____Questions of law are reviewed *de novo* by the federal district court reviewing

the final state administrative IDEA decision and the Tenth Circuit Court of Appeals reviewing the federal district court's decision.  O'Toole v. Olathe Dist. Sch. Unified Sch. Dist. No. 233, 144 F.3d 692, 698 (10th Cir. 1998).  In IDEA cases, the federal district court reviews factual determinations by "modified *de novo*" review which includes review of the administrative record as well as, possibly, the consideration of additional evidence.  *See* L.B. v. Nebo Sch. Dist.., 379 F.3d 966, 973-974 (10th Cir. 2004) and 20 U.S.C. §1415(i)(2)(B)(ii).  On the issue of the District Court's refusal to consider additional evidence pursuant to the IDEA, the standard of review appears to be abuse of discretion.  *See* Reid v. Dist. of Columbia, 401 F.3d 516, 521-522 (D.C.Cir. 2005).  *See also* Murray v. Montrose County Sch. Dist. RE 1J, 51 F.3d 921, 927 (10th Cir. 1995).  (Tenth Circuit declines to adopt a specific test for consideration of additional evidence in IDEA cases but implies that a court will use its discretion in reviewing additional evidence "if necessary.")

B.    Issue raised below

_____Plaintiff pursued the necessity of evidence on systemic issues of dysfunction surrounding provision of Books on Tape at every level.  At the administrative due process hearing level, Plaintiff raised the issue of provision of Books on Tape: (1) in the Request for Due Process hearing (Adm. RP at 129, #s 8 & 9);   (2) during the hearing through an offer of proof (DPH TR vol. IV at 4-5 "[T]he relevance is that to

the extent the Student needs books on tape, the District has a very inefficient, under-used procedure for getting books on tape, and they are not offered to students. . . .And with relevance to remedy, that testimony is important because should the hearing officer determine that the student in the future needs books on tape. . . the practical matter is, it doesn't happen in this district." ) and attempts to elicit testimony (DPH TR vol. III at 256-257);  (3) in requested findings and conclusions (Adm. RP at 40, 43-44, esp. requested finding #50) and (4) argument (Adm. TR vol. IV at 193-194, 200-201).   The DPHO addressed the issue during hearing orally as well as in her written decision.   DPH TR vol. III at 256 (hearing officer refuses to allow evidence as to how many of the 5000 plus students with reading disability received Books on Tape stating that she did not "care"; DPH TR vol. IV at 5-6  and Adm. RP at 26, 27 ("Parents sought to raise broad, systemic and philosophical issues through the vehicle of this due process proceeding.  This DPHO *has persistently resisted their attempts to adjudicate matters not directly related to Student's specific placement and needs.*").

At the administrative appeal level, Plaintiff raised the issue in briefing.  Adm. RP at 244-245; 262-263.    The AAO addressed the issue in her written decision. Adm. RP at 285, 287, 299-302, particularly at page 300.

In the civil action before the District Court, Plaintiff raised the issue: 1) in her

Complaint (Applt. App. at 11-15); 2) by identification of an expert witness and request for consideration of additional evidence (Applt. App. at 82-95, 108-120, 121-126, 225-332, 324-332); 3) by IDEA briefing (Applt. App. at 135-138, 142-145, 177-178). The Court addressed the issue extensively in her decision on the merits dated July 31, 2006. *See* Applt. App. at 338-339; 352-361, 375-379.

——

C.    Discussion

_____ 1.    Student needs access to Books on Tape for receipt of FAPE.

The Due Process Hearing Officer (DPHO) concluded that provision of "class textbooks on tape, when available, is a reasonable accommodation *that would assist Student to access the general curriculum.*" Adm. RP at 26. This finding (#112) was adopted by the Administrative Appeal officer (AAO). Adm. RP at 287 (FF 7 adopts the DPHO's FF 112.[9]) Access to the general curriculum was a specific requirement for achievement of FAPE pursuant to the 1997 reauthorization of the IDEA. *See,* 20 U.S.C. §1414(d)(1)(A)(i)(I), 1414(d)(1)(A)(ii)(I), 1414(d)(1)(A)(iii)(II), 1414(d)(3)(B)(v), 1414(d)(4)(A)(ii)(I). The focus on access to the general curriculum was grounded in Congress's recognition in 1997 that special education could be more

---

[9] The AAO's decision indicates that she will cite to the "evidentiary findings of the hearing officer, where they are consistent with the administrative appeal findings." Adm. RP at 285-286.

effective by "ensuring [students'] access to the general curriculum to the *maximum extent possible.*"  (Emphasis added.)  20 U.S.C. §1400(c)(5)(A).[10]  "General curriculum" is "the same curriculum as for nondisabled children."  34 C.F.R. §300.347(a)(1)(i).  The 1997 amendments, generally, "place greater emphasis on a results-oriented approach related to improving educational results for disabled children than was true under prior law." Attachment 1 to IDEA regulations, "General Comments."  Provision of appropriate assistive technology was tied to the important goal of progress in the general curriculum.  Commentary to 34 CFR §300.346.

