UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

LESLIE AND JACK MILLER,          )
On behalf of their minor child,   )
S.M.,                             )
      Plaintiff/Appellant,   )
vs.                               )          Case No. 06-2345
                                 )
BOARD OF EDUCATION OF THE         )
ALBUQUERQUE PUBLIC SCHOOLS,       )
                                 )
      Defendant/Appellee.    )

_____

On Appeal from the United States District Court
for the District of New Mexico

Honorable M. Christina Armijo
United States District Court Judge

District Court No. CIV 05-502 MCA/WPL

_____

**APPELLEE'S PRINCIPAL AND RESPONSE BRIEF**
**(Attachment A in scanned pdf format and in hard copy)**

MICHAEL L. CARRICO
ANDREA K. ROBEDA
Modrall, Sperling, Roehl, Harris & Sisk
Post Office Box 2168
Albuquerque, New Mexico  87103-2168
505.848.1800
*Counsel for Defendant/Appellee Board of
Education of the Albuquerque Public
Schools*

**APPELLEE DOES NOT SEEK ORAL ARGUMENT.**

## TABLE OF CONTENTS

**Page**

PRIOR OR RELATED APPEALS ................................................................. 1

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF THE ISSUE ON CROSS-APPEAL ............................... 1

STATEMENT OF THE CASE ..................................................................... 1

STATEMENT OF THE FACTS .................................................................. 8

SUMMARY OF THE ARGUMENT .......................................................... 14

ARGUMENT ............................................................................................. 18

  I.(A).     The District Court Correctly Rejected Plaintiff's Request
          To Submit Additional Evidence................................................. 18

  II.(A).    The District Court Correctly Analyzed Plaintiff's Section
          504 And ADA Claims................................................................. 30

  III.(A).  The District Court's Attorney Fees Award Should Be
          Upheld. ...................................................................................... 36

  IV.(A).  Section 1415(E)(2) Provides A Mechanism For A School
          District To Challenge A Hearing Officer's Award Of
          Reimbursement to Parents for Educational Expenses. ............... 46

CONCLUSION ........................................................................................... 50

# TABLE OF AUTHORITIES

**Page**

## Cases

*A.S. ex rel. V.S. v. Colts Neck Bd. of Educ.*, 190 Fed. Appx. 140 (3d. Cir. 2006) .................................................................................. 41

*Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114 (9th Cir. 2006) ...................................................................................... 38

*Ahmad v. Furlong*, 435 F.3d 1196 (10th Cir. 2006) ..................................... 46

*Alex G. v. Board of Trustees of Davis Joint Unified Sch. Dist.*, 387 F.Supp.2d 1119 (E.D. Ca. 2005) ........................................................ 33

*Alexander v. Choate*, 469 U.S. 287 (1985) ..................................................... 31

*Bd. of Educ. of Fayette County, Kentucky v. L.M.*, 478 F.3d 307 (6th Cir. 2007) ............................................................................... 26, 27

*Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176 (1982) ............................................................................ 22, 31

*C.P. v. Leon County Sch. Bd.,* 2005 U.S. Dist. Lexis 18878  (N.D. Fla. 2005) .................................................................................. 30

*Chagnon v. Town of Shrewsbury*, 901 F. Supp. 32 (D. Mass. 1995) ...... 38, 41

*Corneveaux v. CUNA Mutual Ins. Group*, 76 F.3d 1498 (10th Cir 1996) ..................................................................................... 36

*Cudjoe v. Indep.  Sch. Dist. No. 12*, 297 F.3d 1058 (10th Cir. 2002) ..... 30, 35

*Doe v. Brookline Sch. Committee*, 722 F.2d 910 (1st Cir. 1983) 14, 18, 48, 49

*Doe v. University of Maryland Med. Sys. Corporate*, 50 F.3d 1261 (4th Cir. 1995) .................................................................................. 30

*Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 2007 U.S. App. Lexis 5275 (10th Cir. 2007) ......................................... 15, 16, 34

*Farmers Alliance Ins. Co. v. Commercial Union Ins. Co.*, 1992 U.S. App. Lexis 17705 (10th Cir. 1992) .......................................... 50

*Grim v. Rhinebeck Central Sch. Dist.*, 346 F.3d 377, 2003 U.S. App. Lexis 18672 (2nd Cir. 2003) ................................................................. 22

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ................................................... 40

*Indep. Sch. Dist. No. 283 v. S.D.*, 948 F. Supp. 892 (D. Minn. 1996) .... 33, 41

*Kari H. v. Franklin Special Sch. Dist.*, 187 F.3d 636, 1999 WL 486400 (6th Cir. 1999) .............................................................. 41

*Kikumura v. Osagie*, 461 F.3d 1269 (10th Cir. 2006) ................................... 46

*L.B. v. Nebo Sch. Dist.*, 379 F.3d 966 (10th Cir. 2004) .......................... 18, 19

*Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182 (10th Cir. 1990) ................................................................ 47

*Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704 (7th Cir. 2005) ........... 38

*Logue v. Unified Sch. Dist. No. 512*, 153 F.3d 727 (Table) 1998 WL406787 (10th Cir. 1998) ................................................... 18

## TABLE OF AUTHORITIES

**Page**

*Lopez v. Dist. of Columbia*, 383 F. Supp. 2d 18 (D. D.C. 2005) .................. 41

*Monahan v. Nebraska*, 687 F.2d 1164 (8th Cir. 1982) ................................. 33

*Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895 (7th Cir. 1996) ....................................................................................................... 40

*N.L. v. Knox County Sch.*, 315 F.3d 688 (6th Cir. 2003) ....................... 31, 32

*O'Toole v. Olathe Unified Sch. Dist. No. 233,* 144 F.3d 692 (10th Cir. 1998) ................................................................................................ 18

*Pace v. Bogalusa Sch. Dist.*, 325 F.3d 609, *aff'd en banc* 403 F.3d 272 (5th Cir. 2005), *cert. denied,* 546 U.S. 933 (2005) ............... 16, 32, 35

*Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268 (10th Cir. 2000)....................... 35

*Roland M. v. Concord Sch. Committee*, 910 F.2d 983 (1st Cir. 1990)......... 22

*Roth v. Green*, 466 F.3d 1179 (10th Cir. 2006) ............................................ 47

*Sutton v. Lader,* 185 F.3d 1203 (11th Cir. 1999)......................................... 30

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782 (1989)............................................................................................... 40

*Troy Sch. Dist. v. Boutsikaris*, 317 F. Supp. 2d 788 (E.D. Mich. 2004) ............................................................................................... 41

*United States v. Item 1: a 1990 Jeep Cherokee*, 147 Fed. Appx. 775 (10th Cir. 2005) ................................................................................. 46

*Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720 (10th Cir. 1996) ......................................................................................... passim

*W.C. v. Cobb County Sch. Dist.*, 407 F.Supp.2d 1351 (N.D. Ga. 2005) .............................................................................................. 33

*Watson v. Beckel*, 242 F.3d 1237 (10th Cir. 2001) ..................................... 47

*Yapp v. Excel Corp.*, 186 F.3d 1222 (10th Cir. 1999) ................................. 47

## Statutes

20 U.S.C. § 1401 .......................................................................................... 48

20 U.S.C. § 1415(e)(2)........................................................................... passim

20 U.S.C. § 1415(i)(2)(A) ............................................................................... 1

20 U.S.C. § 1415(i)(3)(B) ............................................................................. 36

20 U.S.C. § 1415(i)(3)(D) ....................................................................... 17, 42

28 U.S.C. § 1291 ............................................................................................. 1

29 U.S.C. § 794 ............................................................................................. 30

34 C.F.R. § 104.33(b)(1)................................................................................ 31

34 C.F.R. § 104.4(b)...................................................................................... 31

42 U.S.C. § 12132 ......................................................................................... 30

## Other Authorities

Fed. R. App. P. 4(a)(3) .................................................................................... 1

## Rules

Fed. R. Civ. P. 15(a)...................................................................................... 47

## PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## JURISDICTIONAL STATEMENT

District court jurisdiction over APS' counterclaim existed based upon Plaintiff's filing of a civil action, pursuant to 20 U.S.C. § 1415(i)(2)(A) of the Individuals with Disabilities Education Act after exhausting her administrative remedies.[1]  This Court has jurisdiction under 28 U.S.C. § 1291 because APS sought review in this Court pursuant to Fed. R. App. P. 4(a)(3) on November 28, 2006, which was within fourteen days after Plaintiff timely appealed (on November 20, 2006) the district court's final judgment dated October 23, 2006.

## STATEMENT OF THE ISSUE ON CROSS-APPEAL

Whether IDEA provides a mechanism for a school district to challenge an administrative hearing officer's award of reimbursement to parents for educational expenses?

## STATEMENT OF THE CASE

Plaintiff filed an Individual with Disability Education Act ("IDEA") due process claim against the Albuquerque Public Schools Board of Education ("APS") in October 2004 claiming that APS deprived her son,

---

[1] While S.M.'s mother and father brought the original due process claim, administrative appeal and civil action together, only Leslie Miller, S.M.'s mother, appealed the district court action to this Court.  See Plaintiff's Brief in Chief at 2.  Therefore, this brief will reference only Leslie Miller as "Plaintiff."

