IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

LESLIE and JACK MILLER,
on behalf of their minor child,
S.M.,

    Plaintiff-Appellant,                    No. 06-2345

vs.

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

    Defendant-Appellee,

_____

On Appeal from the United States District Court
for the District of New Mexico

Honorable M. Christina Armijo
United States District Judge

District Court No. CIV 05-502 MCA/WPL
_____

APPELLANT'S RESPONSE AND REPLY BRIEF

ORAL ARGUMENT REQUESTED

_____

GAIL STEWART
Steven Granberg, P.A.
Attorney for Plaintiff-Appellant
1400 Central S.E., Suite 3300
Albuquerque, NM 87106
Telephone: 505-244-3779
Fax: 505 245-8558

## TABLE OF CONTENTS

_____    PAGE
_____

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . .. . . . . . . . . . .   3

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . .   5

ARGUMENT. . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . .   8

I.      The school district seeks an advisory opinion on an issue
which was futile as well as moot and which it previously abandoned. . .8

II.      Denial of FAPE which results from systemic dysfunction
cannot be remedied without examination of the underlying systemic
dysfunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

III.      Dismissal of Plaintiff's discrimination claims ignores IDEA's
express rule of construction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

IV.      Failure to award requested fees undermines enforcement of
IDEA. . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . .. . . . . . . . . .   44

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . .   50

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   52

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . .   52

## TABLE OF AUTHORITIES

A.   CASES                                                                                      PAGE

Bd. of Educ. of Hendrick Hudson v. Rowley, 458 U.S. 176 (1982). . .     14

Casey K. v. St. Anne Cmty. High Sch. Dist. No. 302, 400 F.3d 508
        (7th Cir. 2005), *cert. denied,* _____U.S._____, 126 S.Ct. 354
        (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13,16

Casey K. v. St. Anne Cmty. High Sch. Dist. No. 302, 2006 U.S.Dist.
        LEXIS 92252 (C.D.Ill. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13

Cedar Rapids Community Sch. Dist. v. Garret F., 526 U.S. 66 (1999). . .   32

Dist. of Columbia v. Jeppsen, 468 F.Supp.2d 107 (D.D.C.2006). . . . . .    13

Doe v. Brookline Sch. Committee, 722 F.2d 910 (1st Cir. 1983). . . . . . . .   8,14,15

Ellenberg v. New Mexico Military Institute, 478 F.3d 1262 . . . . . . . . . . .   39-41

Florence Co. Sch. Dist. 4 v. Carter, 510 U.S. 7 (1993). . . . . . . . . . . . .      11

Honig v. Doe, 484 U.S. 305 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . .    12,35,49

Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182
        (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .       9

N.M. Ass'n for Retarded Citizens v. State of New Mexico, 678 F.2d
        847 (10th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..     41, 43

P.N. v. Clementon Bd. of Educ., 442 F.3d 848 (3rd Cir. 2006), *cert. denied,*
        ___ U.S. ___, 127 S.Ct. 189 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . .   48-49

Reid v. Dist. of Columbia, 401 F.3d 516 (D.C.Cir. 2005). . . . . . . . . . . .      19

Schaffer v. Weast, 546 U.S. 49, 126 S.Ct. 528 (2005). . . . . . . . . . . . . . .    49

School Committee of Town of Burlington v. Dept. of Educ. of Mass.,
        471 U.S. 359 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . .    11,12,15

Smith v. Robinson, 468 U.S. 992 (1984). . . . . . . . . . . . . . . . . . . . . . . . .    41-42

Tennessee v. Lane, 541 U.S. 509 (2004). . . . . . . . . . . . . . . . . . . . . . . . .    42-43

Town of Burlington v. Dept. of Educ. for the Commonwealth of Mass.,
        736 F.2d 773 (1st Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14-15

Urban v. Jefferson Co. Sch. Dist. R-1, 89 F.3d 720 (10th Cir. 1996). . . . . .    38-40

Watson v. Beckel, 242 F.3d 1237 (10th Cir. 2001). . . . . . . . . . . . . . .    9

Winkelman v. Parma City School Dist., 2007 U.S. Dist.LEXIS 5902
        (5/21/2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11,17,28
        30-34, 38,
        48, 49

B.    STATUTES

*federal*

20 U.S.C. §1400(c)(4), (5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    29-30

20 U.S.C. §1400(c)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    35

20 U.S.C. §1412(a)(10). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

20 U.S.C. §1412(a)(10)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

20 U.S.C. §1414(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    28

20 U.S.C. §1415. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    34

20 U.S.C. §1415(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6, 23, 30

20 U.S.C. §1415(e)(2) [pre-1997 IDEA]. . . . . . . . . . . . . . . . . . . . .    8, 15

20 U.S.C. §1415(f)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6, 23

20 U.S.C. §1415(i)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    32, 48

20 U.S.C. §1415(i)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    30, 37

20 U.S.C. §1415(i)(2)(B)(i),(ii),(iii). . . . . . . . . . . . . . . . . . . . . . . .    19

20 U.S.C. §1415(i)(2)(B)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6, 7, 20

20 U.S.C. §1415(i)(2)(B)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15, 37

20 U.S.C. §1415(i)(3)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    45

20 U.S.C. §1415(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

20 U.S.C. §1415(l). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6, 41, 42

C.    <u>REGULATIONS</u>

<u>*federal*</u>

34 C.F.R. §300.514(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .___    12

<u>*state*</u>

6.31.2.13(I)(20)(c) NMAC (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

D.    <u>MISCELLANEOUS</u>

<u>*rules*</u>

Federal Rule of Civil Procedure 68. . . . . . . . . . . . . . . . . . . . . . . . . .    45

Federal Rule of Appellate Procedure 4(a). . . . . . . . . . . . . . . . . . . . . . .   22

*web site*

http://www.nichd.nih.gov/news/releases/brain_function.cfm . . . . . . . .   46

STATEMENT OF THE CASE

The IDEA due process claim that Plaintiff filed against the Albuquerque Public Schools ("APS") in October 2004 alleged that the school district had failed to provide her son, S.M., with a free appropriate public education ("FAPE"). Adm. RP at 128-130. The Due Process Hearing Officer (DPHO) ruled that APS had deprived S.M. ("the Student") of free appropriate public education and awarded equitable remedy including partial reimbursement for private education (reading instruction) and necessary equipment (to orally read written school texts to student after family scanned each page) which had been purchased by the family to make up for the district's failure to provide Student with a FAPE. Adm. RP at 28.

APS appealed and Parent cross-appealed. Adm. RP at 152, 154. On administrative appeal, the Administrative Appeal Officer (AAO) also ruled that APS had deprived the Student of FAPE and expanded equitable remedy awarded to include full reimbursement for all private education (reading instruction) purchased and prospective payment for additional months of private instruction during the summer of 2005. Adm. RP at 303.

APS again appealed by filing an "Application for Preliminary Injunction" in United States Court for the District of New Mexico. Applt. App. at 507. The court dismissed APS's injunction action "without prejudice for lack of jurisdiction" and

1

thereby sustained the AAO's determination that equity required reimbursement to the family of all monies spent on private reading instruction through the start of the school year in August 2005.   Applt. App. at 581.   APS did *not* appeal dismissal of its injunction action.

The family had prevailed, in three levels of review,  in requiring APS to pay for Student's  private reading instruction which had been purchased between March 2004 and August 2005.  However, APS, determined to escape the need to reimburse the family, attempted to raise the issue a fourth time, by seeking to amend its Answer to Plaintiff's civil action (which had been filed to seek additional IDEA remedy and to seek remedy for discrimination on the basis of disability) by Motion to Amend filed July 28, 2005, approximately two weeks before the end of the compensatory private education reimbursement period due to expire by the terms of the AAO order in mid-August  2005.  Applt. App. (vol. I) at 30.

By its January 18, 2006, order, the district court refused APS's July 2005 attempt  to amend its Answer to Plaintiff's civil action to add a counterclaim for the purpose of challenging the reimbursement ordered.   Applt. App. at 96-97.   The Court's refusal to allow APS to amend to add a counterclaim challenging reimbursement had three alternate bases: 1) APS's claim was moot in that the compensatory education ordered had already accrued; 2) the Court lacked authority

to retroactively negate the past due compensatory education, the obligation for which arose out of Congress's clear "stay put" provision in the IDEA; 3) judicial estoppel prevented APS from changing its position in the litigation to Plaintiff's prejudice and detriment. Applt. App. at 100-106.

Despite Plaintiff's success in obtaining full reimbursement for private education purchased from March 2004 to August 2005 and then defending that result through January 2006 disposition denying APS's Motion to amend and add counterclaim, the Court limited Plaintiff's entitlement to fees to the due process hearing proceedings in 2004-2005 and then reduced fees sought for that period to an amount which was approximately 25% of the school district's fees for the state administrative proceedings. Applt. App. at 395-396.