In classrooms of New Mexico, just as in other states, the school district's provision of textbooks is integral to presentation of content learning in required subject areas.  New Mexico has textbook adoption requirements pursuant to state law. NMSA 22-15-1 et seq.  ("Instructional Materials Law").

When S.M. was provided the same textbooks as his nondisabled peers in middle school, he was unable to read them independently  because he was reading at the first grade level.  Reliance on the parent to read assigned texts to S.M. defeats IDEA in

---

[10] Commentary to the federal regulations implementing the 1997 IDEA specifically reject s any contention that access to the general curriculum is a tentative standard.  Federal regulation refused to substitute "maximum extent *appropriate*" for Congress's words, "maximum extent *possible.*"  Congress had spoken definitively for "unequivocal emphasis on involvement and progress of students with disabilities in the general curriculum, regardless of the nature and significance of disability."  Commentary to 34 CFR §300.26

that 1)public education is no longer free; 2) IDEA's goals of self sufficiency and independence are eliminated.  *See* DPH TR vol. IV at 32-37 (mother's testimony about preference for Books on Tape since the other products required her to coordinate or operate and that took a lot of time) ; <u>J.L. v. Mercer Island Sch. Dist.,</u> 2006 U.S. Dist. LEXIS 89492 (W.D. Wa. 2006) (1997 amendments focus on self-sufficiency), on reconsideration,  corrected on other grounds,  at 2007 U.S. Dist. LEXIS 10343 (W.D. Wa. 2007).

The District Court clearly recognized the purpose of Books on Tape for students with reading disability although her focus was on the connection between provision of Books on Tape and IDEA's mandate for provision of education in the Least Restrictive Environment.

> [B]ooks on Tape is one of the special aids or assistive technologies that may be used to convert written information from a visual to an auditory format so that the student may keep up with other subjects at his grade level and function in a regular-education classroom notwithstanding the fact that he does not read at grade level.  Such aids or technologies *are legally relevant* here because *they helpto accommodate the student's education in the Least Restrictive Environment (LRE), as mandated by the IDEA.*

(Emphasis added).  Applt. App. at   375.  The Court's thinking is in line with this Court's precedent as to the central importance of the LRE mandate.  *See, generally,* <u>L.B. v. Nebo Sch. Dist.,</u> 379 F.3d 966 (10th Cir. 2004).

-22-

The Court also took the position that "consistent use" of either Books on Tape or the other technologies in evidence (Wynn system purchased by family; Kurzweil provided to S.M. during 6th grade by the school district) would have been acceptable during middle school.   Applt. App. at   376.   The Court tied *consistent* use of one of these technologies to S.M.'s ability to "make educational progress and to support his placement in the LRE during his middle-school years."   Id.

     2.    <u>The record below demonstrates the school district's inability to provide Books on Tape.</u>

     The AAO found deprivation of FAPE for the failure to provide Books on Tape, as required by the IEP in 7th grade, and as some form of access to texts during the first half of 8th grade (at time of hearing in December 2004, school had not provided S.M. with either Kurzweil or Books on Tape).  For a period of approximately one and one-half school years, which was one half of S.M.'s entire middle school education, the school district failed to provide him with any technology or service allowing him to read his texts.   Plaintiff maintains that the reasons why this failure of identified service occurred were based in systemic dysfunction - - - an issue about which the hearing officers and court refused evidence.  However, evidence in the current record clearly demonstrates why S.M. was not provided the required Books on Tape services during 7th grade and why nothing was made available to him (either Books on Tape

or Kurzweil) during the first half of 8th grade: APS staff did not understand why or how to obtain Books on Tape for S.M. and there was an inadequate infrastructure, training and supervision to deliver the necessary knowledge to APS staff about why students with dyslexia needed access to auditory texts.

When Leslie Miller, S.M.'s mother, asked about Books on Tape, she was advised that she would need to obtain those for S.M. herself.[11] *See* DPH TR vol. IV at 33-36. Books on Tape was recorded in the IEP. DPH Exh. FF at 1, 11 . However, the school district did not provide Books on Tape because its staff did not know how to obtain Books on Tape. Ms. Miller explained:   "[The IEP team] said [Books on Tape] was available, but they weren't able to get them, and I was encouraged to get them myself."  DPH TR vol. IV at 35.