S.M., of a free appropriate public education ("FAPE") during his 6th, 7th and for the first few months of his 8th grade years. Admin RP 128-130. The gravaman of Plaintiff's claim was that APS failed to provide an appropriate reading methodology to S.M., that an appropriate reading methodology was not available through APS and that as a result, Plaintiff was forced to obtain a private reading methodology (called "Academic Language Therapy" or "ALT") for which Plaintiff was entitled to past reimbursement (for the expense incurred during part of S.M.'s 7th and 8th grade years) and future payment for as long as S.M. was enrolled in APS. Admin TR Vol. IV 184-185, Aplt. App. at 370. Plaintiff also asserted that APS deprived S.M. of FAPE by not providing him with books on tape, that books on tape was the only means of assuring that S.M., who could not read at grade level, could access the general curriculum, and that S.M. was entitled to the continued provision of books on tape for the remainder of his enrollment in APS.[2] Admin RP 129, 299.

---

[2] Plaintiff also asserted additional claims regarding various components of the educational services provided to S.M. including: (1) whether APS educated S.M. with non-disabled children to the maximum extent appropriate; (2) whether Plaintiff was entitled to reimbursement for monies expended to acquire independent evaluations; (3) whether the APS personnel that worked with S.M. had the content knowledge and collaborative skills needed to meet S.M.'s needs and whether the APS provided them with adequate training and support; (4) whether S.M.'s IEPs complied with IDEA requirements; (5) whether APS provided S.M. with extended school year ("ESY") services as necessary for S.M. to receive FAPE; and (6) whether APS was required to, and if so, whether APS failed to conduct occupational therapy and assistive technology evaluations. Admin RP 130. Of these issues, APS prevailed on five out of the six issues Plaintiff raised. The due process hearing officer held that (1) Plaintiff failed to prove that S.M. was not mainstreamed to the maximum extent appropriate in 6th, 7th and 8th grades (Admin RP 15, 18, 20); (2) S.M. was not entitled to an independent evaluation at public expense (Admin RP 26); (3) there was insufficient evidence to find an IDEA violation based on the training and content knowledge of APS personnel (Admin

After a four day evidentiary hearing the due process hearing officer ("DPHO") ruled against Plaintiff on the two main issues.  The DPHO concluded that an appropriate reading methodology for S.M. was available through APS and that Plaintiff failed to prove that the private reading methodology she had procured was necessary in order for S.M. to receive a FAPE.  Admin RP 29-30.  The DPHO concluded that the Wilson reading program ("Wilson") offered by APS was appropriate to meet S.M.'s needs. *Id*.  Both Wilson and ALT are proprietary reading programs that are based on the Orton-Gillingham philosophy emphasizing a sequential, structural, multi-sensory, phonetic approach to reading instruction.  Even though APS prevailed by proving it had an appropriate reading methodology available for S.M., the DPHO awarded Plaintiff some reimbursement for the private reading instruction because the DPHO concluded that APS did not provide appropriate reading instruction to S.M. during the first few months of his 8th grade year.  Admin RP 23.

The DPHO also held that providing S.M. with his class textbooks on tape, when available, was a reasonable accommodation that would assist him to access the general curriculum.  Admin RP 26.  However, the DPHO also

---

RP 130); (4) there was insufficient evidence to prove that the IEPs were out of compliance with IDEA (Admin RP 25); (5) Plaintiff failed to prove that the ESY services offered by APS were not reasonably calculated to confer meaningful educational benefit (Admin RP 22); and (6) S.M. was entitled to have his need for OT services evaluated by APS (Admin RP 27).

held that evidence about S.M.'s willingness to use books on tape and about the parent demand for them was conflicting. *Id.* As a remedy, the DPHO held that S.M.'s IEPs for the remainder of his enrollment with APS were to be conducted in the spring for the express purpose of determining what textbooks S.M.'s placement would require and acquiring them, if available, in audio (tape or CD) before the start of school the following year. Admin RP 32.

Plaintiff appealed a multitude of the issues to an administrative appeal officer ("AAO") including: the DPHO's failure to find a deprivation of FAPE in 6th, 7th, and 8th grades based on lack of appropriate reading instruction and failure to provide books on tape; the DPHO's failure to award the continuation of ALT; failure of the DPHO to make specific findings concerning the failure to provide books on tape during each year of middle school for all classes in which textbooks or other assigned books were used; the DPHO's failure to award reimbursement of all monies requested and in particular the failure to award the total amount of ALT expense dating back to initiation of ALT and the failure to award monies spent on the independent evaluation; the DPHO's findings concerning S.M.'s placement in the least restrictive environment ("LRE"); and Plaintiff sought full review of all issues on which she did not prevail or on which

findings and conclusion were offered by her but no findings were made by the DPHO. Admin RP 168-169.

APS appealed the following issues: the provisions of the DPHO's award that gave an evaluator or therapist the responsibility of determining S.M.'s need for compensatory education; the DPHO's award of a laptop computer; the DPHO's award that required APS to conduct S.M.'s IEPs in the spring of each year for the purpose of ordering books on tape on the grounds that the award projected S.M.'s needs too far into the future; and the DPHO's award of reimbursement to Plaintiff for the cost of the Wynn software. Admin RP 164-165.

In the administrative appeal, APS prevailed again on the focal reading methodology and books on tape issues. The AAO concluded that an appropriate reading methodology was available to S.M. through APS and that Plaintiff was not entitled to future payment for ALT. Admin RP 292. Despite that conclusion however, the AAO expanded Plaintiff's award of reimbursement because she concluded that APS failed to provide appropriate reading instruction to S.M. for part of his 7th grade year. Admin RP 293. The AAO also concluded that as a further equitable remedy Plaintiff was entitled to prospective reimbursement for the services of the private provider, even though both the DPHO and AAO concluded that the Wilson

reading program offered by APS was appropriate for S.M..  Admin RP 293-294.  In addition, the AAO modified the DPHO's order with respect to the provision of books on tape because she agreed with APS that the DPHO's order went too far into the future by assuming that S.M. would always require (or want) the provision of books on tape.   Admin RP 301-303. Accordingly, instead of ordering APS to conduct S.M.'s IEPs in the spring for the rest of his enrollment in APS, the AAO's order was limited to the coming spring semester.  Admin RP 303.

Because the AAO's award of reimbursement was incompatible with the AAO's ultimate conclusion that APS had an appropriate reading methodology available to S.M., APS filed an application for a preliminary injunction against Plaintiff in federal court *(Bd. of Education of APS v. Miller,* CIV 05-487 MCA/LFG) (hereinafter referred to as the "Injunction Action").  Aplt. App. at 97.  In the Injunction Action APS sought to reverse the AAO's award of reimbursement on the grounds that the AAO misinterpreted the law and ordered APS to provide S.M. with a specific proprietary reading methodology through a private provider even though she simultaneously ruled that an appropriate reading methodology was available to S.M. at his school.  Aplt. App. at 97.  The district court denied APS' request for a preliminary injunction and held that the reimbursement

awarded by the AAO only applied to compensatory education provided through August 2005 and the relevant provisions of IDEA do not provide a mechanism by which a school district may avoid or delay an award of prospective compensatory education. Aplt. App. at 101. The district court dismissed the Injunction Action without prejudice. Aplt. App. at 97.

After APS filed the Injunction Action, Plaintiff filed a separate civil action asking for partial review and modifications of the AAO decision as well as claims for disability discrimination pursuant to Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act *(Miller v. Bd. of Education of APS,* CIV 05-502-JP/WPL). Aplt. App. at 97. APS answered but did not challenge the decision of the AAO through a counterclaim because the Injunction Action was still pending. After the Court dismissed APS' Injunction Action, APS moved to amend its answer to add a counterclaim to challenge the AAO's award of prospective reimbursement. Aplt. App. at 97. The district court denied APS' motion for leave to file an amended answer on the grounds that the IDEA does not provide a mechanism for school districts to challenge prospective compensatory education awarded by an administrative appeal officer. Aplt. App. at 101.

On July 31, 2006 the district court issued an order ruling on all pending motions. Aplt. App. at 333-389. The district court ruled against Plaintiff on all outstanding motions which included the Plaintiff's third failed request for future payment for the private reading methodology for the remainder of S.M.'s enrollment in APS, a motion to bifurcate and certify a class action, and a request for the admission of additional evidence. Aplt. App. at 387-389. The district court also granted APS' motion for summary judgment on Plaintiff's disability discrimination claims and held Plaintiff was not entitled to any further relief in the civil action and that she did not prevail on any of her claims in the civil action. Aplt. App. at 387-389. Accordingly, the district court ruled that the only issue remaining in the case was whether Plaintiff was entitled to attorney fees incurred for the IDEA proceeding. Aplt. App. at 387-389. The district court held that because of the limited amount of relief Plaintiff obtained in the IDEA proceedings she was only entitled to $8,751.19 in attorney fees and entered a final order on October 23, 2006. Aplt. App. at 498.