Defendant APS's counterclaim seeks reversal of the District Court's refusal to allow APS to amend its Answer and add a counterclaim. APS Principal Br. at 50. APS's counterclaim is apparently viable only if this Court also reverses for Plaintiff's appeal since there is no point in remanding to "add" a counterclaim if the district court's dismissal of Plaintiff's civil action is sustained.

## STATEMENT OF THE FACTS

_____Ms. Miller brought this case for her son, S.M., who is dyslexic, to redress the school district's failure to provide him with appropriate reading instruction and access

3

to the general curriculum during his 6th, 7th, and 8th grade school years.  The due process case was heard in the middle of the 8th grade year (2004-2005).

The last state administrative decision,  by the AAO, issued on April 4, 2005, required Albuquerque Public Schools to reimburse the family for money spent on private education (reading instruction) and for the purchase of "Wynn" equipment (technology to be used at home by parents who scanned textbook pages which could then be audibly "read" to S.M. by the computer).  The AAO ordered reimbursement as one equitable "compensatory education" remedy for the denial of a free appropriate education which she found occurred, based on various issues,  during all three school years.    Adm. RP at 286-301, 308 (Abstract of AAO decision).

APS never filed a civil action pursuant to 20 U.S.C. §1415(i)(2) to appeal the decision of the AAO, the last state administrative decision.  Instead, APS filed an application for preliminary injunction which was dismissed by the District Court.

The family did file a civil action pursuant to 20 U.S.C. §1415(i)(2) and, among other issues, challenged the adequacy of the remedy for denial of FAPE based on failure to provide Books on Tape, an *accommodation* necessary to access public education, specifically the general curriculum as offered through textbooks.  Applt. App. at 9-19.   The family's law suit also alleged discrimination based on disability for APS's failure to provide S.M. with access to texts enjoyed by his nondisabled

peers, which access could have been accomplished by provision of Books on Tape.
Id. When APS answered the family's lawsuit in June 2005, it did not include any
counterclaim appealing the AAO's IDEA decision. Applt. App. at 20-29.    Its
subsequent motion to amend to add a counterclaim, filed after the district court
dismissed its application for preliminary injunction, was denied by the court. Applt.
App. at 30; 96. Therefore, Defendant APS never perfected an appeal of the last state
IDEA administrative decision in the district court.

## SUMMARY OF THE ARGUMENT

Reviewed de novo or for abuse of discretion, the district court's denial of
Defendant APS's attempt to add a counterclaim challenging the last state IDEA
decision was appropriate. First, APS's stated challenge to the AAO decision was
futile: statute and case law, regarding "stay put" and compensatory education in the
form of reimbursement for expenses incurred by the family when FAPE was not
provided to the student, made APS's proposed court action moot. Second, APS had
already litigated and lost its challenge to the AAO reimbursement order when its
application for preliminary injunction was dismissed by the court's order of July
2005. Third, allowing APS a second judicial attempt to reargue its challenge to the
AAO reimbursement order would have been unfair and prejudicial when APS failed
to use the IDEA review structure set forth in statute.    The district court's denial of

APS's attempt to insert a counterclaim challenging the AAO reimbursement order should be upheld.

A school district's systemic function or dysfunction is "any matter" "relating to the provision of a free appropriate public education" under 20 U.S.C. §1415(b)(6) and 20 U.S.C. §1415(f)(1). Refusal to hear evidence on a school district's systemic function or dysfunction related to the deprivation of FAPE to a student is contrary to the IDEA and an illegal restriction of procedural and substantive rights afforded parents and students under federal law. There is no federal law which approves New Mexico due process system's artificial restrictions on evidence of systemic dysfunction underlying the deprivation of FAPE. The district court's upholding of the artificial restriction on "any matter" "relating to the provision of a free appropriate public education" under 20 U.S.C. §1415(b)(6) and 20 U.S.C. §1415(f)(1) violates parents' rights to administrative due process hearing as well as to presentation of "additional evidence" under IDEA's civil action provision, 20 U.S.C. §1415(i)(2)(B)(ii).

IDEA is not an exclusive remedy. 20 U.S.C. §1415(l). Refusal to allow disability discrimination claims to be asserted in federal court in reliance on IDEA state due process decisions and "remedies" shaped by IDEA statute and case law is contrary to Congress's intent and the *plain language of IDEA*. The District Court's

6

dismissal of Plaintiff's discrimination claims under Section 504 and the ADA was reversible error.

Plaintiff was the prevailing party within the meaning of IDEA and case law and was entitled to full fees for the IDEA state administrative due process hearing and appeal, full fees for defending against APS's application for preliminary injunction in a separate case which was relied on by the district court in the instant case, and partial fees for work on this case tied to APS's continuing refusal to provide reimbursement as ordered by the AAO. The District Court's reduction of Plaintiff's claimed fees and costs of $40,375.14, by more than 75% , to $8,751.19 was an abuse of discretion.

This Court should reverse and remand this case to the District court to 1) take additional evidence pursuant to 20 U.S.C. §1415(i)(2)(B)(ii) on APS's systemic function/dysfunction for provision of Books on Tape to students who are dyslexic and unable to read their assigned textbooks; 2) reinstate Plaintiff's discrimination claims for trial; 3) award Plaintiff attorney fees and costs in the amount requested below, $40,375.14, with reservation of propriety of additional fees based on outcome of additional IDEA evidentiary proceedings. This Court should affirm the District Court's denial of Defendant APS's motion to amend its Answer to add a counterclaim. This Court should further award Plaintiff costs and fees for this

7

Appeal.

## ARGUMENT

### ISSUE I

THE SCHOOL DISTRICT SEEKS AN ADVISORY OPINION ON AN ISSUE WHICH WAS FUTILE AS WELL AS MOOT AND WHICH IT PREVIOUSLY ABANDONED

Defendant APS has phrased its cross-appeal issue as "[whether] Section 1415(e)(2)[1] provides a mechanism for a school district to challenge a hearing officer's award of reimbursement to parents for educational expenses." APS Principal Brief at 46. *See also,* APS Principal Brief at 50. The IDEA provision which APS wants this Court to interpret is the IDEA provision allowing an "aggrieved party" to bring a "civil action." *See* 20 U.S.C. §1415(i)(2) (which is the citation for the provision in the 1997 IDEA.) The school district's attempt to have this Court interpret that provision now to allow it to appeal a previous state due process administrative appeal officer order providing parents with reimbursement for private educational expenses

---

[1] APS's reference to 20 U.S.C. §*1415(e)(2)* is in error. The citation is apparently taken from the First Circuit case which is the sole basis for APS's argument on the merits (Doe v. Brookline Sch. Committee, 722 F.2d 910 (1st Cir. 1983)). However, IDEA has been amended several times since that First Circuit decision in 1983. The parallel citation to the 1997 reauthorization of IDEA, which applies in this case, is 20 U.S.C. §1415(i)(2).

is misplaced because the trial court acted appropriately in denying APS's second attempt at judicial review of its request for appeal of the reimbursement ordered during the administrative process as equitable remedy for past denial of free appropriate public education.

Standard of review:    Plaintiff agrees with the standard of review stated by APS.   APS Principal Br. at 46-47.   This Court applies *de novo* review to a district court's refusal to allow amendment based on futility. Watson v. Beckel, 242 F.3d 1237 (10th Cir. 2001). In this case, the District Court refused amendment based on several alternate, related, grounds: 1) futility in that the Court would have lacked jurisdiction over the counterclaim based on mootness; 2) allowance of a counterclaim subsequent to the Court's dismissal of APS's litigation of an independent injunction action would undermine the procedural scheme of the IDEA; 3) judicial estoppel prevented APS from changing its position to detriment of Plaintiff; and 4) "the interests of justice." Applt. App. at 100-106.   Based on the Court's multiple reasons for refusal, this Court may also review that refusal to allow amendment  based on an abuse of discretion standard for reasons articulated by the Court other than futility. *See, e.g.* Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990).   Allowable factors which may be relied on by a court denying amendment include: "undue prejudice." Id.

9

A.     The proposed counterclaim was futile.

_____APS moved to amend its Answer to add a counterclaim which sought reversal of the last state administrative decision awarding Parent reimbursement of private educational expense between March 2004 and August 2005.  Applt. App. (vol. I) at 36.   APS filed its motion seeking to add this counterclaim on July 28, 2005, just days before the reimbursement period ended,  by its own terms, before the beginning of the 2005-2006 school year.  The State AAO's  April 4, 2005, order,  which APS wishes to appeal through the proposed counterclaim,  reads:

> The District shall reimburse Parents for their tutoring
> expenses from March, 2004, until the beginning of school
> in August, 2004 (the hearing officer's order providing
> reimbursement through the date of her decision in the
> 8th grade was not challenged on appeal and remains
> in place.)  The District shall also reimburse Parents for
> private ALT ["academic language therapy" specialized
> reading instruction] for the remainder of this school year
> [2004-2005 school year] and during this summer, until
> Student begins high school.[2]

Adm. RP at 303.