S.M.'s 6th grade teacher, Erica Pacheco, who had more than 10 years of experience as a special education teacher for APS, lacked any clear understanding of the process or reasons for Books on Tape.  She taught 6th grade social studies to

---

[11] When Ms. Miller was unable to get Books on Tape, she purchased "Wynn" for use at home.  She was then required to scan each page of S.M.'s texts in order for him to have access to auditory form at home.  While the DPHO/AAO order required APS to reimburse Ms. Miller for the purchase of Wynn ($900), the requirement of her own labor (scanning one page at time) was not addressed specifically.  The hearing officers focused on Kurzweil and Books on Tape because those eliminated the reliance on the parent to create the auditory text access.

students with disabilities, including S.M., using a text written at the 5th or 6th grade level.   Adm. TR vol. I at 125-126.  None her students, including S.M., were able to read the book "without support."

> [S.M.] never read the book.  I always read out loud to the class. None of my students were expected to read the book.

Adm. TR vol. I at 126.

In spite of her knowledge that her students could not read the textbook, she had never ordered Books on Tape and did not seem to know how to order Books on Tape, even at the time of the hearing at the end of 2004.  Adm. TR vol. I at 128-131.  She did not think Books on Tape were really necessary:

> During my class, I read all textbooks aloud, and so I really don't need it [to know how to order Books on Tape], or see it as a problem, because each of my students are not great readers.  That is one of the reasons they are in special education.  So that is usually why I read the text out loud. . . .

Adm. TR vol. I at 130-131.

Ms. Pacheco taught in a "self-contained" classroom providing instruction *only for students with disabilities.* [12]  DPH TR vol. I at 123.

Other school staff also testified that they did not know how to order Books on

---

[12] Dependence on the special education teacher to read aloud in a segregated classroom ensured that S.M. was not in his LRE, the general education classroom. Provision of Books on Tape promotes twin goals of IDEA: independence and self-sufficiency as well as education in the LRE.

Tape.  Linda Bivens, S.M.'s speech and language pathologist, testified that she "wanted him to have books on tape. . . particularly when he was going into the regular classroom. . . ." but was unsuccessful in obtaining the tapes.  Adm. TR vol. I at 273.[13]  Peggy Werbner, an APS  educational diagnostician for more than fifteen years, could not remember "ever" placing Books on Tape on an IEP modifications page even though more than half of the students she tested were students with learning disabilities and she would "discuss" Books on Tape with their parents.  Adm. TR vol. I at 22, 77-78.  She was "probably not" familiar with procedures to order books on tape in 2002 when she tested S.M.  Adm. TR vol. I at 23-24, 78, 87-88.

S.M.'s 7th grade "resource room teacher," Ms. Wesson, who knew that S.M. could not read at 7th grade level and could not read his 7th grade social studies book on New Mexico, was "aware of books on tape," but unsure how to obtain textbooks on tape through APS.  DPH TR vol. II at 29-30.  She thought that S.M.'s mom could get Books on Tape for him.  DPH TR vol. II at 46-47.  Mr. Roman, S.M.'s 7th grade

---

[13] Bivens's testimony about the "law" requiring textbook manufacturers to provide a copy of a tape references the "Access to instructional materials" amendments to the IDEA, the 2004 reauthorization.  *See* 20 U.S.C. 1412(a)(23) (2004).  The law does not address  provision of texts on tape to individual students, but only addresses a requirement that textbook manufacturers produce auditory forms of texts.  Bivens' testimony about "older" textbooks not being "available" on tape is misleading since she was trying to get copies of tapes from publishers rather than APS's service through Recordings for the Blind and Dyslexic.  DPH TR vol. I at 279-280.

math and science teacher did not know that S.M.'s IEP required books on tape but he "didn't have [his special education students] reading any books, essentially, from the math or science" and so he wasn't really looking at whether any of his students used Books on Tape.   DPH vol. II at 251-252, 267-268.  Mr. Roman found the 7th grade science textbook "too stressful" and so he "kind of put it back on the shelf in the book room, in the library." DPH TR vol. II at 268.

Mr. Neary, S.M.'s 8th grade special education teacher for multiple subjects, including social studies,  was also unaware of the procedures for getting textbooks on tape although he recognized that provision of the text on tape would lessen barriers to learning the material that can occur with "group" work where another student "read" to S.M.  DPH TR vol. III at 24-25, 29, 73-75.  Mr. Neary, who also taught science to S.M., could not remember ever testing S.M. DPH TR vol. III at 74-75.  The middle school principal was unfamiliar with the exact steps required by APS to obtain books on tape for a student and was not familiar with the Director of Special Education's memo dated February 2004  explaining the process.  DPH TR vol. III at 113-120 and Exh. 25.  The principal did not know why S.M. did not get Books on Tape during 7th grade although that services was specified on his IEP.  DPH TR vol. III at 119.