## STATEMENT OF THE FACTS

At the administrative level Plaintiff maintained that in order for S.M. to receive FAPE, he had to be provided with ALT in a one to one setting. Admin RP 292. ALT is a proprietary reading program that is based on the

Orton-Gillingham philosophy.    The Orton-Gillingham philosophy is a systematic, sequential, structured, multi-sensory method of reading instruction.   ALT is merely a branch of the Orton-Gillingham philosophy. Thus, Plaintiff was requesting more than a specific reading methodology; she was requesting a particular proprietary package within the umbrella of the Orton Gillingham methodology.   In response to Plaitniff's request for ALT, APS argued that the reading methodology available through S.M.'s school, Wilson, was appropriate.   Wilson is yet another specific proprietary reading program within the same umbrella of instructional methodologies as ALT that teaches students to read.   Both the DPHO and AAO ultimately concluded that Wilson was appropriate for S.M.  Admin RP 292.

The record below demonstrates the significance Plaintiff placed on the reading issue.   In her closing statement Plaintiff's counsel emphasized the importance of the issue, "The first item on there is the one that is the most important to the family and the student, my client, with regard to coming forward with this hearing, and that's instruction in reading, writing, and spelling, and receiving instruction that is specialized to meet [S.M.'s] needs as he is right now, an 8th grader with about one semester left before moving into high school." Admin TR Vol. IV 184-185.  Plaintiff failed at each level

9

of the proceeding below to establish that S.M. needed ALT as a reading methodology, and had abandoned her primary claim on appeal.

The evidence and the record below demonstrate that APS had an appropriate reading methodology available to S.M. within APS and for that reason the DPHO, AAO and district court judge all held that Plaintiff was not entitled to the ultimate relief she sought – payment by APS for S.M.'s preferred reading methodology (ALT) for the remainder of his enrollment in APS.  Aplt. App. at 372-375.  Because Plaintiff lost the primary issue on every level, Plaintiff minimizes its role in this appeal, and emphasizes collateral issues in the hopes of obtaining a larger attorney fee award.

Plaintiff also pursued the books on tape issue at the administrative levels.  However, there has never been resistance from APS regarding the provision of this service.  There was an omission during S.M.'s 7th grade year when S.M.'s IEP team included books on tape on his IEP as a service but did not follow through with the provision of that service.  Admin RP 300.  The issue in the administrative proceeding was whether alternate forms of providing oral delivery of text instruction that were provided, i.e. teacher reading aloud, peer reading, and text to voice software, substituted for books on tape.  Admin RP 299-300.  As to books on tape, APS did not oppose that

service.  Indeed, APS offered books on tape as part of its offer to settle, before the administrative hearing took place.  Aplt. App. at 451.

Regardless, Plaintiff was similarly unsuccessful in securing the type of relief she desired with regard to books on tape and she never successfully established that books on tape was the only successful means of assuring S.M. access to the general curriculum.  The DPHO's decision succinctly states that Plaintiff proved only that providing S.M. with textbooks on tape, **when available**, was a reasonable accommodation that would assist S.M. in accessing the general curriculum.  Admin RP 26 (emphasis added).  In addition, the DPHO held that evidence on S.M.'s willingness to use books on tape, and the parents' demand for them, was conflicting.  Admin RP 26.  By no means can this decision be construed to mean that Plaintiff was successful in obtaining the relief she requested – the guaranteed provision of books on tape to S.M. for the remainder of his education in APS.  Rather, the DPHO held that the IEP team should meet each spring to determine whether and which classes would require the provision of books on tape.  Admin RP 32.  The DPHO's decision was modified by the AAO who agreed with APS that an order requiring APS to meet each spring to order S.M. books on tape for the remainder his enrollment in APS went too far into the future.  Admin RP 301-303.  Accordingly, the AAO's order was limited to the coming

spring and she ordered APS to meet then and determine which books on tape S.M. would need for the coming school year.  Admin RP 303.  The district court judge affirmed the AAO's order.  Aplt. App. at 378-379.

Both hearing officers agreed that APS' reading instruction provided S.M. with FAPE in the 6th grade.  Admin RP 289.  The hearing officers split with regard to their decision about APS' reading instruction in the 7th grade: the DPHO determined it was appropriate and the AAO determined that it was appropriate for the first semester of 7th grade but that the reading instruction APS provided S.M. in second semester of 7th grade failed to provide him a FAPE.  Admin RP 290-291.

The DPHO determined that APS failed to provide S.M. with a FAPE for the first few months of 8th grade because APS acquiesced to the Plaitniff's demand that APS not provide reading instruction at school while S.M. was receiving ALT reading instruction from the private provider. Admin RP 21.  The evidence in record however, indicates that APS did offer Plaintiff Wilson reading instruction at the beginning of S.M.'s eighth grade year.

> Q.    At this last IEP in September of this year, did you discuss reading instruction with the Miller family?
> A.    I believe I expressed my concerns about [S.M.] not receiving reading instruction at school, and told them that we did have two Wilson teachers available at the campus.

Admin TR Vol. IV 169.  Nevertheless, the DPHO ordered APS to reimburse Plaintiff for the cost of ALT that Plaintiff paid the private provider from the beginning of S.M.'s 8th grade year until the date of the DPHO decision. Admin RP 32.

The AAO expanded the DPHO's award of reimbursement because she concluded that APS failed to provide S.M. with FAPE for a portion of his 7th grade year.    Admin RP 293.    Accordingly, she awarded Plaintiff reimbursement for ALT for half of S.M.'s 7th grade year in addition to the few months of reimbursement awarded by the DPHO for the 8th grade year. *Id.*  As an equitable remedy, the AAO awarded Plaintiff reimbursement for the rest of S.M.'s 8th grade year and through the summer even though she agreed with the DPHO that the Wilson reading program available to S.M. at his school was appropriate.  *Id.*  Ultimately however, both the DPHO and the AAO determined that the Wilson reading program available to S.M. at his school was appropriate and that ALT was not necessary in order for S.M. to receive FAPE.  Admin RP 292.  Because that ruling was inconsistent with the reimbursement award and contrary to controlling law, APS sought to challenge it.

In denying APS' motion for leave to amend, the district court held that IDEA does not provide a mechanism for a school district to challenge a

hearing officer's award of prospective compensatory education and denied APS' motion for leave to amend on the grounds that APS' proposed amendment would be futile. Aplt. App. at 101. The district courts' ruling denies APS' rights under 20 U.S.C. § 1415(e)(2) which affords any party the right to bring a civil action in federal court. IDEA authorizes a broad grant of equitable power designed to provide courts maximum flexibility in effectuating the statutory objectives. *Doe v. Brookline Sch. Committee*, 722 F.2d 910 (1st Cir. 1983). As part of that equitable power, reimbursement of tuition and related services is available to the prevailing party under the statutory authority of § 1415(e)(2) and the district court's denial of APS' motion for leave to amend, which was based on the erroneous conclusion that there is no mechanism in IDEA for APS to challenge the AAO's award of reimbursement, was in error and should be reversed. *Id.* at 921.

## SUMMARY OF THE ARGUMENT

Plaintiff has failed to establish that the district court abused its discretion in failing to admit additional evidence about the alleged systematic failures within APS to provide books on tape. That evidence is irrelevant to the claims in this lawsuit. The evidence already in the record indicates that S.M. received books on tape at times and that at other times he utilized other acceptable means of accessing the general curriculum.

Further, for the times that he was not provided with books on tape, an adequate remedy was provided.  Most importantly, it is outside the scope of IDEA for the courts to dictate to a school district the details of how to structure its overall delivery of special education and related services. Under these circumstances, Plaintiff has failed to establish any reason why additional evidence about the alleged systematic failure of provision of books on tape throughout APS should be admitted.  The DPHO, AAO and district court all correctly focused this case on S.M. and excluded evidence of alleged systematic failure.

The district court also correctly granted APS summary judgment on Plaintiff's disability discrimination claims.  Plaintiff claims the district court erred because in *Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 2007 U.S. App. Lexis 5275 (10th Cir. 2007), this Court held that IDEA cannot be read to "winnow down" rights or remedies conferred by Section 504 and the ADA.  *See* Plaintiff's Brief in Chief at 36.  Plaintiff misreads *Ellenberg*.   In *Ellenberg*, this Court dismissed the IDEA claims on jurisdictional grounds, not on the merits.  *Id*. at *3.  The dismissal of the IDEA claims was deemed not to constitute a dismissal of the "pure" 504 and IDEA claims, which were not based on a denial of FAPE, but on a denial of access to the school curriculum all together.   *Id.* at *44. In this case,

Plaintiff's 504 and ADA claims are merely restatements of the IDEA denial of FAPE claims. Aplt. App. at 380. In a case such as this, APS' compliance with IDEA is a means by which APS can meet its obligations under Section 504 and the ADA. *Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 728 (10th Cir. 1996) ("Relying on the similarity between the substantive and the procedural frameworks of the IDEA and Section 504…we conclude that if a disabled child is not entitled to a neighborhood placement under the IDEA, he is not entitled to such a placement under Section 504") (internal citations omitted); *Pace v. Bogalusa Sch. Dist.*, 325 F.3d 609, 621-23, *aff'd en banc* 403 F.3d 272, 290-97 (5th Cir. 2005), *cert. denied,* 546 U.S. 933 (2005) (a decision against the parents on an IDEA claim precluded litigation of the same claim under Section 504 or Title II of the ADA). Thus, the instant case is more like *Urban* and *Pace, supra,* than *Ellenberg* and summary judgment was properly granted by the District Court.