The total reimbursement was finally paid by APS only after the Court rejected its motion to amend and add the counterclaim in January 2006.  Applt. App. (vol. I) at 106,  397-398, 402, 438, 440.

---

[2]  Albuquerque Public Schools began on or about mid-August 2005.

10

Reimbursement to parents for the costs of private education, purchased because FAPE has not been provided in the public school setting, is a form of equitable remedy specifically contemplated by the IDEA and approved by the United States Supreme Court more than twenty years ago. *See* 20 U.S.C. §1412(a)(10)(C); School Committee of Town of Burlington v. Dept. of Educ. of Mass., 471 U.S. 359, 369 (1985); Florence Co. Sch. Dist. 4 v. Carter, 510 U.S. 7, 9-10 (1993). *See also* Winkelman v. Parma City School Dist., 2007 U.S. LEXIS 5902 [15] (5/21/2007) (citation and discussion of 20 U.S.C. 1412(a)(10) providing for reimbursement as a specific right conferred by IDEA). The equitable underpinning of private education reimbursement was explained by the United States Supreme Court in Burlington:

> The statute directs the court to "grant such relief as [it] determines is appropriate." The ordinary meaning of these words confers broad discretion on the court. The type of relief is not further specified, except that it must be "appropriate." Absent other reference, the only possible interpretation is that the relief is to be "appropriate" in light of the purpose of the Act. As already noted, this is principally to provide handicapped children with "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." The Act contemplates that such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as nonhandicapped children, but the Act also provides for placement in private schools at public expense where this is not possible. . . . In a case where a court determines

11

> that a private placement desired by the parents was proper
> under the Act and that an IEP calling for placement in a public
> school was inappropriate, it seems clear beyond cavil that
> "appropriate" relief would include a prospective injunction
> directing the school officials to develop and implement at
> public expense an IEP placing the child in a private school.
> . . . .
>
> [W]e are confident that by empowering the court to grant
> "appropriate" relief Congress meant to include retroactive
> reimbursement to parents as an available remedy in a proper
> case.
> . . . .
> Reimbursement merely requires the [school district] to belatedly
> pay expenses that it should have paid all along and would have
> borne in the first instance had it developed a proper IEP.  Such
> a *post hoc* determination of financial responsibility was
> contemplated in the legislative history. . . .

(citations omitted.)  471 U.S. at 369-370, 371.

For cases pending through judicial review, subsequent to final state administrative decision, a reimbursement order is also part of "stay put," another IDEA-concept long sanctioned by the courts.  *See, e.g.,* <u>Honig v. Doe,</u> 484 U.S. 305(1988) (court discusses historical patterns of public school exclusion as background to IDEA's "stay put" provision ) and 20 U.S.C. §1415(j).   Federal and state regulation treat the last state due process administrative decision as "stay put" for the pendency of civil action litigation.   *See* 34 C.F.R. §300.514(c) and 6.31.2.13(I)(20)(c) NMAC (2000).  Case law clarifies that state administrative orders

requiring reimbursement to parents are part of "stay put" during pendency of judicial review. Casey K. V. St. Anne Cmty. High Sch. Dist. No. 302, 400 F.3d 508 (7th Cir. 2005), *cert. denied,* ___ U.S. ___, 126 S.Ct. 354 (2005).

Because the last state administrative order in this case required APS to reimburse the Millers and because that administrative order was "stay put" during the pendency of the civil action in district court, APS's desire to amend its Answer and assert a belated counterclaim was futile. Insertion of a counterclaim attempting to challenge the reimbursement to parents, which was already required and due, was futile because APS lacked a legal basis to delay the reimbursement due under the order and operation of stay put. Once due in August 2005, an appeal of the reimbursement ordered was also moot.

To the extent APS believed it could challenge the reimbursement retroactively and have a court order the Millers to pay back the reimbursement obtained, such a theory has no basis in IDEA and has not been approved by the courts. *See, e.g.,* Dist. of Columbia v. Jeppsen, 468 F.Supp.2d 107, 112 (D.D.C. 2006) ("Simply stated, requiring parents to reimburse school districts for tuition and other expenses paid to private schools under the stay-put provision is wholly inconsistent with the intent and spirit of the provision itself."); Casey K. v. St. Anne Community High Sch. Dist. No. 302, 2006 U.S.Dist. LEXIS 92252 (C.D.Il. 2006) (Court rejects school district's

arguments that IDEA would require a parent to repay education expenses incurred by the School District pursuant to stay put).

APS asserts that this Court should find, as a matter of law, that denial of its tardy request to assert a counterclaim against the family, was not futile because the family might have been required by the court to repay the previously ordered reimbursement expenses. APS relies on a single decision for its theory that IDEA would have required the Millers to reimburse expenses due pursuant to operation of stay put. APS Principal Brief at 48-49. Doe v. Brookline Sch. Committee, 722 F.2d 910, 921 (1st Cir. 1983), upon which APS relies, was decided in the year after the United States Supreme Court first reviewed the predecessor law to IDEA, the Education of All Handicapped Children Act. Bd. of Educ. of Hendrick Hudson v. Rowley, 458 U.S. 176 (1982). Brookline was also decided *before* the United States Supreme Court specifically approved reimbursement of private educational expense to parents as an equitable remedy encompassed by the IDEA in the Burlington decision which came in 1985.

Doe was a First Circuit case , as was Burlington in which the United States Supreme Court affirmed the First Circuit Court of Appeals decision order requiring reimbursement to parents in Town of Burlington v. Dept. of Educ. for the Commonwealth of Mass., 736 F.2d 773 (1st Cir. 1984). The First Circuit's 1984

14

Town of Burlington decision explicitly distinguished its earlier decision in Doe, in

considering the family's argument that a school district was estopped from obtaining

retroactive reimbursement of expense incurred as result of stay put.   736 F.2d at 799-

800.   The First Circuit rejected any notion that, when operation of stay put was in

favor of parents, parents could later be required to repay the school district's

reimbursement.

> Retroactive reimbursement by parents is not "appropriate"
> relief within the meaning of §1415(e)(2) [1415(i)(2)(B)(iii)
> in the 1997Act] where they relied on and implemented
> a state administrative decision in their favor ordering
> a particular placement.  We emphasize again that our
> interpretation is guided by the cooperative federalism
> Rowley elaborated.  The states are the chief arms of the
> federal Act's enforcement; their decisions should not
> be disregarded because of potential parental
> financial liability.  Implementation of a state agency's
> determination of the appropriate education for a disabled
> child should not be delayed. . . until a final judicial decision
> has been rendered where an appeal has been taken.  Congress,
> through the principal author of the Act, has spoken
> unequivocally in this regard. . . .

Town of Burlington, 736 F.2d at 800.

    When Town of Burlington was appealed to the United States Supreme Court, that

Court did not review this aspect of the First Circuit's decision.  See, 471 U.S. 359,

367 ("We express no opinion on any of the many other views stated by the Court of

Appeals.")   To this date, the issue remains an "open question" to the extent that the

United States Supreme Court has not undertaken any review of the issue and the IDEA does not expressly address it. *See e.g.,* <u>Casey K.,</u> 400 F.3d at 510. (Judge Posner's 2005 decision, on which the Supreme Court denied review, recognizes the enforceability of "stay put" but characterizes as an "open question," "whether, even if parent lose their challenge, they must reimburse the public entity. . . .")

However, since APS has not come forward with current judicial decisions ordering that a parent repay previously obtained reimbursement for educational expense, it would appear that the bulk of present judicial opinion is consistent with Judge Armijo's decision in this case. No legal basis exists for APS's asserted counterclaim which would have sought to delay or negate the effect of "stay put" by requiring the family to subsequently repay APS for the state administratively ordered reimbursement for educational expense. Judge Armijo's decision states specifically:

> [T]he reimbursement for compensatory education through August 2005 that was ordered by the AAO in this case constitutes part of the "current educational placement" for purposes of the IDEA's "stay put" provision, and . . . APS may not avoid or postpone its duty to reimburse the Millers based on the fact that the litigation is still pending.
>
> . . . I view APS's motion for leave to file a counterclaim as presenting a legal question that is answered by the application of the IDEA's "stay put" provision and its implementing regulations. . . . Under the comprehensive statutory scheme that Congress enacted to provide free appropriate public education to individuals with disabilities, APS has already

16

> incurred a financial obligation to reimburse the Millers
> in accordance with the AAO's decision and may not avoid
> that result through the counterclaim asserted here.

Applt. App. (vol. I) at 102-103.