APS's Director of special education, who had sent out a memo to all school

administrators in February 2004 (Exh. 25), during the same school year (7th grade) that S.M.'s IEP specified he should receive Books on Tape, was unable to explain why the "shared responsibility" envisioned for obtaining Books on Tape for a student had broken down or failed for S.M.  DPH TR vol. III at 250-252.  Her description of the "process" for educating IEP team members on the availability of books on tape since S.M. began middle school (August 2002) was unintelligible.  DPH TR vol. III at 252-253.   She agreed that "the purpose of books on tape [is] to allow the student to access the general curriculum."  DPH TR vol. III at 254.  *See also* DPH TR vol. III at 265, 291-292, testimony of APS's Learning Disabilities Coordinator  (textbooks on tape a beneficial tool to obtain *content* for dyslexic students participating in general education classes who cannot read the text because of disability).

     3.    <u>Evidence on the LEA's systemic dysfunction was improperly rejected because creation of equitable remedy requires factual understanding of the school district's systemic dysfunction.</u>

     The  DPHO ruling about the timing of IEPs. as a remedy for failure to provide Books on Tape was  modified by the AAO as to the requirement to hold IEPs in the spring based on APS's argument that remedies could not be ordered too far in to the future.  *Compare* Adm. RP at 177-180 with Adm. RP at 301-302.  Instead, the AAO ordered that the IEP team, with designated "evaluators" determine "what additional

services and/or technology. . . would benefit Student." Adm RP at 302. This order presumably was to effect only the IEP for the upcoming school year.

The District Court opinion seems to approve both hearing officers' orders even though there is some contradiction between them. However, neither of the hearing officers' remedies for denial of FAPE based on failure to provide Books on Tape takes in to account at all the evidence in the record that school district staff were uniformly uninformed as to how to obtain Books on Tape and were also unclear as to why Books on Tape were necessary.

_____ APS's Director of special education testified that 5,000-5,500 students in the Albuquerque Public Schools receive special education on the basis of a reading disability. DPH TR vol. III at 256. Based on her total figure of 14,000 student with disabilities receiving special education in the District, students receiving special education with reading disability represent more than one third of the total students receiving special education. *See* DPH TR vol. III at 255-256. The Due Process Hearing excluded testimony which would have shown the number of those students with reading disability who receive Books on Tape. DPH TR vol. III at 256-257 and DPH TR vol. IV at 4-6. This evidence would have shown that the District is not providing Books on Tape to its thousands of students with learning disabilities. Counsel explained to the Due Process Hearing Officer that the relevance of the

evidence was that the District's procedures were "very inefficient, under-used and [that books on tape] are not offered to students. . . ." DPH TR vol. IV at 5. The DPHO rejected the information as "not relevant" based on her belief that her concern "strictly with [S.M.'s] needs" made this information about systemwide availability of books on tape "extraneous." DPH TR vol. IV at 5.

Plaintiff disputes that evidence about systemic dysfunction as to ability or desire to provide Books on Tape to students with reading disabilities was "extraneous" to the denial of FAPE to S.M. If there is no existing infrastructure for provision of a necessary special education services, the denial of FAPE is sure to be repeated. Since both hearing officers and the court acknowledged a denial of FAPE based on failure to provide auditory access to texts, and books on tape in particular during the 7th grade year, the reasons for deprivation of the service are *relevant* if the remedy is going to be entrusted, once again, to the school system that failed to provide the identified service in the first place. This is *not* a situation where the educators or IEP team are in favor of a *different service.* It is not a choice between educational methodologies. This was a service that the LEA specifically agreed to provide, Book on Tape during 7th grade, and then did not provide Books on Tape or any alternate auditory form of texts in either 7th or 8th grade (to date of hearing).

A very recent case out of the 6th Circuit provides reasoning supportive of

Plaintiff's position that the hearing officers and the Court needed to *understand* the APS's *system or lack of a system* for provision of Books on Tape before assuming that the IEP team could both identify and accomplish provision of auditory texts for S.M. in the future. In <u>Bd. of Educ. of Fayette County, Kentucky v. L.M.,</u> 2007 U.S. App. LEXIS 4777 (6th Cir. 3/2/2007), the Sixth Circuit Court of Appeals remanded an IDEA case to the administrative body for the crafting of a remedy for denial of FAPE. Remand was necessary because the administrative hearing officer, affirmed by the district court, had ordered the IEP team to meet and determine appropriate award of compensatory education. The Circuit Court of Appeals rejected that approach because the school district was responsible for the original denial of FAPE and could not be entrusted with creation of appropriate remedy for that denial. The Sixth Circuit found the issue fundamental to IDEA:

> [T]he fundamental issue of whether the details of a compensatory education award can be remanded to the [IEP team] and still comply with the statutory scheme of the IDEA [is raised].