Plaintiff is not entitled to any more attorney fees than were awarded by the district court. Plaintiff is not entitled to any attorney fees for defending the Injunction Action because it was a separate lawsuit, and Plaintiff never filed a petition for fees in that case. Plaintiff cannot lie in the weeds until after the appeal deadline on the Injunction Action has passed and then try to backdoor fees into this case. Furthermore, this Court does

not have jurisdiction to award fees related to a separate lawsuit that is not presently before it.

With regard to the administrative proceedings, Plaintiff only prevailed on some issues and she was unsuccessful in obtaining the ultimate relief she sought:  ALT and books on tape for the remainder of S.M.'s enrollment in APS.  Plaintiff did not prevail on the focal issues in the case, nor did she prevail on many of the other issues.  The district court acted within its discretion in adjusting her fees accordingly due to the limited amount of success she obtained in the administrative proceedings and in denying Plaintiff fees for the district court action or the Injunction Action.

Alternatively, Plaintiff is not entitled to any more attorney fees because she was awarded less relief than APS offered her in settlement. Under IDEA, if the Court finds that the relief finally obtained by the parents is not more favorable to the parents than an offer of settlement, the Court can deny the parents attorney fees.  20 U.S.C. § 1415(i)(3)(D).  The relief Plaintiff was awarded in the administrative appeal is less than what APS offered her in settlement and thus the Court should deny Plaintiff's request for additional attorney fees.

Finally, the district court erred in denying APS' motion for leave to amend its answer to add a counterclaim.  The district court wrongfully

concluded that the counterclaim would be futile because there is no mechanism in IDEA for a school district to challenge an administrative hearing officer's award of reimbursement to parents for educational expenses.  By denying APS' motion for leave to file an amended answer and counterclaim, the district court deprived APS of the ability to challenge the AAO's erroneous award of reimbursement to Plaintiff.  Reimbursement of tuition and related services is available to a prevailing party under the statutory authority of 20 U.S.C. § 1415(e)(2).  *Doe v. Brookline Sch. Committee*, 722 F.2d 910, 921 (1st Cir. 1983).

## ARGUMENT

### I.(A).    The District Court Correctly Rejected Plaintiff's Request To Submit Additional Evidence.

**Standard of Review:** An abuse of discretion standard applies to the district court's denial of a request to submit supplemental evidence. *O'Toole v. Olathe Unified Sch. Dist. No. 233,* 144 F.3d 692, 708 (10th Cir. 1998); *Logue v. Unified Sch. Dist. No. 512*, 153 F.3d 727 (Table) 1998 WL406787 at *6 (10th Cir. 1998).

In *L.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004), this Court held that a federal district court reviewing an IDEA decision may accept additional evidence only for the purpose of supplementing the administrative record, but may not alter the character of review or transform

the district court proceedings into a *de novo* trial. The analysis of *Nebo Sch. Dist.* dovetails with the legal requirement of exhaustion of administrative remedies, which is designed to afford the administrative educational agency the ability to exercise discretion and apply its expertise, to allow the parties to develop a record prior to judicial review, to prevent the parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial determinations by giving the educational agency an opportunity to correct its errors. *Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996).

Plaintiff argues that the district court erred in rejecting additional evidence on "the systemic issues of dysfunction surrounding provision of Books on Tape." Plaintiff's Brief in Chief at 36. The DPHO properly excluded that evidence, her ruling was affirmed on appeal, and Plaintiff has failed to demonstrate the error of that ruling. *See* Admin TR Vol. IV 5 ("My concern is strictly with [S.M.'s] needs and whether they are being met, and I don't need to hear extraneous information about other students to make that determination."); Admin RP 300 ("Given that Student's IEP provided for Books on Tape in the 7th grade, Parents did not establish the relevance of District policy as to other students.").

The district court *twice* ruled that evidence concerning APS' system for provision of books on tape was irrelevant to the claims in this lawsuit. "Whether Books on Tape were provided to other students, at other schools, in different school years, after other IEPs were formulated, is not relevant to the provision of Book[s] on Tape to the Millers' child." Aplt. App. at 272. In a subsequent order the court affirmed this ruling. "The Millers have failed to convince me that my prior ruling on this issue was incorrect." Aplt. App. at 272. This proffered evidence was shot down at the administrative hearing, kicked out at the administrative appeal, beaten down by the district court the first go round, and flogged a second and third time; the carcass should be laid to rest.

Plaintiff's supplemental evidence argument is premised on the speculative belief that, absent Plaintiff's undefined systematic restructuring, the delivery of books on tape to S.M. is certain to fail. However, Plaintiff's own briefs and the testimony of S.M. belie Plaintiff's speculation. S.M. received books on tape at times and Plaintiff has conceded as much. "Books on Tape were provided subsequent to the Millers' filing of Due Process and in direct response to this litigation." Aplt. App. at 204, n.3. Also, S.M. testified (at his deposition taken during his 9th grade year) that he did not always use the books on tape even after they were provided.

> Q.  Have you also used books on tape?
> A.  Yes.
> Q.   Are you using them now?
> A.   I haven't used them lately.
> Q.  When was the last time you used books on tape?
> A.  I can't remember.

Aplt. App. at 259.

Regardless, for the times that S.M. did not receive books on tape, the administrative process provided a remedy.  The district court correctly sustained the rejection of Plaintiff's request for additional evidence which was also rejected by the DPHO and the AAO.

> Similarly, the evidence concerning the alleged systemic failures in allowing other students throughout the school district to access Books on Tape over the course of several years would become relevant to the remaining issues in this case *only* if Millers first established that:  (1) Books on Tape was the only appropriate and available mechanism for giving S.M. access to the written materials in question during the relevant time period, (2) Defendant failed to provide Books on Tape to S.M. during that time period, and (3) the AAO failed to award adequate compensatory relief for that failure.

Aplt. App. at 361.   As the district court concluded, Plaintiff failed to establish all three of the above and therefore, the evidence about the alleged systemic failures was not relevant and was properly excluded.

S.M. does not require *only* books on tape to receive FAPE.  Rather, there are several types of aids or assistive technologies like books on tape that accomplish the same basic purpose of converting written information

from a visual to an auditory format. Aplt. App. at 375-376. Books on tape is but one of these aids in addition to the Kurtzweil system, the Wynn Program, and reading buddies, all of which S.M. had access to at one time or another throughout the relevant time period. *Id.* The consistent use of any of these aides alone or in combination may have sufficed to enable S.M. to access the general curriculum. Aplt. App. at 376. Therefore, the decision about which technological aid to use with S.M. to help him access the general curriculum was a methodology question and it is not the Court's role to choose between the views of conflicting experts on a controversial issue of educational policy—effective methods of educating dyslexic students—in direct contradiction of the opinions of the state administrative officers who have heard the same evidence or to become embroiled in captious disputes as to the precise efficacy of different instructional programs. *See Grim v. Rhinebeck Central Sch. Dist.*, 346 F.3d 377, 383, 2003 U.S. App. Lexis 18672 at *15 (2nd Cir. 2003); *Roland M. v. Concord Sch. Committee*, 910 F.2d 983, 992 (1st Cir. 1990) (citing *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 202 (1982)).

Plaintiff mischaracterizes the evidence that is currently in the record; it does not establish that APS staff did not know how to order books on tape. Plaintiff contends that she asked for books on tape in the 6th grade and that

she was told she would have to get them herself.  Plaintiff's Brief in Chief at 24.  Yet, Plaintiff's citation does not refer to any testimony that supports that contention.  Rather, Mrs. Miller testified that she was "encouraged" to get the books on tape on her own, not that she was required to.  Admin TR Vol. IV 35.  Further, Plaintiff's testimony is contradicted by other witnesses.  In the 6th grade, even though it was not part of the IEP, APS employees tried to get S.M. books on tape but they were unable to because some of S.M.'s textbooks were older and the publishers did not have books on tape available for them.  Admin TR Vol. I 273. Regardless, there was no finding of a FAPE deprivation based on a lack of books on tape for the 6th grade because S.M. had access to the Kurtzweil machine that year.  Admin RP 303.