Judge Armijo's opinion, which is in line with other lower court decisions across the country, is also bolstered by the very most recent IDEA case decided by the United States Supreme Court. In <u>Winkelman,</u> the Court focused on the inextricable link between the student's and parents' rights and referenced the right of reimbursement repeatedly. Even the concurring (dissenting in part) opinion by Justice Scalia noted gave credence to the viability of actions for reimbursement labeling them "less likely to be frivolous, since not many parents will be willing to lay out the money for private education without some solid reason to believe the FAPE was inadequate." 2007 U.S. LEXIS 5902 [48].

Reimbursement for private educational expenses incurred or due based on past deprivation of FAPE is enshrined in the IDEA and its case law. The AAO's order for such reimbursement was entitled to "stay put" and so a proposed APS "appeal" of such order was doomed to failure, especially being asserted just a few weeks prior to the expiration of the compensatory education period. Courts have not ordered parents to repay reimbursement ordered because such a threat would negate Congress's purposes in enactment of the IDEA as well as parental ability to require

implementation and enforcement.  APS's counterclaim was futile as lacking in legal basis.  The District Court was correct, as a matter of law, to reject the attempt to insert the tardy counterclaim.

B.    The court did not abuse its discretion in refusing to allow APS to add a counterclaim raising an issue which APS had already litigated and lost.

In addition to the ultimate futility of the proposed counterclaim, APS's request to amend the Answer to add the counterclaim was fundamentally unfair in the situation where APS had already litigated its "counterclaim" issue through the courts. In its initial attempt to evade the relief awarded by the AAO, APS had filed a legal action it styled, "Application for Preliminary Injunction."  Applt. App. (vol. II) at 507.  The injunction action, filed April 29, 2005, sought an immediate evidentiary hearing on APS's alleged *present ability* to provide appropriate reading instruction.

APS's position in its injunction action failed to appreciate that the reimbursement monies (retroactively and prospectively until start of school in August 2005) were for APS's *past inability* to provide a FAPE.  Reimbursement to the family (retroactively and prospectively) of monies spent to secure private reading instruction by a highly trained academic language therapist (ALT) was a compensatory education equitable remedy available to the AAO flowing from her finding of denial of FAPE, based specifically on failure of reading instruction, during

18

the 7th and 8th grade school years. *See* Applt. App. at 571-572 (District Court findings 8, 9, 10 explain the AAO's equitable remedy for past denial of FAPE). *See also,* Reid v. Dist. of Columbia, 401 F.3d 516, 522 (D.C. Cir. 2005) ("Under the theory of 'compensatory education,' courts and hearing officers may award 'education services. . . to be provided prospectively to compensate for a past deficient program." (Citation omitted.))

APS's chosen strategy also fatally ignored IDEA's clear procedural infrastructure. By filing an injunction action, APS attempted to short circuit the "civil action" framework delineated in the IDEA. Pursuant to statute, a court undertaking review of the state administrative IDEA decision acts based on review of the record below and additional evidence. 20 U.S.C. §1415(i)(2)(B)(i),(ii),(iii). APS wanted the reviewing court to adopt its defense position out of whole cloth without any review of the administrative record below, the modified *de novo* review or the procedural due process envisioned by the statute. Applt. App. at 512 (APS will suffer "irreparable harm" unless the court takes "immediate action"); 528 (APS requests that Court "immediately set an evidentiary hearing").

APS made its requests for "immediate" evidentiary hearing in April and May 2005  1) before serving the Millers with its action; 2) before filing the administrative record with the Court; and 3) prior to *opposing* the Millers' request for the court to

19

consider additional evidence supplemental to the administrative record. *Compare* Applt. App. 507-534 (APS requests immediate evidentiary hearing) to Applt. Applt. App. 508 (service on Millers made on 5/17 and 5/18/2005), Applt. App. 80 (December 2005 Order for production of administrative record) , Applt. App. 266-276 (APS opposes Plaintiff's request for the court to consider additional evidence pursuant to 20 U.S.C. §1415(i)( 2)(B)(ii)).

The district court properly rejected APS's strategy for court review as being unsanctioned by the IDEA. Applt. App. at 576-580. The Court accurately noted that IDEA "provides a comprehensive statutory scheme for addressing the type of dispute at issue. . . ." Applt. App. (vol. II) at 576. The Court properly relied on the procedure for judicial review set forth clearly in the IDEA and noted that APS could not seek review of its position "in a vacuum[;] [r]ather, this dispute must be resolved in the context of the lengthy administrative records that resulted in the AAO's decision." Applt. App. (vol. II) at 578. Since APS had not even provided the administrative record for review, the Court could not undertake the necessary review required by IDEA. Id. Pursuant to "stay put" APS could not forestall the reimbursement ordered as compensatory education; however, even if substantive reconsideration of remedy would have been appropriate, APS erred in attempting to avoid the judicial review process required by the IDEA.

Having failed in its attempt to avoid the proscribed method for review of state IDEA administrative decision against it, APS then tried for a second bite of the apple by seeking leave to tack on a counterclaim not pled in its Answer to Plaintiff's properly filed civil action.    The Court's rejection of the proposed amendment to assert a counterclaim was also grounded in the unfairness of APS's tactic.  The Court characterized APS's strategy as being barred by both judicial estoppel and unfairness. Applt. App. (vol. I) at 100, 104-106).  The APS counterclaim was simply another attempt by APS to ask the Court to delay the AAO's order in contravention of the well-established IDEA principle of stay put.  Having already obtained ruling on this legal issue, APS was barred from an effort to relitigate the issue.

It also appears that  this Court lacks jurisdiction to consider APS's cross appeal.   APS has recast its true substantive appeal as an appeal issue focused on procedural standards for allowing amendment of an Answer.  The relief requested by APS, allowing amendment of its Answer to add the specified counterclaim, is of no avail to APS unless the District Court were to reverse its previously articulated reasoning on "stay put" and reconsider APS's position seeking delay or, now, repayment of administratively ordered reimbursement.

APS , however, already forfeited its right to ask this Court to  consider the district court's ruling on the merits of the injunction action: APS did not appeal the

21

final order in that action which was entered in July 2005 within 30 days as required by the Federal Rules.    Federal Rule of Appellate Procedure 4(a).    APS's failure to appeal the order dismissing its injunction action creates waiver of any "appeal" of the legal decision interpreting the IDEA which APS wishes to challenge. The cross appeal is nothing more than an attempt to resurrect APS's claim that IDEA permits delay, rather than stay put, of the last state administrative order, during pendency of judicial review.  Since the injunction action was dismissed and not consolidated with this present action, APS's failure to appeal dismissal of that case is fatal to its cross appeal.

ISSUE II

DENIAL OF FAPE WHICH RESULTS FROM  SYSTEMIC DYSFUNCTION

CAN NOT BE REMEDIED WITHOUT EXAMINATION OF THE

UNDERLYING SYSTEMIC DYSFUNCTION

A. <u>"Systemic dysfunction" is "any matter" within the meaning of IDEA's procedural protections for students and parents.</u>

New Mexico's IDEA hearing officers who heard Plaintiff's claims applied a blanket exclusion of evidence  on systemic issues or dysfunction surrounding the failure of APS to provide S.M. with Books on Tape or other audio access to textbooks.   Such a "carve out" is contrary to the IDEA which provides that parents

22

are entitled to an IDEA due process hearing on "any matter relating to . . . the provision of a free appropriate public education to [parents'] child." 20 U.S.C. §1415(b)(6) and 20 U.S.C. §1415(f)(1).    While APS argues that this Court need review this question of exclusion of evidence only for abuse of discretion, Plaintiff argues that this refusal to consider whether systemic dysfunction caused denial of FAPE is at odds with IDEA's broad scheme for IDEA enforcement and, therefore, presents a specific question of law for this Court's review. *Compare,* Miller Opening Br. at 17-18 (questions of law reviewed *de novo* while abuse of discretion applies to specific instances of evidence refused) *to* APS Principal Br. at 18-19 (no abuse of discretion to exclude evidence on APS system for provision of books on tape).

The question presented by this Appeal is not, simply, did the Court abuse its discretion in keeping out evidence about APS's system for provision of Books on Tape.  The issue is, more globally, whether hearing officers and courts may refuse a family's evidence on underlying systemic dysfunction which has created the deprivation of FAPE.  Preliminary to any decision on abuse of discretion for specific exclusion of evidence on APS's system for delivery of books on tape is the *legal question* of whether state hearing officers (and reviewing courts) may refuse evidence on systemic dysfunction underlying deprivation of FAPE based on a narrow, and misguided, interpretation of IDEA that would artificially limit evidence to facts about

"one child."