2007 U.S.App. LEXIS 4777, [21-22].

The Court, with deference to the District of Columbia's decision in <u>Reid v. Dist. of Columbia,</u> 401 F.3d 516 (D.C. Cir. 2005), held that "neither a hearing officer nor an Appeals Board may delegate to a child's IEP team the power to reduce or terminate a compensatory-education award." 2007 U.S.App. LEXIS 4777, [25]. The Court

approved reasoning that it was inappropriate to delegate creation of necessary remedy to a group which included LEA employees as those employees are specifically barred from acting as hearing officers: allowing them to create remedy made them *de facto* substitutes for the state appointed IDEA hearing officer.    When the child is still enrolled in the school district that caused the violation of FAPE, entrusting remedy to that school district's employees had a potentially "impermissible effect."  Id.

In the same way, the "remedy" approved by the district court simply places the provision of access to auditory texts back in the hands of the school district that was unable to provide it in the first place, and it does so, without sufficient understanding of the causes of the failure to provide books on tape or any auditory access to texts to S.M. for one-half of his middle school education.

A hearing officer or court cannot , at the same time, find a deprivation of FAPE based on failure to provide an agreed on service and create a remedy that presumes that the LEA will provide the necessary service the next time, without taking evidence on the LEA's *ability and willingness to provide the service.*  To *assume* that the LEA will provide Books on Tape, or other auditory text access, the next time is contrary to the evidence in the record which indicates that despite a "paper process" (at least by February 2004, see DPH Exh. 25), the district staff was unable or unwilling to access the service of Books on Tape for S.M. or for any other student.

IDEA promises that the right to due process encompasses "*any* matter" relating to the provision of FAPE.  The hearing officers' and court's exclusion of relevant evidence on APS's lack of necessary infrastructure for delivery of Books on Tape and its systemic dysfunction for provision of this service denied the procedural due process right of hearing on "any matter" relating to provision of FAPE.  It also led to inadequate remedy in that IDEA's enforceable substantive right to public education cannot be so limited as to approve and allow for *planned noncompliance or ineffectiveness* as to future delivery of FAPE .

The Court's unwillingness to allow evidence on systemic dysfunction also is contrary to IDEA's procedural scheme which allows "additional evidence" as part of a civil action when a party is aggrieved.  Plaintiff contends that the remedy or lack of remedy as to future access to books on tape certainly made her a party aggrieved.  As such, she should have been allowed to introduce evidence, as requested, which was developed during the course of discovery as allowed by the Rules of Civil Procedure. *Compare,* Plaintiffs' Motion for Consideration of Additional Evidence, Applt. App. at 225-232 , to the Court's decision refusing such evidence.  Applt. App. at 357 et seq.

## ISSUE II

## THE COURT ERRED IN DISMISSING STUDENT'S DISCRIMINATION

CLAIM BASED ON DISTRICT'S FAILURE TO PROVIDE BOOKS ON TAPE

A.    Standard of review

_____The District court dismissed Plaintiff's disability discrimination claim for failure to provide books on tape because "Plaintiffs have not come forward with specific, admissible evidence showing a disputed issue of material fact on each essential element of the ADA and Section 504 claims stated in their Complaint." Applt. App. at  386 . This Court will review the district court's grant of summary judgment *de novo,* viewing the record in the light most favorable to Plaintiff, the party opposing summary judgment in the district court.  Neal v. Lewis, 414 F.3d 1244, 1247 (10th Cir. 2005). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.  "In discrimination cases, where intent and credibility issues inhere, summary judgment standards should be applied strenuously." (Citation omitted.)  Swenson v. Lincoln Co. Sch. Dist. No. 2, 260 F.Supp.2d 1136, 1142 (D.Wy. 2003).

B.    Issue raised below

_____The parties fully briefed APS's Motion for Summary Judgment on Plaintiffs' disability discrimination claims.  *See* Applt. App. 184 et seq., 277 et seq., 290 et seq.The Court ruled on the motion in decision of July 2006.  Applt. App. at 333 et seq.  Plaintiff argued below that APS's failure to provide books on tape during 7th

-34-

grade, *a fact admitted by the APS's motion* (material fact 15, Applt. App. at 189 ), was disability discrimination. The Court rejected the discrimination claim based on failure to provide the required Books on Tape stating that the discrimination claim was "short-circuited" by the IDEA claims.  Applt. App. at     380.

C.    Discussion

_____ 1.    Absence of genuine issues of material fact as to failure to provide books on tape in 7th grade did not support summary judgment for APS.

_____The necessary elements supporting disability discrimination based on failure to provide books on tape during 7th grade were included in the District's own motion. Elements necessary to prove disability discrimination are that 1) Plaintiff is a qualified person with a disability; 2) plaintiff was excluded from benefits or services of a public entity or was otherwise discriminated against by the public entity; 3) such exclusion, denial of benefits, or discrimination was because of Plaintiff's disability. Swenson , 260 F.Supp.at 1144.  Here, Plaintiff's status as a person with disability was established in APS's motion recognizing him as a student receiving special education. APS's motion also admitted (Material Fact 15) that he was denied the Books on Tape required by his IEP.  The failure to supply the service identified on the IEP (Books on Tape) was *per se* discrimination based on Plaintiff's disability. The IEP team had determined that Plaintiff *needed* the Books on Tape to access education and so the

*failure to provide* the service necessary to access education was because of Student's disability.