S.M.'s 6th grade teacher testified that she did not need to use books on tape because she read aloud to her students as a means of accessing the general curriculum.  Admin TR Vol. I 130-131.  Plaintiff mischaracterizes this testimony by inserting words into the record that are simply not there.  *See* Plaintiff's Brief in Chief at 25.  Plaintiff's quote reads as follows: "During class, I read all textbooks aloud, and so I really don't need it **[to know how to order Books on Tape],** or see it as a problem, because each of my students are not great readers.  That is one of the reasons they are in special education.   So that is usually why I read aloud…." (Emphasis

added).   The bracketed language inserted by Plaintiff changes the testimony entirely to state that the teacher did not need to know how to order books on tape when in fact she testified that she did not need to **use** books on tape because she would read aloud to her students.   Admin TR Vol. I 130-131 (emphasis added).   Plaintiff has twisted and inaccurately represented the testimony to the Court in an effort to bolster her unpersuasive argument.

Plaintiff also takes the speech and language pathologist's testimony out of context. While she testified that she was not able to get books on tape for S.M. in 6th grade because the publisher did not have books on tape available for the older textbooks S.M. was using, she never testified that she did not know how to obtain them.   Admin TR Vol. I 273.   Plaintiff deliberately misrepresents the testimony because she would like the Court to infer that conclusion.[3]   Meanwhile, Plaintiff neglects to call to the Court's attention testimony that establishes members of APS staff knew how to

---

[3] There are several other misrepresentations that, while not material, APS is compelled to call to the Court's attention.  Plaintiff claims that Ms. Werber testifed that she "probably wasn't familiar" with the procedure for ordering books on tape.  Plaintiff's Brief in Chief at 26.  However, Ms. Werbner actually testified that she was familiar with the procedure for ordering books on tape but that she probably was not familiar with that procedure in 2002.  Admin TR Vol. I 77-78.  This is key because books on tape was not required on the 2002 IEP and there was no FAPE deprivation found for that year (S.M.'s 6th grade year) because S.M. had access to the Kurtweil machine.  Admin RP 303.  Therefore, the fact that Ms. Werbner was "probably not" familiar with the procedure for ordering books on tape in 2002 is irrelevant.  Plaintiff has also misrepresented Ms. Wesson's testimony and claims that she testified that she was unsure how to order books on tape through APS.  Plaintiff's Brief in Chief at 26.  Contrary to Plaintiff's misrepresentation however, Ms. Wesson testified that she knew she could get books on tape through APS.  "You can get it through APS, books on tape."  Admin TR Vol. II 30.  Plaintiff also attempts to imply that Mr. Roman did not know how to order books on tape.  However, Mr. Roman was not using textbooks in his special education math and science class and therefore did not need to order them, although he was aware that had his class requried reading out of a textbook, he would expect to get books on tape.  Admin TR Vol II 268.

order books on tape.  In the 8th grade the school ordered books on tape for S.M.  The head teacher at S.M.'s school testified, "I recently ordered some literature books on tape for [S.M.]."  *See* TR Vol. IV p. 152.  "I've also ordered all of his textbooks on tape."  *Id.*

Furthermore, in the 6th grade when S.M. was not being read to aloud he had access to the Kurtzweil machine.  Admin TR Vol. I 273.  The AAO found there was no deprivation of FAPE in 6th grade due to the lack of books on tape because S.M. used the Kurtzweil and reading buddies to access the general curriculum.  Admin RP 30.

In 7th grade, books on tape were required on the IEP but not provided. Admin RP 300.  S.M.'s 7th grade teacher testified that Mrs. Miller told him that S.M. did not need books on tape.  Admin TR Vol. II 164.  The evidence suggests that S.M. was not always consistent in his use of books on tape. Admin RP 26.  Furthermore, S.M. had a peer reader to help him access the general curriculum in 7th grade, notwithstanding, the AAO found, because books on tape were included in the IEP and not provided, that there was a denial of FAPE based upon the failure to provide books on tape.  Admin RP 300.  As a remedy the AAO ordered APS to conduct S.M.'s IEP in the spring of his 8th grade school year to ensure that he had all the books on tape

that he needed before the next school year started.  *Id.*  The district court

held that was a sufficient remedy.

> The AAO's decisions as to the scope and duration of the
> violations relating to Books on Tape and the relief awarded to
> remedy such violations are firmly supported by the evidence in
> the record.   The AAO also tailored such relief to the
> commendable goal of restoring the cooperative process that
> Congress and the Supreme Court have envisioned for
> implementing the IDEA.  This cooperative process favors the
> types of evaluations, meetings, and use of a school district's
> expertise that are entailed by the AAO's decision, in lieu of a
> court order binding parties to a particular methodology or
> technology.

Aplt. App. at 378-379.

Plaintiff's assertion that the evidence establishes APS staff did not

know how to order books on tape is unsupported.  Rather, the evidence

establishes that members of APS staff knew how to order books on tape, that

they in fact did order S.M. books on tape at times, and that when S.M. was

not using books on tape, he was using other methods of accessing the

general curriculum.  Moreover, even if the evidence did establish that APS

staff did not know how to order books on tape, the remedy the AAO

awarded sufficiently addressed any deprivation of FAPE S.M. may have

experienced as a result of not having books on tape in the 7th grade.

Plaintiff's reliance on *Bd. of Educ. of Fayette County, Kentucky v.

L.M.*, 478 F.3d 307 (6th Cir. 2007) is misplaced as the holding in that case is

inapplicable to the case at bar. In that case, the Sixth Circuit held that "neither a hearing officer nor an Appeals Board may delegate to a child's IEP team the power to **reduce or terminate** a compensatory education award." *Id*. at 317 (emphasis added). In this case, the remedy provided by the DPHO, modified by the AAO and affirmed by the district court did not give the IEP team the power to **reduce or terminate** anything. Rather, the remedy provided allowed the IEP team, which includes S.M.'s parents, to meet during the spring of S.M.'s 8th grade school year to ensure that any audio recordings for S.M.'s textbooks would be ordered in advance of the oncoming semester. Admin RP 303. The IEP team was not given the power to reduce or terminate any service for S.M. Thus, *Bd. of Educ. of Fayette County, Kentucky v. L.M*. is inapplicable.

Finally, Plaintiff's request to submit additional evidence should be denied by this Court, as it was by the district court, because it is a thinly veiled attempt by Plaintiff to litigate her failed class action claim and change APS policy. Although not plead in her Complaint, Plaintiff made a motion for class certification on the issue of "whether Defendant APS violated the anti-discrimination provisions in Section 504 of the Rehabilitation Act and Title II of the ADA by having an intentionally dysfunctional infrastructure and system for offering Books on Tape that systematically fails to provide

Books on Tape to a class of students who presently qualify for special education based on specific learning disability." Aplt. App. at 339. Plaintiff did not appeal the district court's denial of her motion to certify a class. *See generally*, Plaintiff's Brief in Chief. Nonetheless, Plaintiff continues her crusade of systemic change relating to the delivery of books on tape. *See e.g.* Plaintiff's Brief in Chief at 32 ("To assume that the LEA will provide Books on Tape, or other auditory text access, the next time is contrary to the evidence in the record which indicates that despite a proper process...the district staff was unable or unwilling to access the service of Books on Tape for S.M. **or for any other student**.") (emphasis added).

The district court's reasoning in denying Plaintiff's motion for class certification is applicable here. If this Court permits Plaintiff to submit additional evidence, this case will be remanded to the district court and Plaintiff will be allowed to introduce evidence regarding APS' system for provision of books on tape. The only relief that could possibly result from Plaintiff's introduction of this additional evidence, if Plaintiff is successful in proving her discrimination claim, is a change in APS policy, not a specific compensatory education award for S.M. (besides, he has already received one). What Plaintiff really desires is to change the APS policy for the provision of books on tape to all students with disabilities. In denying the

motion for class certification on this issue, the district court correctly concluded that type of relief is not within the contemplation of IDEA. "[I]t is important to note that adjudication before courts and administrative tribunals is not the only mechanism for effecting changes in school policy, and class certification under Fed. R. Civ. P. 23 is not a broad license for federal courts to usurp the policy-making roles of state or local government." Aplt. App. at 349.

Plaintiff has failed to establish that the district court abused its discretion in failing to admit additional evidence about the alleged systematic failures within APS. That evidence is irrelevant to the claims in this lawsuit. The evidence already in the record indicates that members of APS staff knew how to order books on tape, that they did order books on tape for S.M., that S.M. received books on tape at times and that at other times he utilized other acceptable means of accessing the general curriculum. Further, for the times that S.M. was not provided with books on tape, an adequate remedy was provided. Regardless, it is outside the scope of IDEA for the Court to dictate to a school district the details of how to structure its overall delivery of special education and related services. Under these circumstances, Plaintiff has failed to establish any reason why

additional evidence should be admitted and the district court's decision should be upheld.

## II.(A).    The District Court Correctly Analyzed Plaintiff's Section 504 And ADA Claims.

**Standard of Review:**  The Court of Appeals employs a *de novo* standard of review of a district court's grant of summary judgment, applying the same legal standard used in the district court.  *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1062 (10th Cir. 2002).

The Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, and Title II of The Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, prohibit recipients of federal funds and public entities, respectfully, from discriminating against persons with disabilities by excluding them from participation in or subjecting them to discrimination in the entity's programs or activities.  *Id.*  Because the language and purpose of Section 504 and Title II of the ADA are substantially the same, the same analysis applies to claims brought under either statute.  *Urban*, 89 F.3d 720, 727-28 (10th Cir. 1996); *Doe v. University of Maryland Med. Sys. Corporate*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995); *C.P. v. Leon County Sch. Bd.,* 2005 U.S. Dist. Lexis 18878 at *7 (N.D. Fla. 2005) (citing *Sutton v. Lader,* 185 F.3d 1203, 1208 n.5 (11th Cir. 1999)).

The Supreme Court has construed Section 504 to require that an "otherwise qualified handicap individual must be provided with meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). The issue to be resolved is whether the school district provided S.M. with meaningful access to the educational programs that it offers. *N.L. v. Knox County Sch.*, 315 F.3d 688 (6th Cir. 2003) (citing 34 C.F.R. § 104.4(b)).

In the context of claims based upon a denial of FAPE, the Supreme Court's "meaningful access" analysis under Section 504 is similar to its analysis of FAPE under IDEA. *Cf. Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982) ("IDEA imposes a substantive educational standard…necessary to make such access meaningful").

Because the IDEA, Section 504, and the ADA, in the context of education, all have the same ultimate objective of the provision of FAPE, the Tenth Circuit has instructed that IDEA, Section 504, and ADA claims should be analyzed similarly. *Urban v. Jefferson County Sch. Dist., R-1,* 89 F.3d 720, 727-28 (10th Cir. 1996). This construction is consistent with the United States Department of Education regulations that implement Section 504. *See* 34 C.F.R. § 104.33(b)(1) (implementation of an IEP developed in

accordance with IDEA is one way that a school district can meets its obligations under Section 504).

In a case such as this, where Plaintiff's Section 504 and ADA claims are based on the same conduct as is the IDEA claim, the school district's compliance with IDEA is a means by which the school district can meet its obligations under Section 504 and the ADA. *Urban* at 728 ("Relying on the similarity between the substantive and the procedural frameworks of the IDEA and Section 504…we conclude that if a disabled child is not entitled to a neighborhood placement under the IDEA, he is not entitled to such a placement under Section 504"); *Pace v. Bogalusa Sch. Dist.*, 325 F.3d 609, 621-23, *aff'd en banc* 403 F.3d 272, 290-97 (5th Cir. 2005), *cert. denied,* 546 U.S. 933 (2005) (a decision against the parents on an IDEA claim precluded litigation of the same claim under Section 504 or Title II of the ADA); *N.L. v. Knox County Sch.*, 315 F.3d 688, 695-96 (6th Cir. 2003) ("To prove discrimination in the education context, the courts have held that something more than simple failure to provide a free appropriate public education must be shown…[the 1996 Amendment to IDEA] has not been held to have altered the prior holdings that more harm is required than a denial of free appropriate public education to make out a Section 504 claim. …In sum, precedent has firmly established that Section 504 claims are

dismissed when IDEA claims brought on the same theory of a denial of free appropriate public education are also dismissed."); *Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556 (8th Cir. 1996) (resolution of IDEA claims was dispositive on redundant Section 504 and ADA claims); *W.C. v. Cobb County Sch. Dist.*, 407 F.Supp.2d 1351, 1363-64 (N.D. Ga. 2005) (same); *Alex G. v. Board of Trustees of Davis Joint Unified Sch. Dist.*, 387 F.Supp.2d 1119, 1124 (E.D. Ca. 2005) ("In order to show violation of the Rehabilitation Act, something more than a mere failure to provide the free appropriate education…must be shown… .  We do not read § 504 as creating a general tort liability for educational malpractice, especially since the Supreme Court . . . has warned against a court's substitution of its own judgment for educational decisions made by state officials.  We think, rather, that either bad faith or misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children.") [quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170-71 (8th Cir. 1982).]  Thus, the establishment of an IDEA violation is a necessary, but not sufficient, component of plaintiff's Section 504 claim."); *C.P. v. Leon County Sch. Bd.* 2005 U.S. Dist. Lexis 18878, at *8-*12 (where the plaintiff's claims under ADA and the Rehabilitation Act arise primarily, if not entirely, from the same conduct that plaintiff claims violated his right

to a free and appropriate public education under the IDEA, the failure of the plaintiff's IDEA claims also establishes that the ADA and the Rehabilitation Act claims fail, and also holding that a school district seeks in good faith to provide an appropriate education for a disabled student does not violate Section 504 or the ADA even if it turns out that the district's educational judgment was incorrect).

Plaintiff misreads *Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 2007 U.S. App. Lexis 5275 (10th Cir. 2007) as standing for the proposition that IDEA cannot be read to "winnow down" rights or remedies conferred by Section 504 and the ADA. Plaintiff's Brief in Chief at 36. In *Ellenberg*, the court dismissed IDEA claims for lack of subject matter jurisdiction. *Id*. at *3. Because of a lack of jurisdiction, the IDEA claims were not resolved, and that could not serve as a predicate for disposition of the Section 504 and ADA claims. *Id*. This Court further held: "[b]ecause we hold that the district court lacked jurisdiction to address the IDEA claim, the district court's grant of summary judgment … on [Section 504 and ADA] claims, based solely on its finding that the IDEA claim failed, was in error." *Id*. at *3-*4. The court noted that "in the context of these pure discrimination claims, the IDEA offers no relief, for they do not relate to the provision of a FAPE in the least restrictive environment." *Id.* In this case,

unlike *Ellenberg,* Plaintiff's Section 504 and ADA claims are FAPE-based claims that have already been resolved through the IDEA proceedings.

Plaintiff's Section 504 and ADA damages claims were voluntarily dismissed.  Aplt. App. at 79.  Plaintiff's remaining Section 504 and ADA claims are claims for educational services.  Those claims, with respect to S.M.'s 6th, 7th, and 8th grades have been fully litigated and resolved.  The district court properly concluded that Plaintiff cannot duplicate a remedy by recasting the same claim under a different statute.  Aplt. App. at 383.  The district court further correctly concluded that Plaintiff may not assert claims for events relating to S.M.'s high school educational services because she has not exhausted administrative remedies with respect to such claims.  Aplt. App. at 385 citing *Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000); *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1066 (10th Cir. 2002); and *Urban v. Jefferson County Sch. Dist. R-1*, 89 F. 3d 720, 724 (10th Cir. 1996).  Plaintiff's 504 and ADA claims are merely restatements of the IDEA denial of FAPE claims.  Thus, the instant case is more like *Urban* and *Pace, supra*, and other cases that analyze these claims similarly and summary judgment was properly granted by the district court.

### III.(A).   The District Court's Attorney Fees Award Should Be Upheld.

**Standard of Review:**   The Court of Appeals reviews the district court's award of attorney fees for abuse of discretion. *Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 729 (10th Cir. 1996) (citing *Corneveaux v. CUNA Mutual Ins. Group*, 76 F.3d 1498, 1508 (10th Cir 1996). Under IDEA the court can, in its discretion, award the parents their attorney fees if they are the "prevailing party."   20 U.S.C. § 1415(i)(3)(B).   The district court's award of attorney fees should be upheld because (1) Plaintiff is not entitled to any fees associated with the Injunction Action APS filed, (2) Plaintiff obtained only a limited amount of success in her IDEA claims at the administrative level, and (3) APS offered Plaintiff more in settlement than she was awarded at the administrative level.

Plaintiff is not entitled to any attorney fees associated with the Injunction Action because it was a separate lawsuit.  While Plaintiff claimed attorney fees for defending the Injunction Action, and she may have prevailed, she never applied for attorney fees associated with the Injunction Action.   The district court dismissed the Injunction Action and Plaintiff never made an application for attorney fees.  This Court lacks jurisdiction to consider attorney fees to which Plaintiff might have been entitled to for defending a separate civil action.   Having failed to raise her request for

attorney fees in the Injunction Action, Plaintiff cannot pursue it here, in another separate civil action.[4]   The time to request attorney fees for Injunction Action has passed.

There have been two significant issues throughout this IDEA proceeding: whether S.M. is entitled to ALT for the remainder of his education in APS and whether S.M. is entitled to books on tape for the remainder of his education in APS.  "The first item on there is the one that is certainly most important to the family and the student, my clients, with regard to coming forward with this hearing, and that's the instruction in reading, writing and spelling, and receiving that instruction that is sufficiently specialized to meet [S.M.'s] needs as he is right now, an 8th grader with about one semester left before moving into high school."  Admin TR Vol. IV 184-185.  Plaintiff lost both of these significant issues.  Thus, she is not entitled to all her attorney fees under IDEA.