APS's support for the "one child" theory of IDEA review is self serving.  First, APS has no  explanation for why it did not provide books on tape to S.M. in 7th grade as required by his IEP.  *See* Applt. App. (vol. I) at 156-157 (APS acknowledges that "[i]n 7th grade, books on tape were required on the IEP but not provided" yet fails to offer any explanation for why books on tape were not provided by APS as required by the IEP and instead argues vociferously about why evidence on systemic issues doesn't exist or should be excluded), 171 (APS supports a finding that "District policy" on other students is irrelevant since S.M.'s IEP called for Books on tape in 7th grade, yet offers no explanation for why books on tape were not provided.)  APS's principal brief fails to point to any evidence in the record explaining why APS did not provide the Books on Tape required by S.M.'s IEP for the 7th grade year or why he had no access to audible texts during his 8th grade year prior to Due process hearing in December 2004.  *See, e.g.,* Principal Br. at 10.  ("There was an omission during S.M.'s 7th grade year when S.M.'s IEP team included books on tape on his IEP as a service but did not follow through with the provision of that service.")

It appears that APS has adopted an "accident" explanation for its failure, saying that it does not have any policy opposing provision of books on tape, pointing to the fact that is willing even to write the words, "books on tape" on an official IEP

document, but then failing to explain why the Student did not receive the promised books on tape. The "one child" lense narrows the inquiry in such a way as to give the appearance of credibility to APS's "accident" explanation.

Second, if the "accident" model for denial of FAPE is accepted, the remedy will necessarily be limited to a band-aid, a superficial fix based on the supposition that there is no underlying cause, other than an "accident", to fix. This supports APS's third reason for supporting the "one child" theory of IDEA review. If APS is only required to provide a band-aid, "one child" at a time, it can outlast and pick off the lone children surfacing from time to time and meanwhile maintain its *status quo*.

The District court ruled that systemic function/dysfunction evidence was irrelevant based on acceptance of the hearing officers' "one child" theory of IDEA review. *See* Principal Br. at 20 and Applt. App. at 272. However, a finding of irrelevance is premised on blind acceptance that APS had an adequate system for provision of Books on Tape which is belied by the evidence in this case. APS's argument that "S.M. received books on tape at times" (Principal Br. at 20) is hardly enough upon which to premise delivery of the federal entitlement to FAPE. The AAO determined that the failure to provide S.M. with Books on Tape during two school years (all of 7th grade and part of 8th grade) was a denial of FAPE , not a *de minimus* omission. Applt. App. at 300.

APS goes to great lengths in its Principal Brief to dispute Plaintiff's recitation of evidence in the record supporting Plaintiff's theory of insufficient infrastructure within APS to support the needs of dyslexic students, including S.M. , for audio access to texts through Books on Tape. *See, e.g.,* APS Principal Br. at 20-27. APS's attempts to reshape its own employees' testimony and the undisputed fact that APS failed to provide S.M. with auditory access to texts during one and one half school years are subterfuge. Plaintiff's inclusion of specific testimony was to underscore the necessity for "additional evidence" on the systemic dysfunction surrounding provision of books on tape because the AAO remedy, upheld by the Court, is based on an inaccurate assumption that APS has a sufficient intent and infrastructure to routinely provide books on tape required by dyslexic students.

APS did not appeal the AAO finding, upheld by the district court, that APS denied S.M. a FAPE during 7th and 8th grades by its failure to delivery Books on Tape (as promised by the 7th grade IEP) and its failure to delivery any auditory access to texts during 8th grade (when student could not read the texts based on disability). Without an appeal on this issue, it is to no avail for APS to attempt to undercut the *unchallenged* finding of denial of FAPE based on lack of access to auditory texts during 7th and 8th grade.

Nothing in IDEA sustains the District Court's ruling that evidence on systemic

26

failure to provide books on tape only was relevant if Plaintiff could show three prerequisites. *See* APS Principal Brief at 21. [3]  The District Court's three part "test" is simply wrong and without any connection to the text of IDEA or its case law. Books on Tape was required by the IEP Team for the entire 7th grade year and APS failed to provide Books on Tape. Plaintiff is not then required to prove that books on tape "was the only appropriate and available mechanism for giving S.M. access to the written materials in questions during the relevant time period." Applt. App. at 361 and Principal Br. at 21. The "relevant time period," as established by the record was 7th and part of 8th grade. During 7th grade, *despite* the requirement of the IEP, Books on Tape were *never* provided. It is completely unclear where the Court came up with its three prerequisites to consideration of the excluded evidence on District dysfunction for provision and distribution of books on tape or how the Court could have determined that Miller failed to prove that APS failed to provide the books on tape. The failure to provide (during the relevant periods of 7th grade and part of 8th

---

[3] The district court's opinion claims, without reference to any authority, that systemic failure to provide Books on Tape would only be relevant to S.M.'s claims for denial of FAPE if Plaintiff first proved: "(1) Books on Tape was the only appropriate and available mechanism for giving S.M. access to the written materials in question during the relevant time period, (2) Defendants failed to provide Books on Tape to S.M. during that time period, and (3) the AAO failed to award adequate compensatory relief for that failure." Applt. App. at 361 as quoted by APS in Principal Brief at 21.

grade up to time of hearing) was uncontradicted evidence.

APS argues that exclusion of systemic dysfunction evidence is justified because provision of books on tape is really a "methodology" issue over which APS educators have exclusive , unilateral control.   Principal Br. at 22.   However, the District Court, in attempting to uphold the administrative decisions to exclude relevant evidence on systemic dysfunction,  incorrectly borrowed from *educational methodology* rhetoric which school districts and courts manipulate to sustain the ineffectual status quo.   A family does not have to *prove* the need for a specific accommodation/technology already required by the IEP Team.   Once committed by the IEP team and documented in the IEP, provision of a service or accommodation is not subject to debate. [4]   IDEA requires and presupposes that the school district will implement the IEP, not sabotage it. 20 U.S.C. §1414(d).   Here, once the IEP documented the need for books on tape,  "educational methodology" excuses or contests are not material. *See, e.g.,* Winkelman, 2007 U.S. LEXIS 5902 [27] ("The IEP . . . sets the boundaries of the central entitlement provided by the IDEA: [i]t defines a "free appropriate public education" for that. . . child.")

---

[4] In rejecting Plaintiff's request for class certification of the Books on Tape issue, the Court articulated understanding of the importance of an IEP team decision, but then proceeded to ignore the fact that S.M.'s IEP team *had* chosen Books on Tape and documented that choice on his IEP.  Applt. App. (vol. II) at 347-348).

Both APS and the district court attempt to sidestep the issue of exclusion of evidence on APS's systemic dysfunction for obtaining and providing books on tape by arguing that S.M. may not really need books on tape, or, maybe, he would prefer some other technological access. This is a red herring. The AAO found failure to provide books on tape which were promised by the IEP, denied S.M. FAPE. For that denial, equity demanded a remedy.

Plaintiff has consistently maintained that no effectual remedy exists without examining and correcting underlying dysfunction. The administrative system and the court have determined that moving the meeting to a fixed time will "cure" APS's previous inability to provide books on tape. However, such remedy assumes that the original failures were accidents and that APS needs more time. Plaintiff desired to introduce evidence of systemic dysfunction in order to eliminate the inaccurate assumptions underlying the inadequate remedy. Categoric refusal to consider evidence of systemic dysfunction, no matter how that refusal is packaged , is simply a refusal to understand the cause of denial of FAPE. Nothing in IDEA permits reviewing bodies to take such a narrow view. To the contrary, IDEA , with each revision, shows Congressional impatience with special education that *does not work.* The 1997 reauthorization of IDEA, which applies to this case, had a clear focus on making provision of special education *more effective. See, e.g.,* 20 U.S.C.

§1400(c)(4),(5).

Exclusion of evidence on systemic dysfunction was an arbitrary narrowing of the parent's right to challenge the District's provision of special education to her son. This month's Supreme Court decision in <u>Winkelman</u> is a rejection of the hearing officers' and court's attempts to narrow the allowable scope of IDEA review and arbitrarily exclude underlying issues of systemic dysfunction. <u>Winkelman</u>[5] supports Miller's right to consideration of the issue and evidence on systemic dysfunction surrounding provision of Books on Tape in at least two ways. The Court's decision in <u>Winkelman</u>: 1) emphasizes the "comprehensive" nature of IDEA and how its "interlocking statutory provisions" must be read as a whole; 2) specifically relies on the "any matter" language of 20 U.S.C. §1415(b)(6)(A) and 20 U.S.C. §1415(i)(2)(A) on which Plaintiff relies.

In <u>Winkelman</u>, the Court rejected the Sixth Circuit's interpretation of IDEA which had spliced the rights of parents and students under the IDEA in such a way that the parent was presumed incapable of litigating, *pro se,* the school district's substantive denial of FAPE to the child in court. The Court reached its ultimate

_____

[5] The Court notes its reliance on the "current version" of IDEA, which would refer to IDEA 2004, but most of the provisions upon which it relies, and those that are relevant to this appeal, were not changed from 1997 to 2004. *See,* <u>Winkelman,</u> 2007 U.S. LEXIS 5902 (5/21/2007) at [14].

holding, which allows parents to proceed *pro se* in court to challenge provision of FAPE to their child, by carefully reading the intricate text of IDEA, making logical links between its provisions, and refusing to sanction a result which would eliminate enforcement of the IDEA's provisions in the courts.