While the Court's opinion states that Plaintiff failed to "come forward" with genuine issues of material fact, this reasoning as to the Books on Tape issue is precarious. As to the failure to provide Books on Tape during 7th grade, there were no genuine issues of material fact and the Court's opinion instead ruled against Plaintiff on an issue of *law* upon which it was incorrect.

B.    Prevailing under the IDEA does not "short circuit" ability to obtain relief under the ADA or Section 504.

According to the court, plaintiff had already "prevailed" and obtained "remedy" under the IDEA resulting in the "short-circuiting" of the Section 504 and ADA claims. Applt. App. at 380. Leaving aside the question of whether Plaintiff obtained any relief for the failure to provide Books on Tape in the 7th grade, the district court's "short-circuit" argument has recently been rejected by this Court in Ellenberg v. NMMI, 2007 U.S.App. LEXIS 5275 (10th Cir. 2007). In Ellenberg, this Court specifically rejected the notion IDEA can be read to winnow down rights or remedies conferred by Section 504 and the ADA. 2007 U.S.App. LEXIS 5275, [46]. The Court recognized "Congress' express legislative mandate that the IDEA should not be 'construed to restrict or limit the . . . remedies available under the. . . [ADA or

Section 504].” Id.

The district court  correctly understood that Plaintiff was seeking injunctive and declaratory relief (not compensatory damages) for the disability discrimination, but then the Court illogically found that the IDEA relief was sufficient and had mooted any request for relief under the discrimination laws.  Applt. App. at 385.  As discussed earlier in this brief, there was no IDEA relief provided which either identified the systemic failure to provide Books on Tape or which “cured” the underlying problem in provision of that service.  The Court’s deferral to the IEP team for provision of Books on Tape to S.M. in the future when the team had previously been unable to provide the service was no solution at all.  If “remedy” allegedly obtained by S.M. under the IDEA for failure to provide Books on Tape during 7th grade, which remedy specifically does not include any systemic change or future entitlement, is all that is available based on IDEA , then that is a clear limitation of the potential of declaratory and injunctive relief which could be available under Section 504 or the ADA to *correct* the discrimination.  *See, e.g.,* New Mexico Ass’n for Retarded Citizens v. State of New Mexico, 678 F.2d 847 (10th Cir. 1982).

ISSUE III

REDUCTION OF ATTORNEY FEES WAS AN ABUSE OF DISCRETION.

A.    Standard of review

-37-

_____ Attorney fees awarded under the IDEA would appear to be reviewed in this Circuit for abuse of discretion.  Attorney fees under the IDEA are available to families who are the "prevailing party."  20 U.S.C. §1415(i)(2)(B).  The Court has discretion to award "reasonable attorneys' fees."  Id.  The Tenth Circuit has indicated that Congress intended "prevailing party" to have the same meaning as it does under 42 U.S.C. §1988.  Urban v. Jefferson County Sch. Dist., 89 F.3d 720 (10th Cir. 1996).  "Prevailing party"  determination is reviewed for abuse of discretion.  Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025 (9th Cir. 2006).

B.    Issue raised below

_____Plaintiff originally sought fees in her Complaint in this case as well as her Motion to Dismiss in the companion case filed by APS as an "Application for Preliminary injunction."   Applt. App. at 12,18 ; Applt. App. at 539, 547.  The Court requested briefing on entitlement to fees in its July 2006 decision on the merits.  Applt. App. at 388.  Plaintiffs sought award of $40,375.14  for attorneys fees and costs in the IDEA administrative proceedings as well as the court action necessary, in both this case and the companion case, to achieve the remedy achieved by the IDEA due process proceedings in which Plaintiff was the prevailing party.  Applt. App. at 390.  The Court ruled in a Memorandum opinion and order that Plaintiff was entitled to $8,751.19.  Applt. App. at 498.

C.    <u>Discussion</u>

_____1.    <u>Plaintiff was the prevailing party and requested reasonable fees.</u>

_____As result of the final administrative order which concluded that APS had denied FAPE to S.M. during 7th and 8th grade by failing to provide appropriate reading instruction, the District was ordered to reimburse the family for monies spent to purchase appropriate reading instruction. Other relief was also awarded.  Adm. RP at 302-303.    The District then attempted to reverse the AAO order for monetary reimbursement of reading instruction costs by filing its "Application for Preliminary Injunction" which was dismissed after Plaintiff filed a Motion to dismiss.  The order dismissing APS's "Application" indicated dismissal was *without prejudice.*  APS subsequently attempted to escape its obligation to reimburse for the costs of reading instruction by filing a Motion to amend its answer in this case.  That motion was pending during the next months of discovery and not dismissed until February 2006, after Plaintiff had already deposed the Director of Special Education to find out why the District had still failed to pay the Millers the reimbursement the Court had said, in July 2005, was due in August 2005.  Applt. App. at 396-399.