Plaintiff assumes that because she prevailed on some issues, she is entitled to all her attorney fees.  This is incorrect.  "Acquiring a client with one strong claim should not give special education attorneys the green light to bill on every conceivable issue.  All children suffer when school's costs are diminished on account of expensive, needless litigation."  *Aguirre v. Los*

---

[4] APS would be prejudiced if Plaintiff were permitted to claim fees in another action because consideration of a fee petition would have been relevant to APS in deciding whether to appeal the Injunction Action.

*Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1120 (9th Cir. 2006). Instead, Plaintiff is only entitled to those fees associated with ***issues of significance*** on which she ultimately prevailed. *Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 708-09 (7th Cir. 2005) (emphasis added). APS won the two main issues in this case, ALT and books on tape. Plaintiff prevailed on some claims and therefore she is not entitled to all her attorney fees. *Id*; *see also Chagnon v. Town of Shrewsbury*, 901 F. Supp. 32 (D. Mass. 2001) (reducing fee award by half, where parent prevailed on some, but not all, issues).

Plaintiff identified the following issues for review in the administrative proceeding: (1) whether APS educated S.M. with non-disabled children to the maximum extent appropriate; (2) whether Plaintiff was entitled to reimbursement for monies expended to acquire independent evaluations; (3) whether the APS personnel that worked with S.M. had the content knowledge and collaborative skills needed to meet S.M.'s needs and whether the APS provided them with adequate training and support; (4) whether S.M.'s IEPs complied with IDEA requirements; (5) whether APS provided S.M. with extended school year ("ESY") services as necessary for S.M. to receive FAPE; and (6) whether APS was required to, and if so,

whether APS failed to conduct occupational therapy and AT evaluations. Admin RP 130.

The AAO awarded Plaintiff the following relief relative to those issues: a psycho-educational evaluation and a speech language evaluation; Occupational Therapy (OT) and Assistive Technology (AT) evaluations; OT and AT services as determined by the IEP team; reimbursement for the Wynn software program; reimbursement for ALT tutoring expenses from March 2004 until the beginning of school in August 2005; books on tape as needed and; Tier II reading program utilizing a systematic, multi-sensory, phonetically-based approach to reading taught in a small homogenous group. Admin RP 302-303.

Plaintiff was successful only in obtaining partial reimbursement for ALT and the Wynn software program and securing some evaluations. Plaintiff was unsuccessful in obtaining the ultimate relief she requested – ALT in a one to one instructional setting for the remainder of S.M.'s education in APS and books on tape for all books for the remainder of S.M.'s education in APS. Under these circumstances, she is not entitled to all her attorney fees under the IDEA.

A party "prevails" for purposes of federal fee-shifting statutes when he or she obtains "actual relief on the merits" of a claim that "materially

alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111-12 (1992).  However, the Supreme Court in *Farrar* held that "[i]n some circumstances, even a plaintiff who formally 'prevails' ... should receive no attorney's fees at all."  *Id.* at 115 (citation omitted); *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 907 (7th Cir. 1996).

The prevailing party inquiry "does not turn on the magnitude of relief obtained," but the size of the fee award does.  *Farrar,* 506 U.S. at 114.  The Supreme Court has said that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained."  *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). Therefore, "the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all."  *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 790 (1989).

Here, the district court correctly held that Plaintiff's attorney fees award should be significantly reduced due to the limited nature of her success.  "Nevertheless the limited degree of Plaintiffs' success in the administrative proceedings, combined with their lack of any success at all in the civil action that followed, provides an independent basis for substantially

reducing the amount of attorney fees and costs they are now claiming." Aplt. App. at 494. The district court carefully considered and applied the correct standard in reducing Plaintiffs' attorney fees award. Aplt. App. at 494 (citing *Troy Sch. Dist. v. Boutsikaris*, 317 F. Supp. 2d 788, 797-800 (E.D. Mich. 2004) (reducing claimed attorney fees of $74,807.75 to an award of $24,000.00); *A.S. ex rel. V.S. v. Colts Neck Bd. of Educ.*, 190 Fed. Appx. 140, 142-144 (3d. Cir. 2006) (unpublished disposition affirming district court's decision to reduce claimed attorney fees of $70,208.81 by 80% to an award of $13,636.45); *Kari H. v. Franklin Special Sch. Dist.*, 187 F.3d 636, 1999 WL 486400 at *2 (6th Cir. 1999) (unpublished disposition affirming a one-third reduction from the amount claimed to the amount awarded); *Chagnon v. Town of Shrewsbury*, 901 F. Supp. 32, 36 (D. Mass. 1995) (reducing claimed attorney fees by half to an award of $9,439.47); *Lopez v. Dist. of Columbia*, 383 F. Supp. 2d 18, 24-26 (D. D.C. 2005) (reducing claimed attorney fees of $23,834 to an award of $9,530.00 and noting that the District of Columbia Appropriations Act of 2005 limited the funds available to pay this award to no more than $4,000.00 for each action or proceeding); *Indep. Sch. Dist. No. 283 v. S.D.*, 948 F. Supp. 892, 896-97 (D. Minn. 1996) (reducing claimed attorney fees of $41,800.00 to an award of $4,793.75).

In addition, Plaintiff was ultimately awarded less relief than APS offered her in settlement.  Under IDEA, if the court finds that the relief finally obtained by the parents is not more favorable to the parents than an offer of settlement, the court can deny the parents attorney fees.  20 U.S.C. § 1415(i)(3)(D).  In this case, the relief Plaintiffs were awarded in the administrative appeal is less than what APS offered them in settlement.

Before the due process hearing was held, the parties engaged in mediation.  At that mediation, APS offered to provide a District level Wilson trained instructor to instruct S.M. on a one to one for four days per week for the remainder of the 2004-2005 school year.  Aplt. App. at 458-459.  In addition, APS offered Extended School Year (ESY) services by a Wilson trained instructor, for four days per week for two months.  Aplt. App. at 458-459.  After ESY, APS offered to convene the IEP team, including the Wilson trained instructor, and at that time determine, based on S.M.'s progress, if one to one services needed to be continued or if a small group would better meet Sean's needs.  Aplt. App. at 458-459.  APS also offered to convene an IEP team on December 8, 2004, to address S.M.'s assistive technology needs, modifications and accommodations, and any disciplinary issues and to do an assistive technology evaluation.  Aplt. App. at 458-459.  APS also offered to provide training for teachers at Cleveland Middle

School about dyslexia and reading disabilities and BOT for textbooks for all of S.M.'s middle school classes and such further tapes as determined necessary by future IEP teams. Aplt. App. at 458-459. Finally, APS offered Plaintiffs $6,000.00 to be applied to expenses and fees. Aplt. App. at 458-459. Plaintiff rejected this offer.

APS' settlement offer provided Plaintiff with more relief than she was ultimately awarded through the administrative process. APS offered to provide S.M. with specialized one to one reading instruction by a teacher with specific credentials, using a reading program that the DPHO, AAO and this Court found to be appropriate to meet S.M.'s needs. Aplt. App. at 458-459. The AAO denied Plaintiff's request for one to one reading instruction by an ALT. Admin RP 32. Instead, the AAO ordered APS to provide S.M. with specialized reading instruction in a small group. Aplt. App. at 458-459. Therefore, APS' initial settlement offer, of specialized reading instruction on a one to one basis, provided Plaintiff with more relief than she was ultimately awarded.

In addition, APS offered to provide S.M. with extensive ESY services. Plaintiff was not awarded that relief by the AAO. *Compare* Aplt. App. at 458-459 *with* Admin RP 32. APS also offered to provide teachers with training on dyslexia and the AAO did not provide them with that relief.

*Compare* Aplt. App. at 458-459 *with* Admin RP 32.  While the AAO may have awarded Plaintiff evaluations, APS offered to conduct those evaluations at the mediation.  Aplt. App. at 458-459.  Plaintiff did not need to litigate that issue in order to secure that relief – APS was ready willing and able to provide that relief even before the due process hearing.  Finally, APS offered to pay the Plaintiff $6,000 for expenses and fees.  Aplt. App. at 458-459.  While the AAO awarded Plaintiff partial reimbursement for ALT, if Plaintiff had accepted APS' settlement offer back in 2004, they could have paid for the ALT.  Ultimately, the AAO only awarded Plaintiffs $7,564.00 for the cost of ALT from March 1, 2004 through August 10, 2005.  Admin RP 303.  Therefore, Plaintiffs did not obtain much more monetary relief for ALT than APS offered to pay them in mediation.  Overall, APS provided Plaintiff with more relief at the mediation than they were awarded by the AAO and thus they are not entitled to their attorney fees under IDEA.