The Court repeatedly emphasized the intricate weave of IDEA and the necessity to read all parts together to effect Congress's express purpose of provision of fully adequate education for children with disabilities:

> Our resolution of this case turns upon *the significance of IDEA's interlocking statutory provisions.*
>
> We agree [with parents] that the *text of IDEA resolves the question presented*. We recognize, in addition, that a *proper interpretation of the Act requires a consideration of the entire statutory scheme.*
>
> [Parents] construe these *various provisions to accord parents independent, enforceable rights under IDEA. We agree.*
>
> [IDEA's provisions, when read together, set forth:] *expansive review* and extensive parental involvement. . . .
>
> We *consider the statutory structure.*
>
> The statute also empowers parents to bring challenges based on a *broad range of issues.* The parent may seek a hearing on "any matter relating to . . . the provision of a free appropriate education to [her] child."
>
> These provisions confirm that *IDEA, through its text and structure,* creates in parents an independent stake not only

31

in the procedures and costs implicated by this process but also in the substantive decisions to be made,

[A] parent may be a "party aggrieved" for purposes of §1415(i)(2) with regard to "any matter" implicating these rights. The status of parents as parties is not limited to matters that relate to procedure and cost recovery . To find otherwise would be inconsistent with the collaborative framework and *expansive system of review* established by the Act. Cf. <u>Cedar Rapids Community Sch. Dist. v. Garret F.,</u> 526 U.S. 66, 73 (1999) (looking to IDEA's *"overall statutory scheme" to interpret* its provisions.).

The statute's *procedural and reimbursement-related rights are intertwined with the substantive adequacy of the education provided to a child* [citations omitted] and it is difficult to disentangle the provisions in order to conclude that some rights adhere to both parent and child while others do not.

(Emphasis added) 2007 U.S. LEXIS 5902 at [13], [14], [20], [22], [27], [28], [29].

While <u>Winkelman</u> decided an issue not present here, of parents' ability to litigate IDEA claims in court *pro se,* the Court's reliance on the express text of IDEA, the way in which all provisions should be read together,  and its clear recognition that Congress has provided parents with a right to *expansive administrative and judicial review* of claims asserting denial of FAPE to students with disabilities is persuasive on Ms. Miller's appeal issue.

Both state administrative IDEA hearing officers and the district court refused to consider Plaintiff's concern about the cause of failure to provide books on tape.

They limited consideration of evidence on APS's dysfunction and lack of infrastructure for provision of books on tape to students with reading disability. They refused to consider how that dysfunction was at the root of APS's denial of FAPE to S.M. in 7th and 8th grades as related to the undisputed failure to provide consistent auditory access to classroom texts and to provide the books on tape specified in the 7th grade IEP. Their uniform determination that such issue and evidence was not "relevant" because they need only be concerned with the "one child," S.M., is an illogical and legally unsupportable conclusion.

IDEA provides for "expansive review" at both administrative and judicial levels. Winkelman, [22].    The right to expansive review is grounded in IDEA's language bestowing the right to review of "any matter" relating to delivery of FAPE. Winkelman, [27].    *See also* Miller Opening Br. at 30-33.    Systemic dysfunction is "any matter" relating to the deprivation of FAPE during the 7th and 8th grade relating to APS's failure to provide S.M. with Books on Tape promised by the IEP in 7th grade, and the failure, in 8th grade to provide Books on Tape or some other comparable means of auditory access to textbooks. A disabled child's inability to have access to all the same information available from texts to nondisabled peers clearly impacts the adequacy of the child's education: public schools are dependent on acquisition of content knowledge through assigned books.

33

Without any textual support in the IDEA allowing hearing officers and courts to exclude issues of systemic dysfunction related to denial of FAPE, such exclusion is reversible error. Plaintiff filed request for due process pursuant to 20 U.S.C. §1415 claiming that failure to provide S.M. with Books on tape during 7th and 8th grade constituted denial of FAPE including access to the general curriculum and seeking consistent provision of Books on Tape for S.M. during his education. Adm. RP at 129-130. At the district court level there was no challenge to the last state administrative decision concluding that the failure to provide Books on Tape during 7th grade and the failure to provide any audible access to texts in 8th grade prior to hearing constitute denial of FAPE. Denial of FAPE assumes a remedy exists. *See* Winkelman, [30].

The "remedy" provided, that the IEP team will meet in the spring in the year following due process to ensure APS has enough time to obtain books on tape for the following year assumes that "time" was the original problem in the failure to provide books on tape or comparable audible access. First, APS has not argued that "time" was the problem and, in fact, failed completely to offer any explanation for its failure to provide Books on Tape as ordered by the 7th grade IEP. Second, Plaintiff is clearly entitled to present full evidence on the underlying systemic dysfunction and lack of infrastructure for provision of books on tape as that is "any matter" relating to

deprivation of FAPE to S.M.  A predetermination that this kind of evidence is not relevant flies in the face of history surrounding failure to provide appropriate public education to students with disabilities.  *See,* Honig, 484 U.S. at 309-10.  (historic failure to educate students with disabilities resulted from official state statutes and local rules).

B.    Denial of FAPE requires a remedy which *compensates* for the loss.

Seemingly underlying the administrative hearing officers and court's unsupported conclusion that systemic dysfunction issues are "irrelevant" to APS's denial of FAPE to S.M. is the argument made by APS in this appeal, that courts and hearing officers should shy away from IDEA issues which "usurp the policy-making roles of state or local government."  APS Principal Br. at 29.  This argument is not supported by the text of IDEA which specifically states:

> While States, local educational agencies and educational service agencies are responsible for providing an education for all children with disabilities, it is in the national interest that the Federal Government have a role in assisting State and local efforts to educate children with disabilities in order to improve results for such children and to ensure equal protection of the law.

20 U.S.C. §1400(c)(6).

IDEA is a *federal* initiative which arose out of historic context that states and local school districts *were not providing appropriate education* to students with

disabilities.  To the extent that school districts have policies and practices which undermine and do not support the goals of IDEA to provide disabled students with a FAPE, it is precisely the role of courts, charged under IDEA with "expansive review" to look at the reasons and root causes of denial of free appropriate public education.  Those causes, in this case rooted in lack of effective infrastructure and dysfunction in the provision of books on tape, are "any matter" relating to the failure to provide FAPE.  The scheme of IDEA, its text read in its entirety, does not support a conclusion that Congress wishes courts and hearing officers to turn a blind eye to systemic dysfunction causing denial of FAPE.

APS's systemic dysfunction was clearly relevant here where APS could not explain why , for the entire year of 7th grade , S.M. was not provided books on tape required by his IEP.  A remedy consisting solely of having the IEP team meet in the spring for the following school year is not reasonably calculated to confer any compensatory benefit because, while it may supply a "band aid" for that particular school year when the district is under scrutiny, it does nothing to fix the underlying refusal of the system to facilitate provision of books on tape or other audible access to texts for students with reading disability.

Congress's IDEA scheme does *not contemplate* such an effectual, inefficient remedy that a family would need to refile, year after year, or even every other year,

on the exact same failure to provide a required service.  The United States Supreme Court has determined that the IDEA confers broad *equitable* powers on courts to construct remedy.  The *text of IDEA* plainly states that a reviewing court "shall grant such relief as the court determines is appropriate."  20 U.S.C. §1415(i)(2)(B)(iii).  It is an abdication of the role Congres has conferred on the courts, a role of "expansive review", for a court to approve of an artificial limitation on evidence which would show the cause of denial of FAPE and, therefore, lead to a truly "appropriate" remedy.

C.   Evidence improperly excluded or not available during state administrative adjudication is "additional evidence" that IDEA mandates be considered.

The District Court contested Plaintiff's ability to introduce systemic dysfunction evidence based on an argument that Plaintiff already achieved a "remedy" for deprivation of FAPE and, so, is not a "party aggrieved" within the meaning of 20 U.S.C. §1415(i)(2)(A).   Applt. App. (vol. II) at 359-360 (Court's opinion states: "[T]his case presents an unusual situation where Plaintiffs are appealing from an administrative proceeding at which they prevailed and received some form of equitable relief as to most of the substantive issues." [6] ) The District

---

[6] This observation by the Court is in complete contradiction to the Court's reasoning in the opinion denying most of the fees and costs claimed by Plaintiff. In that opinion, the Court focused on what it references as "the limited degree of

Court's "party aggrieved" analysis however, is called in to question by the Winkelman decision. The United States Supreme Court has now expressly rejected the logic and resulting restrictions on judicial review of the "party aggrieved" argument. That Court refused an argument that parents can be a "party aggrieved" only for specific IDEA rights, but not for others. To the extent that argument was offered to restrict parents' ability to litigate deprivation of FAPE, the logic of the "party aggrieved" argument was rejected as being too splintered. Winkelman, [25],[26]. In a like way, the district court's refusal to consider Plaintiff's evidence on systemic dysfunction, which was clearly "any matter" relating to deprivation of FAPE, artificially limits IDEA review and eliminates real remedy – outcomes which are contrary to congressional purpose.