_____Plaintiff sought fees for work in three distinct phases: 1) the IDEA administrative due process proceedings and administrative appeal (from the filing of the due process request in October 2004 through the AAO order in April 2005); 2)

the period in which APS prosecuted its companion "Application for Preliminary Injunction" to set aside the IDEA award (May 2005-July 2005), and 3) work in this civil action going to enforcement of the administrative remedies (May 2005-February 2006). The Court determined that Plaintiff was not the "prevailing party" for phases 2 and 3 and that, while the Plaintiff was the prevailing party for Phase 1, Plaintiff's entitlement to fees was somehow reduced by not prevailing enough or being "unreasonable."

As to phases 2 and 3, the post-IDEA administrative process civil actions, Plaintiff was the prevailing party in that the continued legal representation was required in order to achieve the relief won. As to the administrative action itself Plaintiff was clearly the prevailing party and did nothing "unreasonable" to allow reduction in the requested fees.

### Phases 2 and 3

Plaintiff sought fees of $6,654.16 in connection with phase 2, defending against APS's Application for Preliminary injunction. Applt. App. at 397. Plaintiff sought fees and costs of $10,706.77 for work in this civil action directed toward obtaining the remedy ordered by the IDEA administrative process. Id. APS did not claim that the amounts requested were unreasonable for work performed. See Applt. App. at 391.

-40-

For phase 2 work successfully defending against APS's preliminary injunction request attempting to set aside the reimbursement award for denial of FAPE based on failure to provide reading instruction, the Court ruled that fees were not allowed because APS had not proceeded under IDEA.  Applt. App. at

483-484.  While it is correct that APS  attempted to subvert IDEA's procedural scheme allowing for modified *de novo* review of IDEA administrative decisions by bypassing it, it is contrary to the intent of IDEA to deny attorney fees for work necessary to *uphold* the procedural scheme for IDEA review and to protect the remedy awarded by the administrative process.  The United States Supreme Court has recognized that availability of fees is a necessary feature of the procedural rights given to parents in order to "level the playing field" in attempting to achieve IDEA implementation with non-complying public school districts.

> IDEA . . . requires state authorities to organize hearings in
> a way that guarantees parents and children the procedural
> protections of the Act.  Finally, *and perhaps most importantly,*
> parents may recover attorney's fees if they prevail.

(Citation omitted; emphasis added.)  Schaffer v. Weast, 546 U.S. 49, 126 S.Ct. 528, 537 (2005).

It is a contortion of public policy to deny fees to Plaintiff for legal representation necessitated by APS's attempt to avoid implementation of an IDEA remedy awarded.  The Court, while stating that APS did properly use IDEA,

nevertheless had to rely and interpret IDEA herself in dismissing APS's action. Applt. App. at 569 et seq.

Even after the Court's order dismissing APS's Application and holding that the reimbursement remedy must be effectuated, APS balked.  It filed a motion seeking now to evade the remedy by appealing it.  Applt. App. at 30.  The Millers did not receive reimbursement for the reading instruction ordered by the AAO to accrue by the time school started in August 2005 until February 2006 *after* Plaintiffs' counsel deposed the APS special education director to determine reasons for nonpayment and after the Court entered its order in January 2006 denying APS's motion to amend its answer to add a counterclaim.  Applt. App. at 397-398.  The court ruled that Plaintiffs are not entitled to relief for this phase of the legal work because it was "unnecessary." Applt. App. at 484.   However, Plaintiff maintains that it only became "unnecessary" after the Court refused APS's request to amend and APS finally complied.   Plaintiff did not seek fees for work unrelated to ensuring receipt of the AAO ordered remedy of reimbursement for reading instruction.

        2.      Awarding only one third of fees requested was an abuse of discretion.

        Plaintiff requested $23,014.21 in fees and costs for the IDEA administrative proceedings, phase I.  The Court awarded $8,751.19, or approximately 1/3 of the total.    APS had not challenged the reasonableness of counsel's hourly rate of

$200.00. Applt. App. at 391. During approximately the same time period, defense counsel billed $33,653.17, or approximately 1/3 *more than* counsel for Plaintiffs. Applt. App. at 395-396. However, the Court ruled that Plaintiffs' fees should be reduced. Plaintiff's fees cannot have been unreasonable when Plaintiff prevailed and billed *one third less* than the attorneys for the school district. Provision of FAPE is the way to eliminate attorney fees. *See, e.g.,* <u>Florence Co. Sch. Dist. Four v. Carter,</u> 510 U.S. 7, 15 (1993) (unanimous opinion of the court ordering private school tuition reimbursement notes that the way for a school district to avoid a reimbursement expense is to provide the student with a FAPE in the first place).