On several other occasions APS offered to provide Wilson reading instruction to S.M. but Plaintiff rejected all such efforts insisting that she would not settle unless APS provided ALT.  Aplt. App. at 460-465.  After the AAO issued her decision, APS attempted to implement the Order and provide Wilson reading instruction to S.M. during his freshman year of high school.  Aplt. App. at 460-465.  Plaintiff's attorney contacted APS' counsel

and informed her that S.M. would not attend the Wilson class; that if Wilson class remained on his schedule he would be truant rather than attend the class.   Aplt. App. at 463-468.   Plaintiff's counsel further stated that this would only create a discipline problem and increase hostility between S.M. and the school. Aplt. App. at 464.   Not wanting to create hostility, APS acquiesced to Plaintiff's demands and removed the Wilson reading class from S.M.'s schedule.   Aplt. App. at 464.   In exchange for removing the Wilson class from S.M.'s schedule, the Millers agreed that they would not pursue any legal action against APS for not providing Wilson reading instruction at school.  Aplt. App. at 37-38.

APS offered Plaintiffs more in settlement than she was awarded by the AAO.   Instead of settling with APS, Plaintiff chose to unreasonably protract this litigation.  Accordingly, Plaintiff is not entitled to more attorney fees than were awarded by the district court.

Plaintiff has failed to prove that the district court abused its discretion in reducing the fee award because Plaintiff obtained only limited relief in the administrative proceedings, no relief in the District Court action, and Plaintiff is not entitled to any fees associated with the Injunction Action. The district court's attorney fees award should therefore be upheld.

**IV.(A).**    **Section 1415(E)(2) Provides A Mechanism For A School District To Challenge A Hearing Officer's Award Of Reimbursement To Parents For Educational Expenses.**

**Standard of review:** The district court denied APS' motion to amend as legally futile on the ground that IDEA does not provide a mechanism for a school district to challenge a hearing officer's award of reimbursement. [5] Ordinarily, a district court's decision to deny a motion for leave to amend a pleading is reviewed for an abuse of discretion. *See Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006) ("we review for abuse of discretion a district court's ruling on a motion to amend"). However, "[t]his court reviews *de novo* a district court's refusal to grant leave to amend a complaint

---

[5] The District Court also denied APS' motion to amend on the ground that it was barred by judicial estoppel because APS argued in the Injunction Action that if it did not get immediate relief, its claim for reimbursement would be moot. Aplt. App. at 104. While this Court has not issued a precedential decision stating what the standard of review should be in this circumstance, it appears that the standard of review is abuse of discretion. *See United States v. Item 1: a 1990 Jeep Cherokee*, 147 Fed. Appx. 775, 776-77 (10th Cir. 2005). However, the district court incorrectly applied the doctrine of judicial estoppel. The factors for a court to consider in applying judicial estoppel include: First, a party's later position must be clearly inconsistent with its earlier position. Moreover, the position to be estopped must generally be one of fact rather than of law or legal theory. Second, whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. The requirement that a previous court has accepted the prior inconsistent factual position ensures that judicial estoppel is applied in the narrowest of circumstances. Third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id*. at *9-*10. Judicial estoppel is inapplicable here because APS' position in the Injunction Action and its later motion to amend in the district court action were legal positions, not factual. APS did not take a contrary factual position in the Injunction Action and then switch gears in the district court action thereby misleading the court. Rather, APS filed the Injunction Action in an attempt to get immediate relief, which was a legal theory. When the district court dismissed that action and disagreed with APS' legal position, APS attempted to assert a counterclaim in the district court action, on a different legal theory. The federal rules allow a party to plead in the alternative. *See Kikumura v. Osagie*, 461 F.3d 1269, 1296 (10th Cir. 2006) (citing Fed.R.Civ.P. 8(e)(2)). Indeed, the district court recognized that APS was presenting a legal theory, not a factual position. "In light of these authorities, I view this case as presenting a legal question…" Aplt. App. at 577. Finally, APS would not have obtained an unfair advantage over Plaintiff had it been permitted to amend its answer to add a counterclaim, APS simply would have had its day in court. The district court misapplied the doctrine of judicial estoppel in this case.

based on the court's conclusion that the amendment would be futile."
*Watson v. Beckel*, 242 F.3d 1237, 1239 (10th Cir. 2001) (citation omitted).
Therefore, the applicable standard of review is *de novo*. Even if this Court
were to review the district court's decision under an abuse of discretion
standard, an abuse of discretion occurs where a district court's discretionary
decision is based on an erroneous view of the law as was the case here. *See
Roth v. Green*, 466 F.3d 1179, 1187 (10th Cir. 2006).

Leave to amend should be granted freely when justice requires. Fed.
R. Civ. P. 15(a); *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893
F.2d 1182, 1185 (10th Cir. 1990); *Yapp v. Excel Corp*., 186 F.3d 1222, 1230
(10th Cir. 1999). In this case, APS moved to amend its answer and add a
counterclaim to challenge the AAO's reimbursement award at the outset of
the case. Plaintiff's Complaint was filed on May 4, 2005 (Aplt. App. at 9)
and APS field its motion to amend on July 28, 2005 (Aplt. App. at 30).
During the intervening period, the parties did not engage in discovery or
motion practice. Indeed, the district court did not hold the scheduling
conference until August 16, 2005. Aplt. App. at 2. Therefore, no prejudice
could have possibly resulted to Plaintiff had the district court granted APS'
motion to amend.

Furthermore, the district court's conclusion that the amendment would have been futile because IDEA does not provide a mechanism to challenge an award of reimbursement was in error.  Reimbursement of tuition and related services is available to a prevailing party under the statutory authority of § 1415(e) (2).  *Doe v. Brookline Sch. Committee*, 722 F.2d 910, 921 (1st Cir. 1983).  In *Brookline*, the school district sought review of a denial of its motion to reopen a case under the then Education for All Handicapped Children Act, 20 U.S.C. § 1401 (n/k/a IDEA), seeking to determine whether the school district or the parents were responsible for the student's tuition during the pendency of the placement review proceedings. *Id*. at 912.  The First Circuit vacated the decision and remanded the matter, holding that in view of the congressional preference for maintenance of the current educational placement, a party that sought to modify an existing educational placement, program, or services must proceed by a motion for preliminary injunction.  *Id*. at 921.  However, the court also found that permitting reimbursement promoted the purpose and policy of the Act and that reimbursement of tuition and related services was available to the prevailing party under the statutory authority of 20 U.S.C. § 1415(e)(2). "Should the IEP be upheld, then the parents must reimburse Brookline for the fall term tuition paid to the [private] School." *Id*.

48

In the case *sub judice*, the district court erred in concluding that there is no mechanism in IDEA for a school district to challenge an administrative hearing officer's award of prospective compensatory education. By denying APS' motion for leave to file an amended answer and counterclaim, the district court deprived APS of the ability to challenge the AAO's erroneous award of reimbursement to Plaintiff. The AAO held that APS' reading program was appropriate to meet S.M.'s needs but nevertheless awarded Plaintiff tuition reimbursement for the private ALT tutor as an equitable remedy. APS initially attempted to challenge that award by filing the Injunction Action and when the district court dismissed that action, APS attempted to amend its answer to add a counterclaim challenging the AAO's award. However, the district court erroneously denied APS' motion and prevented it from bringing an action for reimbursement. The district court's decision was in error because permitting reimbursement under IDEA promotes the purpose and policy of the Act and reimbursement of tuition and related services is available to the prevailing party under the statutory authority of 20 U.S.C. § 1415(e)(2). *See Brookline, supra.*

Because IDEA does provide a mechanism for APS to challenge the AAO's reimbursement award and in light of the early procedural setting when APS moved to amend its answer to add a counterclaim to challenge

the reimbursement award, the district court's denial of APS' motion for leave to amend was an abuse of its discretion and should be reversed. *Farmers Alliance Ins. Co. v. Commercial Union Ins. Co*., 1992 U.S. App. Lexis 17705 at *7-*8 (10th Cir. 1992) (holding that district court abused its discretion in denying motion to amend complaint where original complaint supported a valid claim and in light of the early procedural setting of the case).

## CONCLUSION

For the reasons explained herein, APS respectfully requests that the Court affirm the district court's decision that (1) denied Plaintiff's request to submit additional evidence, (2) granted APS' summary judgment motion on Plaintiff's Section 504 and ADA claims, and (3) reduced Plaintiff's attorney fees award according to the limited amount of success she ultimately obtained.  In addition, APS respectfully requests that the Court reverse the district court's denial of APS' motion for leave to amend its answer and add a counterclaim to challenge the AAO's award of reimbursement to Plaintiff because 20 U.S.C. § 1415(e)(2) does provide a mechanism for a school district to bring such a challenge.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 26, 2007 I served a copy of this brief electronically on Gail Stewart at gstewart@66law.com.  I also certify that on April 26, 2007 I hand delivered a copy of this brief to Gail Stewart, counsel for S.M., at Steven Granberg, Attorney at Law, P.A. 1400 Central SE, Suite 3300 Albuquerque, NM 87106.

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by Fed.R.App.P. 32(a)(7)(C), I certify that this brief is proportionally spaced 14 point type and contains 12,176 words.  I relied on my word processor (Microsoft Office Word 2003) to obtain the count.  I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.


/s/_____
Andrea K. Robeda

K:\dox\client\11301\685\W0701334.DOC