ISSUE II

DISMISSAL OF PLAINTIFFS' DISCRIMINATION CLAIMS IGNORES

IDEA'S EXPRESS RULE OF CONSTRUCTION

APS continues to argue, on the basis of Urban v. Jefferson Co. Sch. Dist. R-1, 89 F.3d 720 (10th Cir. 1996), that "the Tenth Circuit has instructed that IDEA, Section 504, and ADA claims should be analyzed similarly." APS Principal Br. at 31.

---

Plaintiffs' success in the administrative proceedings. . . ." Applt. App. (vol. II at 494.

38

However, this Court has clearly refined its Urban analysis of the interplay between IDEA, Section 504 of the Rehabilitation Act, and Title II of the ADA,  in Ellenberg v. New Mexico Military Institute, 478 F.3d 1262, 1282 (n. 22) (10th Cir. 2007). APS's continued harkening back to isolated language in Urban fails to incorporate this Court's further explication in Ellenberg and how the later analysis impacts the Court's dismissal of Miller's discrimination claims.

Ms. Miller's Complaint claims that the District's failure to provide S.M. with Books on Tape in 6th, 7th and 8th grades was intentional discrimination on the basis of disability.  Applt. App. at 14.  Plaintiff further claimed that the failure to provide S.M. with independent and continuous  access to textbooks through auditory means deprived him of the educational opportunity afforded his nondisabled peers who were capable of reading the assigned texts.  Id.  Plaintiff specifically contended that APS had created a deliberately dysfunctional and unworkable "system" for provision of Books on Tape to just a handful of the potentially thousands of students with reading disability who might need such auditory access in an effort to save money.  Applt. App. at 14-15.  Plaintiff articulated the following request for injunctive relief in her complaint:

> 6.  Declare that APS's policies surrounding provision of Books on Tape discriminate against students on the basis of disability and order all necessary injunctive relief to eliminate the

discriminatory policies and ensure access to Books on Tape
to this student and any other qualified student now and in
the future. . . .

Applt. App. at 18.

Plaintiff's discrimination claim and request for injunctive relief was

dismissed without a trial or consideration of evidence: the Court granted APS's

motion for summary judgment on the basis of an incorrect legal assumption that

IDEA findings and remedy "short circuited" the discrimination claims eliminating

those claims. [7] Applt. App. at 380; Miller Opening Br. at 36.   Ellenberg specifically

rejected an interpretation of Urban for the proposition that provision of FAPE was

solely determinative of issues of disability discrimination.   478 F.3d at 1282, n. 22.


[W]e specifically noted [in Urban] that a "federally-funded
education system may violate §504 when the school system's
practices 'preclude the handicapped from obtaining system
benefits realized by the nonhandicapped.' "

---

[7] The District Court opinion also states that Plaintiff failed to meet her
burden to come forward with genuine issues of material fact.  Applt. App. 382-
384.  However, APS's Motion for summary judgment was based on the legal
proposition that IDEA review and remedy precluded the discrimination claims and
that "short circuit" argument was the basis of the Court's grant of summary
judgment.  It is not clear to Plaintiff what fact issues were material other than
those which are not in dispute and support Plaintiff's not APS's position: 1.  S.M.
was person with a disability; 2.  APS receives federal monies; 3.  S.M. was denied
access to education (textbooks) by reason of his disability by APS's failure to
provide the alternate format it promised (Books on Tape).

(Citation omitted.)  478 F.3d at 1282, no. 22.

For 25 years, from <u>N.M. Ass'n for Retarded Citizens v. State of New Mexico,</u> 678 F.2d 847 (10th Cir. 1982) through <u>Ellenberg,</u> 478 F.3d 1262 (10th Cir. 2007), this Court has recognized that students in public education are entitled to receipt of that education free from discrimination based on disability. When S.M. was not provided access to classroom texts and textbooks, he was discriminated against on the basis of disability.  All peers who did not suffer from reading disability had full access to the content knowledge contained in those required texts.  Withholding of books on tape had the effect of denying S.M. with access to the content knowledge contained in his texts which was enjoyed by his nondisabled peers.

APS argues that Miller, who is not claiming damages, but seeking only the injunctive relief stated in the Complaint (par. 6 at Applt. App. (vol.I) at 18), already achieved "resolution" through the IDEA process.  APS Principal Br. at 35. However, this argument is faulty for two reasons.  The argument completely ignores the straightforward text of the IDEA and its rule of construction found at 20 U.S.C. §1415(l).  This rule of construction was a specific reaction to the United States Supreme Court opinion in <u>Smith v. Robinson,</u> 468 U.S. 992 (1984).

<u>Smith</u> held that IDEA was an exclusive remedy, "the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special

education." 468 U.S. at 1009. The Court's opinion was also that "the *remedies, rights, and procedures* Congress set out in the EHA [predecessor law to IDEA] are the ones it intended to apply to a handicapped child's claim to a free appropriate public education." (Emphasis added), 468 U.S. at 1019. However, the <u>Smith</u> court's 1984 decision was expressly negated by Congress's amendment to IDEA to provide for a "rule of construction" stating that IDEA was not, in fact, an exclusive remedy and that a disabled child, covered by IDEA, did not forfeit the rights or remedies conferred by other laws. *See* 20 U.S.C. §1415(l).

APS and the Court are incorrect in claiming that Plaintiff seeks simply to "duplicate a remedy" already received under IDEA. APS Principal Br. at 35. First, as argued under Plaintiff's IDEA issue, the IDEA "remedy" is inadequate as it does not fix the underlying systemic dysfunction. Second, to the extent the inadequate IDEA "one child" remedy suffices under IDEA, potential remedy is not so limited under Section 504 and the ADA. Those laws provide for remedies which require institutional change if institutional status quo is the *cause* of the disability discrimination suffered. *See, e.g.,* <u>Tennessee v. Lane,</u> 541 U.S. 509, 526 (2004) (Congress's enactment of the ADA, Title II, is prefaced on Congress's documentation of the failure of existing laws to remedy "pervasive problems of discrimination that people with disabilities" faced. ) In addition, the failure to provide a particular kind

of special education services to great numbers of children may, in itself, constitute evidence of discrimination actionable under Section 504.   *See, e.g.,* New Mexico Ass'n for Retarded Citizens, 678 F.2d at 854.

Plaintiff's claims of discrimination based on APS's deliberate failure to provide books on tape are not duplicative of a claim of denial of FAPE based on denial of books on tape because failure to provide equal access to class  texts is not the same question as are at issue in addressing FAPE.  The discrimination implicit in the idea that students with reading disability will just "get by" somehow without independent access to texts (which is available through books on tape) is an issue of discrimination or unequal treatment.  It is no more acceptable as a provision of public education than it would be to provide math texts only to male students because female students could just "get by" listening to classroom lectures or having the male student "share" their books in class.        Plaintiff fulfilled the IDEA exhaustion requirement by bringing an IDEA claim that proved that APS failed to provide the Books on Tape promised by the IEP.  To the extent that IDEA allegedly requires a family to refile, year after year, on the same issue, never reaching a solution, that is not the intent of Section 504 and ADA, Title II which was enacted to *eradicate* discriminatory treatment on the basis of disability.  *See, generally,*  Tennessee v. Lane.  Injunctive relief should be consistent with the purpose of the law violated.  The IDEA remedy

is inadequate to *eradicate* the discrimination inherent in APS's failure to provide the books on tape which would have provided S.M. with access to assigned texts necessary for content knowledge to be acquired in public education.  For that reason alone, the Court incorrectly relied on the negligible relief provided through IDEA exhaustion for the failure to provide Books on Tape or other auditory access to texts for more than a school year.

ISSUE IV

FAILURE TO AWARD REQUESTED FEES UNDERMINES ENFORCEMENT

OF IDEA

APS seeks affirmance of the attorney fees and costs awarded below based on three arguments: "(1) Plaintiff is not entitled to any fees associated with the Injunction Action APS filed, (2) Plaintiff obtained only a limited amount of success in her IDEA claims at the administrative level, and (3) APS offered Plaintiff more in settlement than she was awarded at the administrative level."  APS Principal Br. at 36.  APS's third reason was actually rejected by the district court and could not form the basis for affirmance of the court's decision.

A.    APS never made a timely offer of settlement which surpassed relief attained.

APS's attempt to justify the court's reduction of requested fees based on a

"settlement offer" is contrary to the facts and the law.  IDEA's provision, cited by

APS, requires a Rule 68-conforming written offer of settlement before denial of fees

is justified.  *See* 20 U.S.C. §1415(i)(3)(D).  As discussed by the district court's

decision, the written offer from APS was not provided ten days before the start of the

due process hearing and so, on its face, fails to meet the requirements of 20 U.S.C.