The district court applied a "degree of success" test not fairly applied to IDEA cases in general or this one in particular. The Court's wish to track work on discrete claims by review of Plaintiff's counsel's billing records is misguided in an area of law where the provision of FAPE is not capable of discretely splicing the claims. The Court's decision that Plaintiff did not prevail "significantly" differs substantially from precedent on what constitutes a "prevailing party" for purposes of IDEA fee awards. *See, e.g.,* <u>Park v. Anaheim Union High Sch. Dist.,</u> 464 F.3d 1025 (9th Cir. 2006) (family litigation which resulted in significant change in legal obligations to the student made family a prevailing party). The District here was ordered to reimburse the family for more than one year of privately purchased reading instruction based on

-43-

the district's failure to provide a FAPE.

Lastly, the Court's reduction of fees based on the court's expressed belief that the case "involved relatively straightforward and *easily provable* violations of the IDEA" is belied by the record and by litigation in this field. There is nothing straightforward or easily provable under the IDEA, particularly in the area of obtaining appropriate reading instruction and related services for students with learning disabilities. *See, e.g.,* Pendergast, K., "Comment: Schaffer's Reminder: IDEA Needs another improvement," 56 Case W. Res. 875 (Spr. 2006)," Deberry, J., "Comment: When Parents and educators clash: are special education students entitled to a Cadillac education?", 34 St.Mary's L.J. 503, 514 (2003) ("Disagreement over what services a child requires or what specific methodological program should be implemented are substantive issues for which the statute offers limited guidance." ) Districts, just like APS, put out extraordinary effort to defeat these  claims relating to methodology for teaching reading.

The Court erred in ruling reducing Plaintiff's request for fees for the IDEA administrative proceedings based on "limited degree of success on their claims" and a statutory requirement that fees be "reasonable." Plaintiffs were the prevailing party on substantial issues in the case, achieving full reimbursement for private reading instruction purchased and continuation of such instruction during the summer of

2005, because of the findings that the District had denied FAPE in two school years.

As APS had not contested the reasonableness of fees claimed for work performed, the Court's assessment that the work was not "complex" is not controlling. There was no issue before the Court as to the reasonableness of fees requested for work performed.

<u>CONCLUSION</u>

Leslie Miller asks this Court to reverse the District Court's decision upholding remedy awarded for failure to provide books on tape under IDEA and remand with instructions to 1) take evidence on APS's policies and practices for provision of Books on Tape to students with reading disabilities, and 2) reconsider remedy for the earlier failures to provide Books on Tape. Miller also asks this Court to find that refusal to consider evidence on systemic issues offered by families, in IDEA proceedings, to be contrary to the IDEA and reversible error as a matter of law.

Miller asks this Court to reverse the District Court's grant of summary judgment to APS on Plaintiffs' discrimination claims based on the failure to provide Books on Tape during 7th grade and 8th grade and remand for trial on that claim.

Finally, Miller asks this Court to reverse the District Court's decision to award fees and costs of $8,751.19 as an abuse of discretion. Miller asks this Court to award

payment of the full amount sought below ($40,375.14) and also to award reasonable fees and costs for this appeal.

## ORAL ARGUMENT

Leslie Miller seeks oral argument as to the exclusion of "systemic" issues from IDEA review because the exclusion of such evidence negatively impacts the implementation and rights afforded under the IDEA.  Plaintiff also believes that oral argument on the proper interpretation of IDEA's attorney fees provision is warranted based on the paucity of IDEA fee awards case law  in this Circuit and the detrimental impact on families' abilities to enforce IDEA if the district court's award stands.

Respectfully submitted,

STEVEN GRANBERG, ATTORNEY AT LAW, P.A.

_____

Gail Stewart
1400 Central SE, Suite 3300
Albuquerque, NM 87106
Telephone: 505-244-3779
Fax: 505-245-8558

## CERTIFICATE OF SERVICE

I hereby certify that on 29 March 2007 (evening of 3/28/2007 but after 11:59 p.m.),  I served a copy of this brief electronically on Michael Carrico at mcarrico@modrall.com and Andrea Robeda at akr@modrall.com.  I also certify that on 30 March I will hand deliver two copies of this brief and a copy of the Appendix to Michael Carrico and Andrea Robeda, counsel for Albuquerque Public Schools at Modrall Sperling, 500 4th St. NW, 7th floor, Albuquerque, NM 87102.

## CERTIFICATE OF COMPLIANCE

As required by Fed.R.App.P. 32(a)(7)(C), I certify that this brief is proportionately spaced 14 point type and contains 12,125 words.  I relied on my word processor (Word Perfect 9) to obtain the count.  I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

_____

Gail Stewart

_____

_____

_____

_____