§1415(i)(3)(D).  *Compare,* Applt. App. 458-459 (the written offer upon which APS

relies is a letter dated November 24, 2004) to Adm.  TR vol. I (the due process

hearing began on November 30, 2004); *see also* Applt. App. at 491 (court notes that

APS's written offer was untimely for purpose of a Rule 68 and was also less than

what was obtained).

To the extent the Court and APS then attempt reliance on this offer as proof

that Plaintiff did not receive "much more relief" by going to hearing than what APS

had been willing to provide originally, the reading instruction issue is

misapprehended.  APS convinced the hearing officers and the court that reading

instruction by a *Wilson* trained APS employee was fungible with reading instruction

by an academic language therapist.  On this basis, APS argues, and the Court

apparently agrees, that APS's "offer" in November 2004 to provide 4 days per week

reading instruction by a "District level Wilson trained instructor" one on one was as

good as what Plaintiff obtained by going to hearing.

45

This analysis ignores the conflicting evidence as to the great disparity in training for Wilson and for academic language therapy and the family's belief that academic language therapy should continue without another transition for S.M. since APS had failed to provide Wilson when requested and the family had already purchased private reading instruction: there was value in S.M. not needing to begin over in a whole different reading instruction intervention.  *See* Applt. App. at 131-135.  By going to due process hearing, the family continued appropriate reading instruction at the *district's expense* until August 2005.  Had Plaintiff accepted the November settlement offer, her entitlement to reimbursement for the private instruction would have been, at most , for the period from March 2004 to December 2004.  The lack of significance attributed by APS and the court to uninterrupted appropriate reading instruction is a reflection of the general absence of understanding as to the negative consequences, for dyslexic students,  of reading failure.  *See, generally,*  http://www.nichd.nih.gov/news/releases/brain_function.cfm (Dr. Sally Shawyitz of Yale summarizes NICHD brain research results as showing that "Teaching matters and good teaching can change the brain in a way that has the potential to benefit struggling readers.")

B.  The Court's reliance on its ruling in the injunction action for decisions in this action create entitlement to fees as the "prevailing party."

_____APS argues that Plaintiff's failure to seek fees in the injunction action eliminates entitlement to fees for defending as part of Plaintiff's status as a "prevailing party" under IDEA. Plaintiff did seek fees in the injunction action by filing its Motion to Dismiss.   Applt. App. at 539.   The district court's opinion dismissing the injunction action "without prejudice" indicated that the parties could appropriately litigate "other aspects of the AAO's decision"  in the case filed by the Millers, this instant case.  *See* Applt. App. at 580.  The court in this case then went on to rely on and refer to its action in the injunction case as the basis for rulings in this case.  *See, e.g.,* Applt. App. (vol. I) at 96, et seq.  Under that circumstance, fees incurred in connection with defense of APS's request for preliminary injunction were clearly necessary to Plaintiff's status as a "prevailing party" under the IDEA. Without defense of the injunction action, APS could have succeeded in eliminating the AAO's relief.  It is unfair and not in keeping with the goals of IDEA to deny requested  fees under these circumstances.

C.  The Court's reduction of IDEA administrative due process fees devalues the federal civil right to special education.

_____The district court reduced requested fees and costs of the administrative due process based on "degree" of success as well as an expressed belief that the case contained "easily provable violations of the IDEA. . . ."  Applt. App. at 492-493.

The district court also accuses Plaintiff's counsel of bringing additional claims to increase "billable hours."  Applt. App. at 493.  These beliefs are not warranted or supported in the record.  In addition, the court can take judicial notice that the IDEA is not an easily accessible or workable vehicle for relief.   To the extent this Court believes public opinion that attorneys who represent children with disabilities in special education proceedings view the cases as good vehicles to accrue "billable hours," the Court should take judicial notice of the actual scarcity of lawyers who will undertake these cases at all and the uphill battle which exists to prevail and recover any fees.  *See* Winkelman, [8]-[12] (parents intermittently had assistance of counsel in lengthy administrative and legal proceedings").

_____The "degree of success" factor is not so subjective that courts can devalue findings of denial of FAPE resulting in awards of financial reimbursement to a family which had to spend money to make up for the school district's failure to provide reading instruction and Books on Tape.   The district court's judgment that this was a simple case without "first impression" issues has been rejected by the Third Circuit in the context of determining "prevailing party" status:

> _____The District Court's conclusion that the [family's] failure
> to "prevail beyond the basic requirements of the IDEA". . .
> and achieve substantial relief precluded them from prevailing
> party status is perplexing.  The purpose of the fee provision
> in IDEA *is to enable parents or guardians of disabled children*

> *for whom the statute was enacted to effectuate the rights provided*
> *by the statute.*  To suggest, as [the school district] does, that
> [the family] must establish a new right or expand the
> requirements of IDEA in order to obtain attorneys' fees is
> to ignore the Supreme Court's "generous formulation" of the
> term "prevailing party."  As required by the Supreme Court's
> interpretation of "prevailing party,". . . the Orders altered the
> legal relationship between the parties by . . . forcing [the school
> district] to act in accordance with the IDEA.

(emphasis added.)  <u>P.N. v. Clementon Bd. of Educ.,</u> 442 F.3d 848, 856 (3rd Cir. 2006),

*cert. denied,* 127 S.Ct. 189 (2006).    The Third Circuit's opinion also disputes the

idea that a court or school district are in the best position to devalue relief obtained

through enforcing IDEA as "not substantial" based on their viewpoints of what is

significant as opposed to the viewpoint for the family advocating for the needs of a

child with a disability.  *See, e.g.,* 442 F.3d at 857, n. 8 (Court is troubled by district

court's determination that recovery of $425 reimbursement was *de minimus* in IDEA

case  because such judgment fails to acknowledge the hardships which inhere for

families seeking to provide for children with disabilities).

IDEA provides enforceable substantive rights.  <u>Honig v. Doe.</u>  Discounting

necessary attorney fees and costs to obtain enforcement of those federal rights is not

justified based on the pretense that the claims are "easy."  IDEA is complex and

school districts have a natural advantage. *See,* <u>Winkelman,</u>   <u>Schaffer v. Weast</u>, 546

U.S. 49, 126 S.Ct. 528 (2005).   The unstated, but implicit,  message if fees for these

cases are slashed by the courts is that enforcement of the law is not really a priority because only children, or only children with disabilities, are involved. The drastic reduction in fees sends the message that the courts wish to discourage the litigation of IDEA claims. But why is that justified when the family has shown that the child's federal right to FAPE was denied? If the goal is to decrease litigation, the clearer path to decreasing litigation will be for the Courts to uphold children's right to receipt of FAPE which includes the right to attorney fees and costs. This case began because Leslie Miller was unable to secure appropriate reading instruction for her son, S.M. who had a reading disability.

It is in the national interest as determined by Congress to enforce implementation of IDEA. School districts, as shown here, do not willingly provide the *free appropriate* public education required by IDEA for students with disabilities. Attorneys representing families are simply the messengers. Discouragement of their involvement in families' efforts to enforce this law contradicts the purpose of IDEA which is conferral of FAPE on all students with disabilities in our public schools.

## CONCLUSION

Leslie Miller asks this Court to affirm the District Court's denial of APS's motion to amend its Answer to add a counterclaim.

Ms. Miller also requests relief, on her appeal, as stated in the Opening Brief at

50

45.  To summarize that requested relief is to:  1) reverse and remand for additional evidence on systemic dysfunction and reconsideration of remedy on the denial of FAPE flowing from failure to provide Books on Tape; 2) reinstatement of Plaintiff's disability discrimination claims and remand for trial; 3) reversal of the District court's decision limiting fees and costs recovery to $8,751.19 and award of fees as requested below in the amount of $40,375.14 and fees and costs of this appeal.

Respectfully submitted,

STEVEN GRANBERG, ATTORNEY AT LAW

_____
Gail Stewart
1400 Central SE, Suite 3300
Albuquerque, NM 87106
Telephone:  (505) 244-3779
Fax: (505) 245-8558

## CERTIFICATE OF SERVICE

I hereby certify that on 24 May 2007, I served a copy of this brief electronically on Michael Carrico at mcarrico@modrall.com and Andrea Robeda at akr@modrall.com. I also certify that on 25 May 2007, I will hand deliver two copies of this brief to Michael Carrico and Andrea Robeda, counsel for Albuquerque Public Schools at Modrall Sperling, 500 4th St. NW, 7th floor, Albuquerque, NM 87102.

## CERTIFICATE OF COMPLIANCE

As required by Fed. R.App.P. 32(a)(7)(C), I certify that this brief is proportionately spaced 14 point type and contains  12,924  words.  I relied on my word processor (Word Perfect 9) to obtain that count.  I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

_____

Gail Stewart

52